UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                    Case No. 2:21-cv-05017-PCK-SIL
------------------------------------------------------------- x
NOE GONZALEZ, individually and on behalf of all
others similarly situated,

                                        Plaintiff,

            -against-

THE CHEESECAKE FACTORY RESTAURANTS,
INC. d/b/a THE CHEESECAKE FACTORY,

                                Defendant.
------------------------------------------------------------- x

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY CASE AND TO COMPEL INDIVIDUAL ARBITRATION

Plaintiff Noe Gonzalez is a former employee of The Cheesecake Factory Restaurants, Inc. d/b/a The Cheesecake Factory ("TCFI") who has brought a lawsuit in federal court alleging that TCFI violated the New York Labor Law ("NYLL") by providing him his wages biweekly instead of weekly and by failing to provide him with a wage statement for each payment of wages. *See* Compl. (Doc. No. 1) ¶¶ 60-72. Gonzalez seeks to represent a class of alleged similarly situated individuals. But Gonzalez cannot bring his NYLL claims in federal court. Nor can he bring them on a classwide basis. That is because he must pursue his claims individually through arbitration pursuant to TCFI's arbitration agreement, which was and continues to be a mandatory condition of employment. For this reason, TCFI respectfully requests that this Court stay this case and compel Gonzalez to individual arbitration.

## BACKGROUND

Plaintiff Noe Gonzalez worked as a cook at TCFI's restaurant at the Walt Whitman Mall, 160 Walt Whitman Road, Huntington, New York 11746 ("Huntington Restaurant"). *See* Declaration of Barbara Lewis ("Lewis Decl.") ¶ 3. Gonzalez began working at the Huntington

1

Restaurant in April 2009. He worked there until March 2021. *Id.*

Like all other employees at TCFI's restaurants in New York State, Gonzalez went through an onboarding process and was provided physical copies of several important employment documents. *Id.* ¶ 4. One of those documents was TCFI's employee handbook. *Id.* At the end of the employee handbook was a two-page acknowledgment form. *Id.* The form contained nine paragraphs. The employee was required to sign their initials next to each paragraph. *Id.* At the end of the nine paragraphs was an additional acknowledgment section. In this section, the employee was required to print their name, sign their name, provide the date and identify their restaurant location. *Id.*

The eighth paragraph of the employee handbook acknowledgment form states the following: "I recognize that differences may arise between me and the Company during, or following, my employment with the Company. I agree to participate in impartial dispute-resolution proceedings as a condition of and as consideration for the offer of employment by the Company. If I, or the Company, determine that the Company's internal procedures for handling claims (including but not limited to, reporting claims to my manager, the Area Director of Operations, the CARELINE, and/or the Staff Relations Department), have not resulted in a mutually acceptable resolution of disputes between me and the Company, I agree to participate in arbitration proceedings." *Id.* ¶ 5. During the onboarding process, new hires were notified that the foregoing paragraph required mandatory individual arbitration for any disputes that arose during employment. *Id.* They were also notified that their offer of employment and continued employment was expressly conditioned on them agreeing to the foregoing paragraph. *Id.* If an employment dispute arose and the matter went to arbitration, the parties would agree on arbitration through either AAA or JAMS with the rules of the agreed-upon forum to apply and

with TCFI to pay all of the arbitration costs at its sole expense. *Id.*

The employee handbook has both English and Spanish language versions. *Id.* ¶ 6, Exhibits A and B. New hires whose primary language was Spanish would be provided the Spanish language version of the employee handbook. *Id.* The Spanish language version of the employee handbook is a literal word-for-word translation of the English version. *Id.* TCFI uses a third-party translation service to translate the employee handbook from English to Spanish. *Id.* Accordingly, the two-page acknowledgment form in Spanish is exactly the same as the English version of the two-page acknowledgment form. *Id.*

TCFI provided Gonzalez with a Spanish language version of the employee handbook acknowledgment form at the start of his employment. *Id.* ¶ 7, Exhibit C. Gonzalez signed his initials "N.G." next to every one of the nine paragraphs (including paragraph eight) and also printed his name, signed his name, provided the date, and identified his restaurant location. *Id.*

Notwithstanding his signed arbitration agreement with language requiring individual arbitration, Gonzalez filed a Class Action Complaint against TCFI in this Court on September 8, 2021. Gonzalez brings pay frequency and wage statement claims under the NYLL. Specifically, Gonzalez claims that TCFI paid him biweekly instead of weekly in violation of NYLL § 191. *See* Compl. ¶¶ 7-18, 60-67. Gonzalez also claims that TCFI "deposited his earnings onto a payroll card, which could be used to make purchases and withdraw cash at an ATM or in person at a bank," but that TCFI failed to furnish him with a wage statement for each payment of wages in violation of NYLL § 195(3). *See id.* ¶¶ 7-18, 68-72. As to the pay frequency claims, Gonzalez seeks to represent an alleged class of all cooks employed by TCFI in New York State during the relevant time period. *See id.* ¶ 37. And as to the wage statement claims, Gonzalez seeks to represent an alleged class of all individuals employed by TCFI in New York State during the

3

relevant time period who were paid earnings via a payroll card. *See id.* ¶ 49.

On November 23, 2021, TCFI filed a letter requesting a pre-motion conference on TCFI's motion to stay this case and to compel Gonzalez to individual arbitration. *See* Doc. No. 10. Gonzalez filed a response five days later. *See* Doc. No. 11. The Court denied TCFI's motion for a pre-motion conference as unnecessary and ordered the parties to submit a proposed briefing schedule. *See* December 13, 2021 Order.

## ARGUMENT

**I.     The Court Should Stay the Case and Compel Arbitration Based on the Arbitration Agreement.**

Per the Federal Arbitration Act ("FAA"), the Court should stay this case and compel Gonzalez to single claimant arbitration. *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) (holding that proper procedural mechanism under the FAA is to stay case and compel arbitration). The FAA governs questions of arbitrability in both state and federal courts. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).[1] Congress enacted the FAA to overcome judicial hostility to arbitration agreements and to express its desire that the courts rigorously enforce them. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 625 (1985). The Supreme Court has reaffirmed that under the FAA an arbitration agreement ordinarily must be treated as "valid, irrevocable, and enforceable."

---

[1] Federal law favors arbitration as a method of resolving disputes. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56 (1995); 9 U.S.C. § 2. New York public policy also strongly favors arbitration. *Valdes v. Swift Transp. Co., Inc.*, 292 F. Supp. 2d 524, 530 (S.D.N.Y. 2003). "New York courts interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration." *Smith Barney Shearson, Inc. v. Sacharow*, 91 N.Y.2d 39, 49-50 (N.Y. 1997).

*Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017).

Under the FAA, a party to an arbitration agreement may petition a court for an order directing arbitration in the manner provided in such agreement and the court must stay proceedings pending arbitration. *See* 9 U.S.C. § 3.

Section 3 of the FAA states:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

And Section 4 of the FAA states:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

Given Congress' strong policy favoring arbitration agreements, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008). To stay proceedings and compel arbitration, the Court must consider four factors: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) whether Congress intended any federal statutory claims asserted to be nonarbitrable; and (4) if some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration. *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004). When these issues are decided in favor of

arbitration, there is "no place for the exercise of discretion" and the court must direct the parties to proceed in arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218-19 (1985); *see also Feuer v. Stoler of Westbury, Inc.*, No. 20-CV-6094 (JMA) (JMW), 2021 WL 4820605, at *2 (E.D.N.Y. Oct. 15, 2021) ("The statute leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). The burden of proving that the claims at issue are unsuitable for arbitration falls on the party opposing the motion. *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 91 (2000). All four factors are met here. So the Court must compel arbitration.

### A.      The Parties Agreed to Arbitrate.

There is no question here that a valid arbitration agreement exists between the parties.[2] The agreement is in writing, the agreement was a condition of starting employment and continued employment, and Gonzalez signed the agreement not once but twice, reflecting his acknowledgment and agreement to be bound by its terms. The agreement's language is distinct and mandatory: it contractually requires Gonzalez to arbitrate any employment related dispute.

As the Second Circuit has held, arbitration is a matter of contract and courts must look to state contract law to determine whether a valid arbitration agreement exists. *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003). Under New York law, courts employ "[o]rdinary principles of contract and agency" to determine whether the parties have

---

[2] TCFI also has a long-form arbitration agreement, which was discussed in its November 23, 2021 pre-motion conference request letter. TCFI has since learned that while certain employees received a copy of the long-form arbitration agreement and signed it Gonzalez did not. TCFI is therefore not moving to compel individual arbitration against Gonzalez based on the long-form agreement at this time. TCFI reserves its right, however, to enforce the long-form arbitration agreement against any putative class member.

6

agreed to arbitrate. *MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001). A party generally will be held to a signed contract unless he can demonstrate special circumstances, such as duress or coercion, which contradicts his intent to be bound. *Arakawa v. Japan Network Group*, 56 F.Supp.2d 349, 352 (S.D.N.Y. 1999).

Here, Gonzalez signed his initials next to the arbitration agreement and printed his name, signed his name, provided the date, and identified his restaurant location at the bottom of the employee handbook acknowledgment form with the arbitration agreement. As to consideration, TCFI's offer of employment to Gonzalez and his continued employment with TCFI is sufficient consideration to enter into the arbitration agreement. *See Moorning Brown v. Bear, Stearns & Co.*, No. 99 CIV 4130 JSR HBP, 1999 WL 1063233 (S.D.N.Y. Nov. 23, 1999) (finding that a "plaintiff's promise to arbitrate is supported by [the employer]'s offer of employment to plaintiff and its continued employment of plaintiff"). So too is the parties' mutual promises to arbitrate. *See Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 104 (E.D.N.Y. 2015) ("Mutual promises to arbitrate, while not necessary as consideration to support an agreement to arbitrate, can be sufficient consideration to support an arbitration agreement."). Gonzalez cannot produce any evidence that he signed the agreement under duress or coercion. Put simply, Gonzalez accepted the arbitration agreement and agreed to be bound by its terms.

To the extent Gonzalez argues that the language in the arbitration agreement is insufficient to mandate arbitration, multiple federal courts have reviewed the specific language in paragraph eight of the employee handbook acknowledgment form and ruled that it does indeed require arbitration. *See, e.g.*, *EEOC v. Cheesecake Factory, Inc.*, No. CV08-1207PHXNVW, 2009 WL 1259359, at *6 (D. Ariz. May 6, 2009) ("The Arbitration Agreement is neither procedurally nor substantively unconscionable…. The FAA, therefore, mandates compelling

arbitration of Fitzpatrick's and Miller's claims."); *Sedelnikova v. The Cheesecake Factory Rest., Inc.*, No. CIV. A. AW-09-2398, 2010 WL 2367387, at *2 (D. Md. June 7, 2010) ("While the arbitration agreement is very general, and could be better differentiated from the other provisions surrounding it, the Court believes the provision qualifies as a valid agreement to arbitrate as the agreement was made with valid consideration, mutual assent and no fatal unconscionability."); *Smith et. al. v. The Cheesecake Factory Restaurants, Inc. et. al.*, No. 3:06-00829 (Doc. No. 107), at 17 (M.D. Tenn. Feb. 3. 2010) (ordering Plaintiffs to arbitrate their FLSA claims with TCFI based on the exact same language that Mr. Gonzalez signed).

New York federal court rulings are in accord with these decisions. *See, e.g.*, *Patterson v. Raymours Furniture Co., Inc.*, 96 F.Supp.3d 71, 76 (S.D.N.Y. 2015) ("Under New York law, a party who signs a written contract is conclusively presumed to know its contents and to assent to them, and he is therefore bound by its terms and conditions. With regards to arbitration agreements in the employment context, courts in this district routinely uphold arbitration agreements contained in employee handbooks where the employee has signed an acknowledgment form.") (citing *Chanchani v. Salomon/Smith Barney, Inc.*, No. 99–CV–9219 (RCC), 2001 WL 204214, *3 (S.D.N.Y. Mar. 1, 2001) ("Courts in this district routinely uphold arbitration agreements contained in employee handbooks where, as here, the employee has signed an acknowledgment form."); *Litvinov v. UnitedHealth Grp. Inc.*, No. 13–CV–8541 (KBF), 2014 WL 1054394, *3 (S.D.N.Y. Mar. 10, 2014) (finding that the parties agreed to arbitrate and that the employee "electronically acknowledged that she received and reviewed the Arbitration Policy" of her employer); *Beletsis v. Credit Suisse First Boston, Corp.*, No. 01–CV– 6266 (RCC), 2002 WL 2031610, *3 (S.D.N.Y. Sep. 4, 2002) (holding that the parties agreed to arbitrate and that the employee "signed the Compliance Certification" that referred to the

employer's arbitration program); *Arakawa v. Japan Network Grp.*, 56 F.Supp.2d 349, 352 (S.D.N.Y.1999) ("[T]he parties' agreement to arbitrate is evidenced by the Employee Handbook and the Acknowledgment signed by plaintiff.")). Accordingly, the first factor of the four-factor arbitration test is met.

### B.      Gonzalez's Claims Fall within the Scope of the Arbitration Agreement.

Gonzalez's pay frequency and wage statement claims fall within the scope of the arbitration agreement. The agreement refers to "differences" that "may arise between [Gonzalez] and [TCFI] during, or following, [his] employment with [TCFI]." The agreement then states that Gonzalez will "participate in impartial dispute-resolution proceedings as a condition of and as consideration for the offer of employment by [TCFI]." Finally, the agreement provides that if Gonzalez or TCFI "determine that [TCFI's] internal procedures for handling claims" do not result "in a mutually acceptable resolution of disputes between [Gonzalez] and [TCFI]," Gonzalez will "participate in arbitration proceedings."

As three courts have already held, the arbitration agreement "plainly gives notice that the 'differences,' 'claims,' and/or 'disputes' to be resolved through arbitration are those related to employment by [TCFI]." *EEOC*, 2009 WL 1259359, at *6 (finding that the plaintiffs' claims fell within the scope of TCFI's arbitration agreement); *accord Sedelnikova*, 2010 WL 2367387, at *7 (adopting the Arizona federal district court's reading of TCFI's arbitration agreement and finding that it is "broad" and "provides that any dispute will be covered"); *Smith*, No. 3:06-00829 (Doc. No. 107) (M.D. Tenn. Feb. 3. 2010) (concluding that the plaintiffs' FLSA claims "concern disputes in the course of their employment with [TCFI]").

Gonzalez's pay frequency and wage statement claims are related to one of the most, if not the most, essential components of his employment with TCFI: the payment of his wages and

more specifically how often his wages are paid and whether he was notified of the calculation of those wages. Because Gonzalez's claims are related to his employment with TCFI, they fall within the scope of the arbitration agreement. *See Sutherland v. Ernst & Young, LLP*, 726 F.3d 290, 293 (2d Cir. 2013) (holding that FLSA and NYLL compensation claims were subject to arbitration based on an arbitration agreement where the parties agreed that "employment related dispute[s]" were subject to arbitration).

Given the clear and broad language in the arbitration agreement stating that all employment related differences, claims, and/or disputes are subject to arbitration, Gonzalez cannot overcome the "presumption of arbitrability" and provide a "positive assurance" that the agreement "is not susceptible of an interpretation that covers the asserted dispute." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 395 (2d Cir. 2015); *see also Sunbelt Beverage Corp. v. Goldring*, 205 F.3d 1324 (2d Cir. 2000) ("Given the strong federal policy favoring arbitration as an alternative means of dispute resolution, we construe arbitration clauses as broadly as possible, and we resolve all doubts in favor of arbitrability. A contract's broad arbitration clause creates a presumption in favor of arbitrability.") (internal quotation marks and citations omitted). Accordingly, the second factor of the four-factor arbitration test is met.

### C.   Gonzalez's Claims Are Arbitrable.

Arbitration agreements must be enforced with respect to statutory claims unless the "FAA's mandate has been overridden by a contrary congressional command." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). No such "contrary congressional command" exists in the FLSA wage and hour context. *Sutherland*, 726 F.3d at 296. The Second Circuit and courts within the Second Circuit have held that not only FLSA claims but also their corresponding state wage claims, such as those brought by Gonzalez in this lawsuit, are

10

arbitrable. *Id.*; *see also Raniere v. Citigroup, Inc.*, 533 Fed. App'x 11, 13 (2d Cir. 2013) (requiring arbitration of FLSA and NYLL claims); *Michel v. Parts Auth., Inc.*, No. 15-CV-5730, 2016 WL 5372797, at *4 (E.D.N.Y. Sept. 26, 2016) (compelling arbitration of NYLL claims); *Bynum v. Maplebear Inc.*, No. 15-CV-6263, 2016 WL 5373643, at *11 (E.D.N.Y. Sept. 19, 2016) (compelling arbitration of FLSA and NYLL claims); *Ciago v. Ameriquest Mortgage Co.*, 295 F.Supp.2d 324, 334 (S.D.N.Y. 2003) (compelling arbitration of FLSA and NYLL claims); *Metzler v. Harris Corp.*, No. 00-cv-5847, 2001 WL 194911, at *2 (S.D.N.Y. Feb. 26, 2001) (compelling arbitration of NYLL claims). Accordingly, the third factor of the four-factor arbitration test is met.

Again, the Second Circuit has directed courts to compel arbitration when four factors are met: (1) the parties agreed to arbitrate; (2) the claims fall within the scope of the agreement; (3) the claims are arbitrable; and (4) if some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration. *See JLM Indus.*, 387 F.3d at 169. Here, we have a valid agreement to arbitrate and the NYLL claims at issue fall within the scope of the agreement and are arbitrable. There is no need not address the fourth factor because all of the claims are arbitrable. For these reasons, the Court must compel arbitration and stay the proceedings pending the outcome of the arbitration.

## II.     The Court Should Compel Individual Arbitration.

### A.     Class Arbitrability Is a Gateway Issue for the Court to Decide.

Cases from the Supreme Court, federal courts of appeal, and district courts in the Second Circuit all show that the arbitrability of a class action is a gateway issue for the Court, and not an arbitrator, to decide.

Although the Supreme Court has not explicitly decided the issue, its opinions in *Stolt-Nielsen v. AnimalFeeds Intl. Corp.*, 559 U.S. 662 (2010), *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013), and *Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407 (2019), have implicitly stated that arbitrability of class actions is a gateway matter for courts to rule upon.

In *Stolt-Nielsen*, the arbitration clause was silent with respect to class arbitration. *Id.* at 666. The arbitration panel decided that class arbitration was appropriate and the company appealed, asserting that the panel's opinion impermissibly imposed its own view on the arbitrability of a class action. *Id.* at 669. The Supreme Court explained that "it cannot be presumed the parties consented to classwide arbitration by simply agreeing to submit their disputes to an arbitrator." *Id.* at 685. In reaching its holding, the Court relied on the "fundamental" difference between bilateral and classwide arbitration. *Id.* at 686. First, arbitrator's putative benefits of "lower costs, greater efficiency and speed" are much less certain in classwide arbitration because arbitrating class claims inevitably makes the process slower, more costly, and more likely to generate procedural chaos than final judgment. *Id.* at 685. Second, classwide arbitration does not follow the same confidentiality rules as individual arbitrations, "thus potentially frustrating the parties' assumptions when they agreed to arbitrate." *Id.* at 686. Third, while the stakes of classwide arbitration are similar to class action litigation, the scope of judicial review is severely limited. *Id.* at 686-87. Finally, there are due process concerns with class action arbitration namely that "[t]he arbitrator's award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well." *Id.* at 686. In light of these concerns, "the relative benefits of class-action arbitration are much less assured, giving reason to doubt the parties' mutual consent to resolve disputes through class-wide arbitration." *Id.* at 685-86. So *Stolt-Nielsen* is a clear indication that class arbitration

12

is fundamental rather than procedural: absent an express agreement to allow an arbitrator to decide class arbitrability (which is not present here), this question must be reserved for a court. *Id.* at 687.

The Supreme Court in *Oxford Health* revisited the issue of whether a class arbitration presents a gateway question for a court to answer. While the Supreme Court said that it had not yet decided whether the availability of class arbitration is a question of arbitrability and that the facts in *Oxford Health* did not provide it with an opportunity to do so, the Supreme Court did note that it "would face a different issue if Oxford had argued below that the availability of class arbitration is a so-called 'question of arbitrability.'" *Id.* at 569 n. 2. The Supreme Court noted that such questions of arbitrability are presumptively for courts to decide. *Id.* In other words, the Supreme Court instructed that if a party wishes to raise the issue of the arbitrability of a class action, it must (as TCFI is doing here) raise the issue with the court before submitting the question to an arbitrator. *Id.*

Finally, in *Lamps Plus*, although the Supreme Court declined to explicitly address whether the availability of class arbitration is a gateway question for the Court, it did reaffirm its holdings in *Stolt-Nielsen* and recognized that there are several fundamental differences between class arbitration and individual arbitration such that "*courts* may not infer consent to participate in class arbitration absent an affirmative contractual basis for concluding that the party *agreed* to do so." *Id.* at 1416 (italics added on first word).

Although the Second Circuit has not yet ruled on the issue, every federal court of appeal that has faced the issue has said unequivocally that class arbitration is a gateway issue for a court to decide. *See Opalinski v. Robert Half Int'l.*, 761 F.3d 326, 335 (3d Cir. 2014) (finding "that the availability of class arbitration is a 'question of arbitrability'"); *Del Webb Cmtys., Inc. v.*

13

*Carlson*, 817 F.3d 867, 873 (4th Cir. 2016) (concluding "that whether an arbitration clause permits class arbitration is a gateway question of arbitrability for the court"); *20/20 Commc'ns, Inc. v. Crawford*, 930 F.3d 715, 718-719 (5th Cir. 2019) ("We agree with our sister circuits and hold today that class arbitrability is a gateway issue for courts, not arbitrators, to decide, absent clear and unmistakable language to the contrary."); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013) ("We therefore hold that the question whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved for judicial determination unless the parties clearly and unmistakably provide otherwise."); *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 507 (7th Cir. 2018) ("But every federal court of appeals to reach the question has held that the availability of class arbitration is a question of arbitrability. We agree."); *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 972 (8th Cir. 2017) ("After considering all of these fundamental differences, we conclude that the question of class arbitration belongs with the courts as a substantive question of arbitrability."); *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1065-66 (9th Cir. 2020) ("Faced with whether class arbitration is a gateway question here, we see no reason to create an unnecessary circuit split, or to depart from what we have already suggested."); *JPay, Inc. v. Kobel*, 904 F.3d 923, 935-36 (11th Cir. 2018) ("We hold that the availability of class arbitration is a question of arbitrability, presumptively for a court to decide, because it is a gateway question that determines what type of proceeding will determine the parties' rights and obligations. The differences between class and bilateral arbitration are substantial, and have been repeatedly emphasized by the Supreme Court. In light of these differences, we think it likely that contracting parties would expect a court to decide whether they will arbitrate bilaterally or on a class basis. We leave the question of class availability presumptively with the court because we

do not want to force parties to arbitrate so serious a question in the absence of a clear and unmistakable indication that they wanted to do so.").

District courts in the Second Circuit have reached the same conclusion. *Thompson v. Body Sculpt Int'l, LLC*, No. 18-CV-1001-ARR-GRB, 2018 WL 3235545, at *7 (E.D.N.Y. July 2, 2018) (ruling that the parties must engage in bilateral arbitration rather than classwide arbitration); *Anwar v. Fairfield Greenwich Ltd.*, 950 F. Supp. 2d 633, 639 (S.D.N.Y. 2013) (holding that whether matter can proceed as a class is a gateway dispute for the court to decide); *Chen-Oster v. Goldman, Sachs & Co.*, 785 F. Supp. 2d 394, 404 (S.D.N.Y. 2011) (holding that "*Stolt-Nielsen* opened the door to judicial determination of the issue" of whether parties agreed to class arbitration), *overruled on other grounds sub nom. Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483 (2d Cir. 2013); *Safra Nat'l Bank v. Penfold Inv. Trading, Ltd.*, No. 10 Civ. 8255, 2011 WL 1672467, at *3 (S.D.N.Y. April 20, 2011) ("*Stolt-Nielsen* held that, absent an agreement to arbitrate on a class basis, the availability of class arbitration is a gateway issue to be decided by the courts.")

Were this Court to compel individual arbitration without deciding whether class arbitration is available, the same issues and concerns raised by the Supreme Court would be present. TCFI would be denied the benefits of the individual arbitration contemplated in the arbitration agreement: lower costs, great efficiency, and speed. TCFI would also have less confidentiality in a class arbitration as compared to a bilateral arbitration. There would be due process concerns as well: the arbitrator's award would bind not only the parties but also hundreds of absent class members. When TCFI drafted the arbitration agreement, it did not contemplate that a single arbitrator would make such an impactful decision covering a large class of restaurant employees in New York State. The other due process concern is the fact that

Gonzalez's NYLL claims could proceed on an opt-out class basis. As Justice Alito said in his concurring opinion in *Oxford Health*, "where absent class members have not been required to opt in, it is difficult to see how an arbitrator's decision to conduct class proceedings could bind absent class members who have not authorized the arbitrator to decide on a classwide basis which arbitration procedures are to be used."

Given these critical and fundamental differences between an individual arbitration and classwide arbitration, the Court should find that the availability of classwide arbitration is a gateway issue for the Court, and not an arbitrator, to decide—particularly here where the parties intended to arbitrate on an individual basis.

**B.      Classwide Arbitration Is Not Available Here.**

The Supreme Court has held that the "first principle" underscoring all of its arbitration decisions is that "[a]rbitration is strictly a matter of consent" and so the parties' intentions control. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010). Here, the plain language in the arbitration agreement indicates that the parties intended arbitration to proceed on an individual basis only. The agreement uses the singular pronoun "I" four times indicating that Gonzalez was agreeing to arbitration on behalf of himself only and not on behalf of any other TCFI employee. *See Chico v. Hilton Worldwide, Inc.*, No. CV 14-5750-JFW SSX, 2014 WL 5088240, at *12 (C.D. Cal. Oct. 7, 2014) (finding that there was "no contractual or other basis for concluding that the parties agreed to class-wide arbitration" because the arbitration agreement "repeatedly refer to Plaintiff in the singular"); *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 760 (3d Cir. 2016) (holding that arbitration provision did not clearly and unmistakably provide for class arbitration because singular terms were used to refer to the parties). The agreement also indicates that it is bilateral in nature: the only parties referenced in

the arbitration agreement are Gonzalez and TCFI. The agreement makes "no reference to employee groups, putative class members, other employees, or other employees' claims or disputes." *Chico*, 2014 WL 5088240, at *12. Nor does it make reference to class actions, collective actions, representative actions, or the like. So there is no doubt that Gonzalez and TCFI intended for the arbitration of employment related disputes to be individual and not classwide.

To the extent Gonzalez contends that the arbitration agreement is silent or ambiguous on whether classwide arbitration is available, TCFI "may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Lamps Plus*, 139 S. Ct. at 1412 (emphasis in original). "Silence is not enough." *Id.* at 1416. And like silence, "ambiguity does not provide a sufficient basis to conclude that parties to an arbitration agreement agreed to sacrifice the principal advantage of arbitration." *Id.* (internal quotation marks and alteration omitted). Accordingly, even assuming the arbitration agreement is silent or ambiguous as to the availability of classwide arbitration, neither silence nor ambiguity is grounds for compelling TCFI to classwide arbitration. *Id.* Instead there must be clear and unmistakable language demonstrating that Gonzalez and TCFI *agreed* to classwide arbitration. *Id.* at 1412. That language is not present here. And so TCFI cannot be forced into classwide arbitration and deprived of "the virtues Congress originally saw in arbitration" *Id.* at 1416.

## CONCLUSION

This Court should follow the other courts who have reviewed TCFI's arbitration agreement in its employee handbook acknowledgment form and stay this case and compel Gonzalez to arbitration. The Court should compel Gonzalez to individual rather than classwide

17

arbitration because the arbitration agreement shows the parties' intent to arbitrate employment related disputes on a strictly individual basis.

Dated: February 14, 2022

Respectfully submitted,

*/s/ Stephen Stecker*
Stephen Stecker
Anjanette Cabrera
Constangy, Brooks, Smith & Prophete LLP
101 6th Avenue
New York, New York 10013
Phone: 646.341.6544
Email: sstecker@constangy.com

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen Stecker, certify that the **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY CASE AND TO COMPEL INDIVIDUAL ARBITRATION** was filed on February 14, 2022, using the Court's Electronic Case Filing (ECF) system, which will send notice of the filing to Plaintiff's attorney:

> Steve Moser
> Moser Law Firm PC
> 5 East Main Street
> Huntington, New York 11743
> Phone: 516.671.1150
> Email: steven.moser@moserlawfirm.com

> */s/ Stephen Stecker*
> Stephen Stecker