**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**                    Case No. 2:21-cv-05017-PCK-SIL
------------------------------------------------------------- x
NOE GONZALEZ, individually and on behalf of all
others similarly situated,

                                                Plaintiff,

      -against-

THE CHEESECAKE FACTORY RESTAURANTS,
INC. d/b/a THE CHEESECAKE FACTORY,

                  Defendant.
------------------------------------------------------------- x

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO STAY CASE
## AND TO COMPEL INDIVIDUAL ARBITRATION

Gonzalez has filed an 18-page brief with 30 footnotes in an attempt to muddy the water and to call into question whether the Spanish version of the arbitration agreement is an accurate translation, admissible as evidence, and compels arbitration. Those efforts fail.

In terms of being an accurate translation, TCFI has produced both the English and Spanish versions of the arbitration agreement as well as a declaration from one its corporate directors verifying the translation from English to Spanish by a third-party translation company. In response, Gonzalez has produced a report from a purported Spanish expert who admits that TCFI's translation is a literal, word-for-word translation but asserts in her legal opinion that the agreement does not compel arbitration. The Court should strike the report because Gonzalez did not disclose the expert and because the expert's report is chock full of opinions on legal issues that are for this Court to decide.

In terms of being admissible evidence, Gonzalez argues that the Spanish version of the arbitration agreement is inadmissible because it is not accompanied by a certified translation, that the Lewis declaration is inadmissible because it is not based on personal knowledge, and that the

1

Lewis declaration exhibits are inadmissible hearsay. None of these arguments hold water. TCFI has authenticated the Spanish version through the Lewis declaration and an accompanying certified English version. The Lewis declaration is based on personal knowledge, which is broadly defined and which can by acquired through others and through a review of employment records. The Lewis declaration exhibits are admissible too because they fall within the business records exception to the rule against hearsay.

In terms of compelling arbitration, Gonzalez argues that the arbitration agreement is not clear, is not a condition of employment, is illusory, and is voluntary based on the use of the word "participate." Again, none of these arguments hold water. The agreement is clear and concise: if any employment dispute arises, "I agree to participate in arbitration proceedings"/"[Y]o acepto participar en un arbitraje." The arbitration agreement is also a condition of employment: the agreement uses the words "as a condition of and as consideration for the offer of employment by the Company"/"como condición de, y consideración de la oferta de empleo con la Compañía" in relation to arbitration. The arbitration agreement is not illusory: courts reviewing arbitration agreements in employee handbooks—including the very handbook at issue—have rejected this argument on multiple grounds and have held that general disclaimers in handbooks do not render arbitration agreements in those handbooks unenforceable. Nor is the arbitration agreement voluntary merely because the word "participate" is used. This argument is absurd for many reasons chief of which is Merriam-Webster, which defines "participate" as "to take part," meaning TCFI employees like Gonzalez were agreeing to take part in arbitration proceedings.

Because TCFI's arbitration agreement with Gonzalez is an accurate translation, admissible as evidence, and compels arbitration, this Court should follow the three other courts who have upheld the exact same agreement and order him to arbitration. The order to compel

should be for individual arbitration because the agreement does not authorize class actions.

## ARGUMENT

**I.      The Spanish version of the arbitration agreement is an accurate translation.**

Gonzalez has produced an expert report from Nydia Flores who opines that the Spanish version of the arbitration agreement does not compel arbitration as a matter of law. Gonzalez has done so in knowing and willful violation of FRCP 26(a)(2), which "mandates the disclosure of the identities of expert witnesses, as well as other related information such as their opinions and qualifications," and FRCP 37(c)(1), which is intended "to prevent the sandbagging of adverse parties" and "prohibits the use of expert opinions that were not timely disclosed under" FRCP 26(a)(2). *Lujan v. Cabana Management*, 284 F.R.D. 50, 77 (E.D.N.Y. 2012). TCFI moves to strike Flores' expert report under FRCP 26(a)(2) and 37(c)(1) because Gonzalez never disclosed her identity nor her opinions and qualifications. This failure severely prejudices TCFI by depriving it of the opportunity to depose Flores and to offer a rebuttal expert report.

Another reason to strike Flores' report is the content of the report itself. Flores says in her report that the Spanish version of the arbitration agreement "does not plainly compel or require arbitration of employment disputes, nor does it plainly state that the arbitral resolution will be binding on the employee." *See* Flores Report at 2. She goes on to say that TCFI "is not bound by the employee handbook" and "reserved the right to change the terms of the agreement at any time." *Id.* at 4. She then states that "the consent of both" TCFI and Gonzalez is required "in order to trigger arbitration." *Id.* at 5. She concludes her report by opining that the "language does not convey that arbitration is 'mandatory,' 'binding,' or the 'exclusive remedy.'" *Id.* In other words, Flores is giving her legal opinion on how the Spanish version of the arbitration agreement ought to be interpreted. The Second Circuit rejected a similar attempt in *Marx & Co., Inc. v. Diners'*

3

*Club*, 550 F.2d 505, 508 (2nd Cir. 1977), where it held that the district court erred by allowing an expert witness called by the plaintiffs "to give his opinion as to the legal obligation of the parties under the contract." *Id.* at 508. Flores should not be permitted to interpret the arbitration agreement nor should she be allowed to offer her legal opinions on the agreement—subjects for which she is woefully unqualified to offer opinion testimony. Her expert report should therefore be stricken. *See US v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (distinguishing between "factual conclusions that may be included in an expert's testimony" and "opinions embodying legal conclusions that encroach upon the court's duty to instruct on the law"); *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion."); *Scott v. Chipotle Mexican Grill*, 315 F.R.D. 33, 48 (S.D.N.Y. 2016) ("[C]ourts exclude expert testimony that provides legal opinions, legal conclusions, or interprets legal terms; those roles fall solely within the province of the court."); 3 Corbin on Contracts § 554 at 227 (1960) ("Construction (of a contract) is always a matter of law for the Court.") (cited with approval by *Marx*).

Even if the Court declined to strike Flores' report, it would still have no bearing on the outcome of TCFI's motion to compel arbitration. Flores admits that TCFI's translation of the arbitration agreement from English to Spanish is a literal, word-for-word translation. *See* Flores Report at 2-3. She simply states that she would have translated it differently. Leaving Flores aside, TCFI has produced extensive evidence in the form of the Barbara Lewis declaration and the English and Spanish versions of the arbitration agreement demonstrating that the Spanish version is true and accurate. *See* Barbara Lewis Supplemental Declaration ("Lewis Supp.

Decl.")[1] ¶¶ 6-10 & Exs. A-C. A side-by-side comparison of the English and Spanish versions of the arbitration agreement leave no doubt that they are identical and that TCFI had no intention, as Gonzalez implies, of misleading Spanish speakers as to the terms of arbitration:

| **English Version of Arbitration Agreement** | **Spanish Version of Arbitration Agreement** |
|---|---|
| "I recognize that differences may arise between me and the Company during, or following, my employment with the Company. I agree to participate in impartial dispute-resolution proceedings as a condition of and as consideration for the offer of employment by the Company. If I, or the Company, determine that the Company's internal procedures for handling claims (including but not limited to, reporting claims to my manager, the Area Director of Operations, the CARELINE, and/or the Staff Relations Department), have not resulted in a mutually acceptable resolution of disputes between me and the Company, I agree to participate in arbitration proceedings." | "Reconozco que pueden surgir diferencias entre la Compañía y yo, durante y despúes de mi empleo con la Compañía. Estoy de acuerdo en participar en un procedimiento de resolución de disputa imparcial, como condición de, y consideración de la oferta de empleo con la Compañía. Si yo, o la Compañía, determinamos que los procedimientos internos de la Compañía para manejar los reclamos (incluyen pero no están limitados a reportar los reclamos al gerente, al Director del Area de Operaciones a CARELINE, y/o al Departamento de Relaciones del Personal), no han dado como resultado una aceptable resolución de una disputa entre la Compañía y yo, yo acepto participar en un arbitraje." |

**II.    The Spanish version of the arbitration agreement is admissible.**

Gonzalez contends that the Spanish version of the arbitration agreement has not been properly authenticated by TCFI and therefore is not admissible evidence. As the Second Circuit has said, however, "[t]he bar for authentication is not particularly high." *US v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007). "Generally, a document is properly authenticated if a reasonable juror could find in favor of authenticity, a standard of reasonable likelihood, that we have described as minimal." *Id.* (internal quotation marks omitted).

Here, TCFI has met its minimal burden of authenticating the Spanish version of the

---

[1] TCFI submitted a declaration from Lewis as part of its opening motion. The declaration was based on personal knowledge within the meaning of FRE 602 and established that the Spanish version of the arbitration agreement was accurate. The declaration exhibits fit within the business records exception rule in FRE 803(6). TCFI's position is that the original declaration and attached exhibits are admissible and satisfy TCFI's evidentiary burden for its motion. TCFI nevertheless in an abundance of caution is submitting a supplemental declaration from Lewis as part of its reply and in direct response to the undisclosed and unfounded attacks made by Gonzalez in his opposition.

arbitration agreement (1) by providing testimony from one of its corporate directors on the authenticity of the Spanish version and (2) by providing the accompanying certified English translation. With regard to (1), Lewis has testified under oath that TCFI worked closely with a third-party translation company who certified the translation of the arbitration agreement from English to Spanish. *See* Lewis Supp. Decl. ¶ 7. And with regard to (2), Lewis attached a true and accurate copy of the accompanying English version of the arbitration agreement which she as a fluent English speaker certified as authentic. *See id.* Ex. A. This is the same English version reviewed by the courts in the Arizona, Maryland, and Tennessee TCFI arbitration agreement cases. *EEOC v. Cheesecake Factory, Inc.*, No. CV08-1207PHXNVW, 2009 WL 1259359 (D. Ariz. May 6, 2009); *Sedelnikova v. The Cheesecake Factory Rest., Inc.*, No. CIV. A. AW-09-2398, 2010 WL 2367387 (D. Md. June 7, 2010); *Smith et. al. v. The Cheesecake Factory Restaurants, Inc. et. al.*, No. 3:06-00829 (Doc. No. 107). For these reasons, the string of cases cited by Gonzalez are easily and readily distinguishable: the courts in these cases only had foreign language documents before them without any accompanying declarations and certified English translations. Because we have those here, the Spanish version of TCFI's arbitration agreement is authentic and thus admissible evidence. *Gagliardi*, 506 F.3d at 151.

### III. The Lewis declaration and exhibits are admissible.

Gonzalez argues that the Lewis declaration is admissible because it "is not based upon personal knowledge" as Lewis "does not profess to have any personal knowledge of the statements made in her declaration." Opp. at 6. Gonzalez's argument is circular and speculative. It is also demonstrably false: Lewis has testified at length about the basis for her personal knowledge of the facts relevant to TCFI's motion. Specifically, Lewis testified that she has worked at TCFI for over 25 years including from 1997 to 2020 as Director of Accounting and

6

Corporate Operations Support; that as Director of Accounting and Corporate Operations Support she hired, supervised, trained, directed, and supervised bookkeepers at TCFI's New York restaurants; that she directed and supervised the New York bookkeepers on the policies and procedures for distributing and communicating arbitration agreements to employees; that she was familiar with and knowledgeable about TCFI's "roll-out" of arbitration agreements to employees in New York; that she regularly accessed and reviewed TCFI's records on arbitration agreements for New York employees; that she reviewed Gonzalez's employment records (including his signed arbitration agreement); that she communicated regularly with the bookkeeper at the Huntington Restaurant; and that TCFI worked closely with the third-party translation service that translated the arbitration agreement from English to Spanish. *See* Lewis Supp. Decl. ¶¶ 2-10. This is more than enough to satisfy the FRE 602 personal knowledge standard. *See U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 3*, No. 00 CIV. 4763 RMB JCF, 2006 WL 2136249, at *11 (S.D.N.Y. Aug. 1, 2006) (holding that FRE 602 personal knowledge standard is not "narrowly defined"); *see also CIT Bank N.A. v. Elliott*, No. 15CV4395JSARL, 2018 WL 1701947, at *5 (E.D.N.Y. Mar. 31, 2018) (finding that affidavit testimony of witness was "admissible because it is based on personal knowledge that she gained by examining business records").

      What Gonzalez seems to be arguing is that Lewis can only have personal knowledge under FRE 602 if she personally witnessed Gonzalez grab a pen and sign his initials next to the arbitration agreement. Judge Posner sliced this argument in two when he stated that "most knowledge [is] social" and thus "[k]nowledge acquired through others may still be personal knowledge within the meaning of" FRE 602. *Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1523 (7th Cir. 1989). New York federal judges agree with Judge Posner. *See, e.g.*, *U.S.*

7

*Info. Sys.*, 2006 WL 2136249, at *11 ("Although first-hand observation is obviously the most common form of personal knowledge, that is not the only basis for it."). Requiring an employer to produce a witness who personally observed the signing of an arbitration agreement, as Gonzalez suggests, would hog-tie employers like TCFI in defending their agreements because they have thousands of employees in hundreds of restaurants across the US.

Turning to the Lewis declaration exhibits, Gonzalez attacks them too by labeling them as "hearsay." The exhibits cannot be excluded as hearsay because the business records exception in FRE 803(6) applies. As Lewis states in her declaration, the exhibits are true and correct records of the certified English version of the arbitration agreement (Exhibit A), the certified Spanish version of the arbitration agreement (Exhibit B), and certified Spanish version of the separate employee handbook acknowledgement form signed by Gonzalez (Exhibit C). *See* Lewis Supp. Decl. ¶¶ 8-10 & Exs. A-C. Lewis states that TCFI creates these records at or near the time they are distributed to employees; that TCFI maintains these records as part of its regular human resources activity; and that TCFI keeps these records in the ordinary and regular course of business. *See id.* ¶¶ 2, 8-10. These records are therefore business records within the meaning of FRE 803(6) and not excludable under the rule against hearsay.

**IV.     The Spanish version of the arbitration agreement compels arbitration.**

Gonzalez claims the arbitration agreement is not clear and distinct on compelling arbitration. Gonzalez is wrong. The arbitration agreement is clear and distinct that if any "differences," "claims," or "disputes" arise between Gonzalez and TCFI "during" or "following" his employment and those differences, claims, or disputes are not resolved internally, Gonzalez agrees "to participate in arbitration proceedings." The paragraph containing this language is distinct from the other paragraphs in the handbook acknowledgment page because it required

separate initialing and agreement by Gonzalez.

Gonzalez further claims that the arbitration agreement cannot compel him to arbitration because TCFI did not make arbitration a condition of employment. According to Gonzalez, "[a]lthough TCFI made '*participation in impartial-dispute resolution proceedings*' a condition of employment, it did not make *arbitration* a condition of continued employment." Opp. at 14 (italics in original). As three courts have already recognized, the syntax clearly indicates that "impartial-dispute resolution proceedings" refers to "arbitration proceedings." To read it otherwise would render the last sentence in the arbitration agreement superfluous. *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002) ("We disfavor contract interpretations that render provisions of a contract superfluous.").

Gonzalez also says that the arbitration agreement is illusory because of disclaimers on pages 13 and 64 of the handbook. The *Sedelnikova* court rejected this very argument in holding that the "arbitration agreement does not have to specifically provide that [TCFI] is bound to have the legal effect of binding [TCFI]." *Sedelnikova*, 2010 WL 2367387 at *6. The *EEOC* case did so too albeit on different grounds: under Arizona contract law, "when an employer changes the terms of at-will employment, it essentially makes a new offer of employment, and the employee may accept the new offer by performance, thus forming a new unilateral contract," and thus TCFI exercising its right to change any policies in the future "would merely create a new offer of employment for the future and could not affect the arbitration as to any prior period of completed work." *EEOC*, 2009 WL 1259359 at *4. New York contract law is in accord with Arizona contract law and further holds that employee handbook disclaimers do not prevent the formation of arbitration agreements. *See, e.g.*, *Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009) ("An employee may consent to a modification to the terms of employment by continuing

to work after receiving notice of the modification."); *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 78 (S.D.N.Y. 2015) (stating that "the disclaimers at the beginning of the Handbook do not prevent contract formation with respect to the [Employment Arbitration Program]").

Finally, Gonzalez argues that TCFI's use of the word "participate" renders the arbitration agreement non-binding. Gonzalez offers several suggestions on how TCFI should have drafted the agreement and then cherry-picks quotes from a U.S. Supreme Court search and seizure case, Forbes article, Chicago Tribune article, and Florida federal district court case. Leaving aside Gonzalez's cherry-picked citations, his argument is meritless for three simple reasons. First, Merriam-Webster's online dictionary defines "participate" as "to take part," meaning that Gonzalez was agreeing to take part in arbitration. *See* https://www.merriam-webster.com/dictionary/participate. Second, three courts reviewed the exact same verb in the exact same arbitration agreement and held that arbitration was mandatory and not voluntary. Third, cases in the Second Circuit are full of references to parties "participating" in mandatory arbitration. *See, e.g.*, *Citigroup Inc. v. Sayeg Seade*, No. 21 CIV. 10413 (JPC), 2022 WL 179203, at *10 (S.D.N.Y. Jan. 20, 2022) ("[T]he Court compels arbitration and orders Sayeg to participate in the Arbitration.").[2] So the Court should reject Gonzalez's strained reading of the word "participate" in the arbitration agreement.

## V.    The Spanish version of the arbitration agreement calls for individual arbitration.

Gonzalez argues that the short-form arbitration agreement that he signed does not preclude his "ability to assert class claims in arbitration." Opp. at 17. Gonzalez compares the short-form arbitration agreement with the long-form arbitration agreement and claims that the

---

[2] Indeed, if one runs the search "participat!" /s "arbitration" on Westlaw Edge and sorts by "2nd Circuit," one will get 1,942 case hits. This indicates the word "participate" is commonly used by courts in conjunction with mandatory arbitration.

10

latter but not the former contains class-action waiver language. Gonzalez's argument is a red herring. TCFI is moving to compel arbitration based on the short-form arbitration agreement—which is the applicable agreement signed by the parties. The plain language of that agreement shows that the parties intended individual arbitration only. Gonzalez does not and cannot respond to the plain language in the applicable agreement: the only two parties mentioned are Gonzalez and TCFI; the singular pronoun "I" is repeatedly used; there is no reference to putative class members, employee groups, or the like; and there is no reference to class actions, collective actions, or the like. Although Gonzalez speculates on what TCFI's intentions were when they drafted the short-form arbitration agreement, the plain language of the agreement is what controls and not Gonzalez's speculation as to what TCFI may or may not have been thinking when they drafted the agreement. *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 58 (2d Cir. 2001) ("Like any other contract, courts must interpret an arbitration provision to give effect to the parties' intent *as expressed by the plain language of the provision*.") (emphasis added). To the extent Gonzalez is claiming that the plain language is silent or ambiguous as to the availability of a class action, neither silence nor ambiguity is enough to force TCFI into a class arbitration. *Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407, 1412 & 1416 (2019).

## CONCLUSION

For these reasons and those in TCFI's opening brief, the Court should stay the case and compel Gonzalez to individual arbitration.

Dated: May 20, 2022

Respectfully submitted,

*/s/ Stephen Stecker*
Stephen Stecker
Anjanette Cabrera
Constangy, Brooks, Smith & Prophete LLP
101 6th Avenue
New York, New York 10013
Phone: 646.341.6544
Email: sstecker@constangy.com

**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

I, Stephen Stecker, certify that the **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO STAY CASE AND TO COMPEL INDIVIDUAL ARBITRATION** was filed on May 20, 2022, using the Court's Electronic Case Filing (ECF) system, which will send notice of the filing to Plaintiff's attorney:

> Steve Moser
> Moser Law Firm PC
> 5 East Main Street
> Huntington, New York 11743
> Phone: 516.671.1150
> Email: steven.moser@moserlawfirm.com

>> */s/ Stephen Stecker*
>> Stephen Stecker