**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NOE GONZALEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>THE CHEESECAKE FACTORY RESTAURANTS, INC. d/b/a THE CHEESECAKE FACTORY,<br><br>Defendants. | 21-cv-5017<br><br>Hon. Pamela K. Chen, USDJ |

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

Steven John Moser (SM1133)
MOSER LAW FIRM, P.C.
5 East Main Street
Huntington, NY 11743
(516) 671-1150
smoser@moseremploymentlaw.com
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT .............................................................................................................................2

   I.   THE SPANISH HANDBOOK DOES NOT COMPEL BINDING ARBITRATION ....... 2

   II.   DEFENDANT HAS NOT PROVEN THE EXISTENCE OF AN AGREEMEN TO
       ARBITRATE ................................................................................................................. 3

       A.   Defendant Bears the Burden of Proving an Agreement to Arbitrate ....................................3

       B.   Only Admissible Evidence may be Considered on a Motion to Compel Arbitration ...........3

       C.   The Spanish Handbook is Inadmissible, Because it is a Foreign Language Document
           Unaccompanied by a Certified Translation ...........................................................................4

       D.   The Lewis Declaration is Inadmissible Because it is Not Based on Personal Knowledge ....6

       E.   The Documents Annexed to the Lewis Declaration are Inadmissible Hearsay ....................6

       F.   The English Handbook is Inadmissible Because it was Not Signed by the Plaintiff and it is
           Not an Accurate Translation of the Spanish Handbook .........................................................7

       G.   TCFI May Not Cure its Defective Motion by Supplying New Evidence in its Reply ..........7

   III.   EVEN IF THE PLAINTIFF HAD SIGNED THE ENGLISH VERSION OF THE
       HANDBOOK, ARBITRATION WOULD NOT BE COMPELLED ............................... 8

       A.   The Purported "Arbitration Agreement" is Illusory ..............................................................8

       B.   The Cases Cited by Defendant are Neither Binding nor Persuasive .....................................9

       C.   The Implied Covenant of Good Faith and Fair Dealing is Inapplicable and Does not
           Constitute Consideration ......................................................................................................10

       D.   The Arbitration Provision is Unenforceable Because TCFI did Not Expressly Make
           Arbitration a Condition of Employment ..............................................................................13

       E.   The Arbitration Envisioned by the Agreement is Non-Binding, and Therefore is not
           Recognized Under the FAA as a Basis for a Stay ...............................................................15

   IV.   IF THE COURT COMPELS ARBITRATION, IT SHOULD COMPEL ARBITRATION
       ON A CLASS BASIS ................................................................................................... 17

CONCLUSION ........................................................................................................................18

## Table of Authorities

**Supreme Court Opinions**

*AT&T Mobility LLC v. Concepcion,*
    563 U.S. 333, 131 S. Ct. 1740 (2011) ................................................................. 15

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.,*
    559 U.S. 662, 130 S. Ct. 1758 (2010) ................................................................. 17

*Vernonia Sch. Dist. 47J v. Acton,*
    515 U.S. 646, 115 S. Ct. 2386 (1995) ................................................................. 16

**Second Circuit Opinions**

*Biggs v. Midland Credit Mgmt.,*
    No. 17-CV-340 (JFB)(ARL), 2018 U.S. Dist. LEXIS 41146 (E.D.N.Y. Mar. 9, 2018) ......... 3

*Brown v. St. Paul Travelers Co.,*
    331 F. App'x 68 (2d Cir. 2009) ....................................................... 14-15

*Chen v. Wai Café Inc.,*
    No. 10 Civ. 7254, 2016 U.S. Dist. LEXIS 20519, 2016 WL 722185 (S.D.N.Y. Feb. 19, 2016)
    ........................................................................................... 4

*Chevron Corp. v. Donziger,*
    974 F. Supp. 2d 362 (S.D.N.Y. 2014) ................................................... 5

*Curry v. Volt Info. Scis., Inc.,*
    No. 07 Civ. 7158, 2008 U.S. Dist. LEXIS 20910, 2008 WL 719214 (S.D.N.Y. Mar. 18, 2008)
    ........................................................................................... 14

*Delgado v. Ocwen Loan Servicing, L.L.C.,*
    No. 13-CV-4427 (NGG) (ST), 2016 U.S. Dist. LEXIS 119069 (E.D.N.Y. Sept. 2, 2016) ..... 3

*Diaz v. City Univ. of N.Y.,*
    No. 13 Civ. 2038, 2017 U.S. Dist. LEXIS 113279, 2017 WL 3088394 (S.D.N.Y. July 20,
    2017)..................................................................................... 5

*Discover Re Managers, Inc. v. Preferred Emps. Grp., Inc.,*
    No. 3:05-CV-809 (WWE), 2006 U.S. Dist. LEXIS 71818 (D. Conn. Sept. 28, 2006) ........... 6

*Ediciones Quiroga, S.L. v. Fall River Music,*
    No. 93 Civ. 3914 (RPP), 1998 U.S. Dist. LEXIS 19039, 1998 WL 851574 (S.D.N.Y. Dec. 4,
    1998)..................................................................................... 4

*Grand River Enters. Six Nations v. King,*
    No. 02 Civ. 5068 (JFK), 2012 U.S. Dist. LEXIS 10802 (S.D.N.Y. Jan. 30, 2012) ............. 7-8

*Heredia v. Americare, Inc.*,
   No. 17 Civ. 06219 (RWL), 2020 U.S. Dist. LEXIS 122880 (S.D.N.Y. July 13, 2020) ........... 5

*In re 114 Tenth Ave. Ass'n*,
   441 B.R. 416 (S.D.N.Y. 2010) ......................................................... 8-9

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   No. 11 Civ. 2279, 2012 U.S. Dist. LEXIS 123757, 2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012).................................................................................... 5

*Isaacs v. OCE Bus. Servs.,*
   968 F. Supp. 2d 564 (S.D.N.Y. 2013) ............................................... 13-14

*Jianjun Chen v. 2425 Broadway Chao Rest., L.L.C.*,
   No. 1:16-cv-5735-GHW, 2019 U.S. Dist. LEXIS 43893, 2019 WL 1244291 (S.D.N.Y. Mar. 18, 2019)..................................................................................... 5

*Klos v. Polskie Linie Lotnicze,*
   133 F.3d 164 (2d Cir. 1997) ............................................................ 17

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) ............................................................... 3

*NV Petrus SA v. LPG Trading Corp.*,
   No. 14-CV-3138 (NGG) (PK), 2017 U.S. Dist. LEXIS 69935, 2017 WL 1905820 (E.D.N.Y. May 8, 2017).................................................................................. 4

*Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc.*,
   320 F.3d 362 (2d Cir. 2003) ........................................................... 15

*Oppenheimer & Co. v. Neidhardt,*
   56 F.3d 352 (2d Cir. 1995) ............................................................... 3

*Patterson v. Raymours Furniture Co.*,
   Inc., 96 F.Supp.3d 71 (S.D.N.Y. 2015) ................................................ 14

*Paz Sys. v. Dakota Grp. Corp.*,
   No. CV 05-4763 (LDW) (WDW), 2006 U.S. Dist. LEXIS 103301 (E.D.N.Y. June 16, 2006) ............................................................................................ 7

*S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497 (S.D.N.Y. 2021)
   .................................................................................... 10, 11

*Seltzer v. Clark Assocs., L.L.C.*,
   No. 20 Civ. 4685 (AKH), 2020 U.S. Dist. LEXIS 161542 (S.D.N.Y. Sept. 3, 2020) ..... 13, 15

*Shaw Grp., Inc. v. Triplefine Int'l Corp.*,
   322 F.3d 115 (2d Cir. 2003) ........................................................... 15

*Sicom S.P.A. v. TRS Inc.*,
   168 F. Supp. 3d 698, 709 & n.9 (S.D.N.Y. 2016) ...................................... 4

iv

*Starke v. Squaretrade, Inc.*,
   913 F.3d 279 (2d Cir. 2019) ................................................................. 9

*Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*,
   548 F.3d 85 (2d Cir. 2008) ................................................................. 17

*United States ex rel.* Harris *v. EPS, Inc.*,
   No. 05 Civ. 212, 2006 U.S. Dist. LEXIS 30012, 2006 WL 1348173 ................................... 13

**Federal Court Opinions**

*Agostino v. Ally Fin. Inc.*,
   Case No: 8:18-cv-1202-T-36TGW, 2018 U.S. Dist. LEXIS 195764 (M.D. Fla. Nov. 16,
   2018) ...................................................................................... 6-7

*Day v. Fortune Hi-Tech Mktg.*,
   536 F. App'x 600 (6th Cir. 2013) ......................................................... 9

*Dumais v. Am. Golf Corp.*,
   150 F. Supp. 2d 1182 (D.N.M. 2001) ...................................................... 9

*Sedelnikova v. Cheesecake Factory Rest., Inc.*,
   Civil Action No. AW-09-2398, 2010 U.S. Dist. LEXIS 56211 (D. Md. June 7, 2010) ..... 9, 10

*Nelson v. Tamko Bldg. Prods.*,
   No. 15-1090-MLB, 2015 U.S. Dist. LEXIS 75597 (D. Kan. June 11, 2015) ................. 7

*Perez v. Hosp. Ventures Denver L.L.C.*,
   245 F. Supp. 2d 1172 (D. Colo. 2003) .................................................... 9

*Pub. Risk Mgmt. of Fla. v. Wesco Ins. Co.*,
   No. 6:21-cv-788-GAP-LRH, 2021 U.S. Dist. LEXIS 219542 (M.D. Fla. Sept. 28, 2021)
   ......................................................................................... 16, 17

*Springs Indus., Inc. v. Am. Motorists Ins. Co.*,
   137 F.R.D. 238 (N.D. Tex. 1991) ......................................................... 7

*Trumbull v. Century Mktg. Corp.*,
   12 F. Supp. 2d 683 (N.D. Ohio 1998) .................................................... 9

**State Cases**

*1357 Tarrytown Rd. Auto, L.L.C. v. Granite Props., L.L.C.*,
   2016 N.Y. Slip Op. 05981 (2d Dep't Sept. 14, 2016) ................................... 11

*Graham v. Command Sec. Corp.*,
   46 Misc. 3d 1224(A), 13 N.Y.S.3d 850 (N.Y. Sup. Ct. 2014) ........................... 15

*Horn v. N.Y. Times*,
   100 N.Y.2d 85, 760 N.Y.S.2d 378, 790 N.E.2d 753 (2003) ............................. 12

*Murphy v. Am. Home Prods. Corp.*,
    58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983)  ..................................................... 12

*Quadrant Structured Prods. Co.*, Ltd. *v. Vertin*,
    2014 NY Slip Op 4114, 23 N.Y.3d 549, 992 N.Y.S.2d 687, 16 N.E.3d 1165 (2014) ........... 14

*Rowe v. Great Atl. & Pac. Tea Co.*,
    46 N.Y.2d 62, 412 N.Y.S.2d 827, 85 N.E.2d 566 (1978)  ...................................................... 11

*Zolotar v. N.Y. Life Ins. Co.*,
    172 A.D.2d 27, 576 N.Y.S.2d 850 (1st Dep't 1991)  ............................................................. 12

## PRELIMINARY STATEMENT

According to the Cheesecake Factory Restaurants, Inc. ("TCFI") only "the Spanish language version of the employee handbook. . .was provided to Mr. Gonzalez."[1]  However, the language in the Spanish handbook does not compel binding arbitration.[2]

Moreover, the Defendant has not offered any evidence in admissible form in support of the motion to compel arbitration. A party seeking to compel must bears the burden of showing, through admissible evidence, that an agreement to arbitrate exists.[3] On March 1, 2022, after reviewing the Defendant's moving papers, Plaintiff advised The Cheesecake Factory Restaurants, Inc. ("TCFI") that it had failed to submit evidence in admissible form in support of its motion to compel arbitration.[4] Plaintiff also advised TCFI:

> [W]e would strenuously object to any further evidentiary submissions in the Defendant's reply. However, in the interests of reaching the merits of the Defendant's Motion, please advise if [TCFI]is willing to submit a supplemental declaration setting forth the basis for each factual statement made in the Declaration [of Barbara Lewis] as well as a proper evidentiary foundation for the documents.[5]

---

1 *See* Declaration of Barbara Lewis ("Lewis Decl."), ¶ 7; the Spanish version of the handbook is titled "Manual Del Miembro Del Personal" (the "Spanish handbook" or "Spanish version")

2 *See* Expert Report of Dr. Nydia Flores-Ferran, Ph.D., at ¶ 10 (stating that the Spanish handbook "expresses ambiguity and confusion, and its terminology leads to misguided readings or misinterpretations. As written in Spanish, it does not plainly compel or require arbitration of employment disputes, nor does it plainly state that the arbitral resolution will be binding on the employee.")

3 TCFI presents a Spanish version of the handbook titled "Manual Del Miembro Del Personal" (the "Spanish handbook" or "Spanish version"), which is unaccompanied by a certified translation, and therefore inadmissible. TCFI offers no foundation for the admissibility of the "Staff Member Handbook" (the "English handbook" or "English version"). The English version is offered by Barbara Lewis, an individual who does not state that she is fluent in English and Spanish, and offers no qualifications regarding her translating abilities or expertise. Moreover, TCFI does not state that the English version is a "true and accurate" translation of the Spanish handbook.

4 A copy of the relevant email thread is annexed to the Declaration of Steven J. Moser ("Moser Decl.") as Exhibit 1.

5 *Id.*

Counsel for the respective parties discussed Plaintiff's concerns during a telephone call on March 4, 2022. To date, TCFI has not furnished evidence in admissible form in support of the motion.[6]

The English version of the handbook is not properly before this court. However, even assuming that it was signed by the Plaintiff, it would neither compel arbitration nor make such arbitration binding. The English handbook is illusory, and the document implies that arbitration is non-binding.

For these reasons, the motion to compel should be denied.

## ARGUMENT

## I.   THE SPANISH HANDBOOK DOES NOT REQUIRE ARBITRATION, NOR DOES IT MAKE ARBITRATION BINDING

Plaintiff retained a Spanish and linguistics expert, Dr. Nydia Flores-Ferran, Professor Emerita in Language Education and Bilingualism and Second Language Acquisition at Rutgers University's Graduate School of Education and School of Arts and Sciences, to examine the Spanish handbook. According to Dr. Flores,

> Linguistic markers related to the last two pages of the manual titled "Acuerdo de Confidencialidad y Recibo del Manual" exhibit numerous contradictory messages. The language expresses ambiguity and confusion, and its terminology leads to misguided readings or misinterpretations. As written in Spanish, it does not plainly compel or require arbitration of employment disputes, nor does it plainly state that the arbitral resolution will be binding on the employee. [7]

Among the issues identified by Dr. Flores-Ferran are the following: (1) The Spanish handbook requires both TCFI and the Plaintiff to both agree whether to arbitrate a dispute. This gives TCFI the power to determine whether arbitration will take place.[8] (2) The Spanish

---

[6] *See* Moser Decl.

[7] Expert Report ¶ 10.

[8] Expert Report ¶¶ 23-28.

handbook indicates that TCFI was not bound by any part of the handbook, including the last two pages. [9] Therefore, the Spanish handbook is illusory.

## II.   DEFENDANT HAS NOT PROVEN THE EXISTENCE OF AN AGREEMENT TO ARBITRATE

### A.   Defendant Bears the Burden of Proving an Agreement to Arbitrate

"Under New York law, the party seeking to compel arbitration has the burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate." *Biggs v. Midland Credit Mgmt.*, No. No 17-CV-340 (JFB)(ARL), 2018 U.S. Dist. LEXIS 41146, at *18 (E.D.N.Y. Mar. 9, 2018). Thus, defendant must present evidence which is sufficient to demonstrate an enforceable agreement to arbitrate. *Oppenheimer & Co. v. Neidhardt,* 56 F.3d 352, 358 (2d Cir. 1995). Only after defendant makes such a showing does the burden shifts to plaintiffs to demonstrate a genuine issue for trial. *See Id.*

### B.   Only Admissible Evidence may be Considered on a Motion to Compel Arbitration

"Courts deciding motions to compel [arbitration] apply a standard similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017). Because "a motion to compel arbitration is reviewed under a summary judgment standard[,] only admissible evidence may be considered." *Delgado v. Ocwen Loan Servicing, L.L.C.*, No. 13-CV-4427 (NGG) (ST), 2016 U.S. Dist. LEXIS 119069, at *20-22 (E.D.N.Y. Sept. 2, 2016) (citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012)); *Meyer*, 868 F.3d at 74"

---

[9] Expert Report ¶¶ 18-22.

### C.   The Spanish Handbook is Inadmissible, Because it is a Foreign Language Document Unaccompanied by a Certified Translation

It is a "well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation." *Chen v. Wai Café Inc.*, No. 10 Civ. 7254, 2016 U.S. Dist. LEXIS 20519, 2016 WL 722185, at *6 n.5 (S.D.N.Y. Feb. 19, 2016); *see also Sicom S.P.A. v. TRS Inc.*, 168 F. Supp. 3d 698, 709 & n.9 (S.D.N.Y. 2016) (foreign-language documents, even if authenticated, "cannot be reviewed or relied on by the Court . . . unless they are accompanied by certified translations into English"); *NV Petrus SA v. LPG Trading Corp.*, No. 14-CV-3138 (NGG) (PK), 2017 U.S. Dist. LEXIS 69935, 2017 WL 1905820, at *2 (E.D.N.Y. May 8, 2017) (reminding parties "that they must provide certified translations of any foreign language documents that they seek to introduce at trial"); *Ediciones Quiroga, S.L. v. Fall River Music*, No. 93 Civ. 3914 (RPP), 1998 U.S. Dist. LEXIS 19039, 1998 WL 851574, at *2 n.3 (S.D.N.Y. Dec. 4, 1998) ("Translations of foreign-language documents which are not certified as true and accurate translations and which do not even identify the translator are not properly authenticated and are not admissible evidence.").

The Spanish handbook is unaccompanied by a certified translation. Therefore, it is inadmissible.

The following statement, made by Barbara Lewis, is insufficient to establish the admissibility of the handbook:

> The Spanish language version of the employee handbook is a literal word-for-word translation of the English version. TCFI uses a third-party translation service to translate the employee handbook from English to Spanish.[10]

---

[10] *See* Declaration of Barbara Lewis ("Lewis Decl.") ¶ 6.

TCFI's declarant does not claim to be fluent in English and Spanish, or offer any basis for her opinion that the English handbook is a "literal" translation of the Spanish version. She does not state how she knows that the "third-party" translated the handbook "literally." She does not identify the translation service.

More importantly, Ms. Lewis does not assert that she is a court-certified, professionally qualified, or language-skilled interpreter fluent in English and Spanish. Nor does she assert that the English handbook is a "true and accurate" translation of the Spanish handbook. Therefore, the Spanish handbook is inadmissible. *See Heredia v. Americare, Inc.*, No. 17 Civ. 06219 (RWL), 2020 U.S. Dist. LEXIS 122880, at *12 (S.D.N.Y. July 13, 2020) (Spanish language documents unaccompanied by a certified translation "are inadmissible and will not be considered by the Court."); *Jianjun Chen v. 2425 Broadway Chao Rest., L.L.C.*, No. 1:16-cv-5735-GHW, 2019 U.S. Dist. LEXIS 43893, 2019 WL 1244291, at *15 n.10 (S.D.N.Y. Mar. 18, 2019) ("Exhibits 21 and 22 to that affidavit are untranslated-handwritten-Mandarin documents which the Court does not accept as evidence"); *Diaz v. City Univ. of N.Y.*, No. 13 Civ. 2038, 2017 U.S. Dist. LEXIS 113279, 2017 WL 3088394, at *7 n.9 (S.D.N.Y. July 20, 2017), adopted 2017 U.S. Dist. LEXIS 151113, 2017 WL 4155400 (S.D.N.Y. Sept. 18, 2017) ("[The Court has] not considered any document in the record that is not translated into English."); *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 704-05 (S.D.N.Y. 2014) (striking Defendants' exhibits that were entirely or partly in Spanish); *In re Advanced Battery Techs., Inc. Sec. Litig.*, No. 11 Civ. 2279, 2012 U.S. Dist. LEXIS 123757, 2012 WL 3758085, at *9 (S.D.N.Y. Aug. 29, 2012) ("The fact that the ABAT Defendants failed to provide certified translations of the words that appear on the screen shots precludes my consideration of them").

**D.     The Lewis Declaration is Inadmissible Because it is Not Based on Personal Knowledge**

It is well established that an affidavit must be based on the personal knowledge of the affiant. *Discover Re Managers, Inc. v. Preferred Emps. Grp., Inc.*, No. 3:05-CV-809 (WWE), 2006 U.S. Dist. LEXIS 71818, at *16 (D. Conn. Sept. 28, 2006); FRCP 56(c)(4)("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.")

The Lewis Declaration is not based upon personal knowledge. Ms. Lewis does not profess to have any personal knowledge of the statements made in her declaration. Instead, she suggests that she does not have any personal knowledge, because "the bookkeepers at the restaurants handled all employment paperwork at the restaurant including all onboarding paperwork."[11]

**E.     The Documents Annexed to the Lewis Declaration are Inadmissible Hearsay**

Hearsay is inadmissible unless one of the exceptions to the rule against hearsay applies. *See* FRE §§ 801- 802. All of the documents submitted by TCFI constitute hearsay. TCFI does not show that an exception to the rule against hearsay applies. Instead, it relies upon conclusory statements unsupported by personal knowledge.[12]

Because the TCFI has failed to submit competent evidence of an agreement to arbitrate, the motion should be denied. Agostino v. Ally Fin. Inc., *No. Case No: 8:18-cv-1202-T-36TGW, 2018 U.S. Dist. LEXIS 195764, at *9* (M.D. Fla. Nov. 16 2018) ("Ally has not met its burden to provide competent evidence upon which this Court can rely to find that either an agreement to

---

[11] Lewis Decl. ¶ 2.

[12] Ms. Lewis does not say whether the documents were made or kept in the regular course of business, how the documents were kept, how she knows that the Spanish handbook was initialed and signed by Mr. Gonzalez (¶ 6), or how she knows that documents were furnished to Mr. Gonzalez (¶ 7).

arbitrate exists[.]" The arbitration agreement "is not in an admissible form because no person authenticates it or establishes it as Ally's business record or otherwise meets an exception to the hearsay rule."); *Nelson v. Tamko Bldg. Prods.*, No. 15-1090-MLB, 2015 U.S. Dist. LEXIS 75597, at *4 (D. Kan. June 11, 2015) ("Defendant has merely attached the unauthenticated limited warranty to its motion. Because defendant has not submitted evidence sufficient to establish an enforceable agreement to arbitrate, defendant's motion to compel arbitration is denied.").[13]

**F.      The English Handbook is Inadmissible Because it was Not Signed by the Plaintiff and it is Not an Accurate Translation of the Spanish Handbook**

Although all of TCFI's arguments are focused on the English version, it overlooks the fact that the English version is not properly before the Court. TCFI it concedes that the English version was neither provided to, nor signed by, the Plaintiff.[14] Moreover, even assuming (without conceding) that the English version is a "word-for-word literal translation" of the Spanish handbook, the translation is flawed.[15]

**G.      TCFI May Not Cure its Defective Motion by Supplying New Evidence in its Reply**  Error! Bookmark not defined.

"It cannot seriously be disputed that a movant is obligated to file with a motion the evidentiary materials necessary to justify the relief it seeks." Springs Indus., Inc. v. Am. Motorists Ins. Co., 137 F.R.D. 238, 239 (N.D. Tex. 1991). "A reply brief should not [. . .] be used to cure a defective motion by providing new evidence." Paz Sys. v. Dakota Grp. Corp., No. CV 05-4763 (LDW) (WDW), 2006 U.S. Dist. LEXIS 103301, at *10 (E.D.N.Y. June 16, 2006); Grand River

---

[13] Although Plaintiff refers to the documents annexed to the Lewis Declaration, Plaintiff does not thereby concede or agree that TCFI has submitted any admissible evidence. References to the documents are only made to the extent that the Court considers said documents in its decision.

[14] *See* Lewis Decl. ¶ 6 ("New hires whose primary language was Spanish were provided the Spanish language version of the employee handbook."), ¶ 7 ("the Spanish language version of the employee handbook. . .was provided to Mr. Gonzalez").

[15] *See* Expert Report of Dr. Nydia Flores-Ferran, Ph.D.

Enters. Six Nations v. King, No. 02 Civ. 5068 (JFK), 2012 U.S. Dist. LEXIS 10802, at *23

(S.D.N.Y. Jan. 30, 2012) (therefore documents submitted for the first time with a reply "are not

properly before the Court and will not be considered.").

### III.    EVEN IF THE PLAINTIFF HAD SIGNED THE ENGLISH VERSION OF THE HANDBOOK, ARBITRATION WOULD NOT BE COMPELLED[16]

### A.    The Purported "Arbitration Agreement" is Illusory

The English handbook contains a table of contents titled "What's In Your Cheesecake

Factory Handbook." Included among the contents of the handbook are "Things You Need To

Know", and "Handbook Receipt And Confidentiality Agreement".

Under the section "Things You Need To Know", the handbook states:

Other than your at-will employment status, The Cheesecake Factory reserves the right to change or revise policies, procedures and benefits described in this Handbook as the need arises [. . .] [It] is not, nor should be, considered to be an agreement or contract of employment, express or implied, or a promise of treatment in a particular manner in any given situation.[17]

Under the section "Handbook Receipt And Confidentiality Agreement", the handbook

states:

I am aware that The Cheesecake Factory may, in its sole discretion, change, rescind or add to any policies, benefits or practices described in this handbook [. . .] I also understand that the Handbook and other training materials are not, nor should they be considered to be, an agreement or contract of employment, express or implied [. . .][18]

TCFI did not except any portion of the handbook from this unfettered discretion.

It is well established that "if the promisor is free to perform it or not, as he wills, [a

promise] is wholly illusory and will not be enforced." *In re 114 Tenth Ave. Ass'n*, 441 B.R. 416,

---

[16] Again, Plaintiff contends that the English handbook is not properly before the Court and the arguments concerning the English handbook are made assuming the Plaintiff had signed and been presented with the English handbook.

[17] English handbook, p. 13.

[18] English handbook, p. 68.

428 (S.D.N.Y. 2010). Numerous courts have found that where a party has unilateral authority to modify the terms of an arbitration agreement without the other party's consent and with little or no notice, the arbitration agreement is illusory. *Day v. Fortune Hi-Tech Mktg.*, 536 F. App'x 600, 604 (6th Cir. 2013) (finding an arbitration provision which allowed the drafter to modify at any time made the promise illusory and the contract void for lack of consideration)); *Perez v. Hosp. Ventures Denver L.L.C.*, 245 F. Supp. 2d 1172, 1175 (D. Colo. 2003) (finding the ability to modify the terms of an arbitration agreement unilateral rather than mutual and therefore illusory); *Dumais v. Am. Golf Corp.*, 150 F. Supp. 2d 1182, 1193–94 (D.N.M. 2001) (finding an arbitration agreement that allowed the drafter to unilaterally modify to be illusory); *Trumbull v. Century Mktg. Corp.*, 12 F. Supp. 2d 683, 686 (N.D. Ohio 1998) (finding an employment contract that allowed for unilateral modification by the employer to be illusory, including the arbitration clause).

**B.    The Cases Cited by Defendant are Neither Binding nor Persuasive**

TCFI cites to cases from the District of Maryland, the District of Arizona, or the Western District of Tennessee, which are neither binding nor persuasive, as they are from district courts and rely upon state law. These cases did not consider the language of the Spanish handbook, and are therefore did not address the issue before this Court - whether the Spanish handbook compels binding arbitration. Moreover, in *Sedelnikova v. Cheesecake Factory Rest., Inc.,* Civil Action No. AW-09-2398, 2010 U.S. Dist. LEXIS 56211, at *8-9 (D. Md. June 7, 2010), the court did not apply the proper standard. On a motion to compel arbitration, the court must draw "all reasonable inferences in favor of the non-moving party." *Starke v. Squaretrade, Inc.*, 913 F.3d 279, 281 n.1 (2d Cir. 2019) (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). The *Sedelnikova* court specifically noted the handbook language permitting TCFI to "in its sole discretion, change" or "rescind" the contents of the handbook, and stated

> This Court would *certainly find a lack of consideration* in this agreement were the Court to consider the arbitration clause *part* of the revocable *Handbook policies* and other training materials.

2010 U.S. Dist. LEXIS 56211, at *8-9 (emphasis added).[19] The *Sedelnikova* court also acknowledged that "[c]ertainly, the arbitration agreement's presence on page sixty-six of the Handbook lends some weight to Plaintiff's argument that the arbitration policy is part of the Handbook policies." *Id.* Nevertheless, the Court resolved an issue of fact against the non-movant by finding that "the arbitration agreement is distinct from the Handbook policies." *Id.* Stated another way, *"Yes, TCFI reserved the right to change 'any of the policies [or] practices' contained in 'this handbook.' Yes, 'this handbook', includes the pages initialed or signed by the Plaintiff mentioning arbitration. Yes, the arbitration practices and policies on pages 68 and 69 are contained within 'this handbook.'* However, at the same time, the arbitration policies are 'distinct' from all of the other practices and policies in the handbook, and constitute an enforceable agreement."

### C.   The Implied Covenant of Good Faith and Fair Dealing is Inapplicable and Does not Constitute Consideration

TCFI may point to case law in New York holding that where the covenant of good faith and fair dealing acts as a limitation on the employer's discretion to change the terms of the handbook, there is sufficient consideration. *See e.g., S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497, 506 (S.D.N.Y. 2021).

> The implied covenant of good faith and fair dealing is breached when a party acts in a manner that would deprive the other party of the right to receive the benefits of their agreement. The implied covenant includes any promises which a reasonable promisee would be justified in understanding were included. *However, no obligation may be implied that would be inconsistent with other terms of the contractual relationship.*

---

[19] (D. Md. June 7, 2010)

*1357 Tarrytown Rd. Auto, L.L.C. v. Granite Props., L.L.C.*, 2016 N.Y. Slip Op. 05981 (2d Dep't Sept. 14, 2016).

The implied covenant is inapplicable for several reasons.  First, the TCFI handbook expressly disclaims the creation of any contractual relationship between the parties. According to the handbook,

> Other than your at-will employment status, The Cheesecake Factory reserves the right to change or revise policies, procedures and benefits described in this Handbook as the need arises. *This Handbook is provided as a guide[.] The Handbook is not, nor should be, considered to be an agreement or contract of employment, express or implied, or a promise of treatment in a particular manner in any given situation.*
>
> * * *
>
> The Company can terminate the employment relationship at will, at any time, with or without cause or advance notice.[20]

The implied covenant of good faith and fair dealing can only be invoked if there is an agreement (i.e., if "a party acts in a manner that would deprive the other party of the right to receive the benefits of their *agreement*"). *Id.* In this case, TCFI disclaims any contractual obligations to the Plaintiff.

Second, any "party who asserts the existence of an implied-in-fact covenant bears a heavy burden, for it is not the function of the courts to remake the contract agreed to by the parties, but rather to enforce it as it exists." *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 69, 412 N.Y.S.2d 827, 85 N.E.2d 566 (1978).  In other words, a party must identify the "fruits of the contract" that would be denied absent reading an implied covenant into the contract.  *See S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497, 507 (S.D.N.Y. 2021). "[I]t cannot be said that application of the covenant is necessary to preserve the 'fruits of a contract'", because "[t]he fruits of a contract do not include a benefit to which a party was not entitled." *Id.*

---

[20] English handbook, p. 13.

Here, the Cheesecake factory has not identified contractual rights which the Plaintiff was entitled to but would be denied absent an implied covenant.

Third, the Plaintiff was an at-will employee who was owed no duty of good faith and fair dealing by TCFI.  TCFI specifically states that employment is "at will."  In New York, an employee at will can be dismissed "at any time and for any reason or no reason." *Zolotar v. N.Y. Life Ins. Co.*, 172 A.D.2d 27, 30, 576 N.Y.S.2d 850, 852 (1st Dep't 1991)

In *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983), the New York Court of Appeals "considered whether a long-tenured corporate employee allegedly discharged in part for reporting accounting improprieties to top management had stated a cause of action. . .in contract for breach of an implied covenant of good faith and fair dealing." *Horn v. N.Y. Times*, 100 N.Y.2d 85, 91, 760 N.Y.S.2d 378, 380, 790 N.E.2d 753, 755 (2003). The Plaintiff "argued that the law implies a covenant of good faith and fair dealing in all contracts, including employment contracts[.]" *Id.* at 92, 760 N.Y.S.2d at 381, 790 N.E.2d at 756.

> In view of the fact that the instant matter involves employment at will, we find meritless this contention about an implied covenant, since "in the context of such an employment it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right of termination. The parties may by express agreement limit or restrict the employer's right of discharge, but to imply such a limitation from the existence of an unrestricted right would be internally inconsistent"

*Zolotar v. N.Y. Life Ins. Co.*, 172 A.D.2d 27, 31, 576 N.Y.S.2d 850, 853 (App. Div. 1st Dept. 1991)(citing *Murphy v American Home Prods. Corp.,* at 304-305).

In other words, irrespective of the provisions in the handbook, *TCFI could exercise the unimpaired right to terminate the Plaintiff at any time for any reason or no reason at all, with or without notice*, and owed no duty of good faith and fair dealing to at will employees.

**D.     The Arbitration Provision is Unenforceable Because TCFI did Not Expressly Make Arbitration a Condition of Employment**

The English handbook expressly disavows the creation of any contractual rights.[21] It is only provided as a "guide"[22], and TCFI expressly reserves the right to change the terms of the handbook at any time.[23]

"As several courts in this Circuit have noted, an employer cannot rely on the very same terms to snatch away employees contractual rights with one hand while imposing asymmetric contractual duties with the other." *Seltzer v. Clark Assocs., L.L.C.*, No. 20 Civ. 4685 (AKH), 2020 U.S. Dist. LEXIS 161542, at *8 (S.D.N.Y. Sept. 3, 2020); *United States ex rel. Harris v. EPS, Inc.*, No. 05 Civ. 212, 2006 U.S. Dist. LEXIS 30012, 2006 WL 1348173, at *5 (D. Vt. May 16, 2006) ("Having inserted these disclaimers in an apparent effort to avoid vesting [the employee] with contractual rights, [the employer] cannot conveniently choose to ignore them and argue that the Handbook imposes contractual obligations. . .").

For this reason, "[a]n arbitration agreement included in an employee handbook with language 'providing that the handbook does not constitute a . . . contract of employment or that the arbitration policy may be amended' is enforceable [if] the language of the arbitration agreement is 'distinct and mandatory' and [if] the employee is advised of the policy and that 'compliance with it [is] a condition of employment.'" *Isaacs v. OCE Bus. Servs.,* 968 F. Supp. 2d

---

[21] "The Handbook is not, nor should be, considered to be an agreement or contract of employment, express or implied, or a promise of treatment in a particular manner in any given situation." Page 13.

[22] The Handbook "is provided as a guide." Page 13.

[23]"The Cheesecake Factory reserves the right to change or revise policies, procedures and benefits described in this Handbook as the need arises." Page 13. "The Handbook is not, nor should be, considered to be an agreement or contract of employment, express or implied, or a promise of treatment in a particular manner in any given situation." Page 13. The employee is "aware that The Cheesecake Factory may, in its sole discretion, change, rescind or add to any policies, benefits or practices described in this handbook or other training material and that [the employee] must abide by the new policies and practices." Page 65.

564, 571 (S.D.N.Y. 2013)(*citing Brown v. St. Paul Travelers Co.,* 559 F. Supp. 2d 288, 292

(W.D.N.Y. 2008), aff'd, 331 F. App'x 68 (2d Cir. 2009).

Turning to the specific language in the Handbook:

I agree to participate in impartial dispute-resolution proceedings as a condition of and as consideration for the offer of employment by the Company. If I, or the Company, determine that the Company's internal procedures for handling claims. . .have not resulted in a mutually acceptable resolution of disputes between me and the Company, I agree to participate in arbitration proceedings.

Although TCFI made "*participation in impartial dispute-resolution proceedings*" a

condition of employment, it did not make *Arbitration* a condition of continued employment, and

such a term should not be read into the agreement.  *Quadrant Structured Prods. Co., Ltd. v.*

*Vertin*, 2014 NY Slip Op 4114, ¶ 8, 23 N.Y.3d 549, 559-60, 992 N.Y.S.2d 687, 694, 16 N.E.3d

1165, 1172 ("In construing a contract we look to its language, for a written agreement that is

complete, clear and unambiguous on its face must be enforced according to the plain meaning of

its terms.").

In *Seltzer*, as in this case, the handbook "expressly disavow[ed] that it create[d]

contractual rights or duties; self-describe[d] as 'guidelines only; and reserve[d] to [the employer

the] right to unilaterally alter the Handbook at any time, and without any notice." As in this case,

the defendant employer in *Seltzer* argued that the arbitration provision was valid despite the

disclaimer of contractual rights. The court observed that

the only cases that [have] granted motions to compel arbitration despite language disclaiming the creation of contract rights involved arbitration provisions that specified that compliance with the arbitration policy was a *condition of employment*. *See, e.g.*, *Patterson v. Raymours Furniture Co., Inc.*, 96 F.Supp.3d 71, 76 (S.D.N.Y. 2015) ("Here the [arbitration provision] clearly states: 'This Program is an essential element of your continued employment relationship with Raymour & Flanigan and is a condition of your employment.'"); *Curry v. Volt Info. Scis., Inc.*, No. 07 Civ. 7158, 2008 U.S. Dist. LEXIS 20910, 2008 WL 719214, at *1 (S.D.N.Y. Mar. 18, 2008) (the employee handbook provided that, "Arbitration is an essential element of your employment relationship with Volt and is a condition of your employment"); *Brown v. St. Paul Travelers Co.*, 331 F.

14

App'x 68, 69-70 (2d Cir. 2009) (employer executive emailed all employees that "abiding by" the company arbitration policy "was an 'express condition' of continuing employment"); *Graham v. Command Sec. Corp.*, 46 Misc. 3d 1224(A), 13 N.Y.S.3d 850 (N.Y. Sup. Ct. 2014) (employer sent email advising all employees that agreeing to the arbitration policy "'was an express condition' of continuing employment").

*Seltzer*, 2020 U.S. Dist. LEXIS 161542, at *9 (S.D.N.Y. Sep. 3, 2020); *see also Sherry v. Sisters of Charity Med. Cen.*, No. 98 Civ. 6151, 1999 U.S. Dist. LEXIS 6623, 1999 WL 287738, at *5 (E.D.N.Y. May 4, 1999) ("[T]he language . . . does not indicate that as a condition of employment, employees agree to submit disputes to arbitration."). The *Seltzer* court refused to enforce the arbitration provision, noting that "the Handbook here did not notify employees that foregoing the right to bring suit in court amounted to a condition of employment." *Seltzer*, at *9.

### E. The Arbitration Envisioned by the Agreement is Non-Binding, and Therefore is not Recognized Under the FAA as a Basis for a Stay

"[C]ourts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 1745-46 (2011)(citations omitted).  Although the FAA's purpose "was to make arbitration agreements as enforceable as other contracts, *but not more so.*" *Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003). Whatever the purposes of the FAA, it should not permit an employer to draft a provision that is obscure and vague enough on the one hand to not be understood by the employee, but carefully crafted to be "understood" by a court to compel arbitration.

An interpretation of a contract that renders contract language "superfluous or meaningless . . . is not preferred and will be avoided if possible." *Shaw Grp., Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 124 (2d Cir. 2003). Words in a contract are given their "plain. . .reasonable and ordinary meaning." *Id.*

TCFI decided to qualify the employees' obligation as one of "participation" only: "I agree to *participate in* arbitration proceedings."[24] "Participate" is not ordinarily used to refer to binding legal proceedings. Participation is most often used to refer to activities that are voluntary. For example, "Somewhat like adults who choose to participate in a 'closely regulated industry,' students who voluntarily participate in school athletics have reason to expect intrusions upon normal rights and privileges, including privacy."[25] "Users can *participate* with their friends in games like tag or dodgeball."[26] "Guests can *participate* in the event's silent auction by placing bids in person or online on a mobile device or computer."[27] Indeed, the term "participate in" arbitration has been used to describe arbitration that is *not binding. See Pub. Risk Mgmt. of Fla. v. Wesco Ins. Co.*, No. 6:21-cv-788-GAP-LRH, 2021 U.S. Dist. LEXIS 219542, at *3 (M.D. Fla. Sept. 28, 2021) (where arbitration was expressly made non-binding, but "participation in any such arbitration shall be considered as a condition precedent to any civil litigation between the parties").

An ordinary person knows that there is a difference between "participating in" and "being bound" (by something). Here, the English handbook requires only "participation in" arbitration. A reading which make arbitration non-binding does not construe this language against the drafter, but instead recognizes the plain context, meaning and use of the word "participate." Non-binding forms of dispute resolution do not "fall within the FAA's definition of 'arbitration.' Therefore, the

---

[24] The manual does not state that the employee agrees "to arbitration proceedings", "to arbitration", "to arbitrate disputes", "to submit disputes to arbitration", "to settle disputes through arbitration", "to resolve disputes through arbitration", "to binding arbitration", "to submit disputes to binding arbitration", "to settle disputes through binding arbitration" or "to resolve issues to binding arbitration."

[25] *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 657, 115 S. Ct. 2386, 2393 (1995)

[26] David Lucatch, *Forbes*, 13 Apr. 2022.

[27] Beacon-news Staff, *chicagotribune.com*, 8 Apr. 2022

Court is under no obligation to stay this matter pending the outcome of this non-binding

procedure." *Pub. Risk Mgmt. of Fla.*, 2021 U.S. Dist. LEXIS 219542, at *6.

## IV.   IF THE COURT COMPEL'S ARBITRATION, IT SHOULD COMPEL ARBITRATION ON A CLASS BASIS

The fundamental objective of contract interpretation is to give effect to the parties'

intentions at the time the contract was signed. *See Klos v. Polskie Linie Lotnicze,* 133 F.3d 164,

168 (2d Cir. 1997). In April 2009, TCFI neither intended nor understood the handbook to limit an

employee's ability to assert class claims in arbitration. Therefore, the arbitration should proceed

on a class basis.

On November 4, 2008, the Second Circuit decided the case of *Stolt-Nielsen SA v.*

*AnimalFeeds Int'l Corp.*, 548 F.3d 85, 87 (2d Cir. 2008). In *Stolt-Nielsen,* the Second Circuit held

that where an arbitration clause is *silent* on the availability of class arbitration, an arbitral decision

permitting class arbitration would not be disturbed. *Id.* at 101.[28] In February 2009, less than 4

months after *Stolt-Nielsen,* TCFI drew up a "Mutual Agreement to Arbitrate Claims" (the "long

form")[29] which included the following statement:

> There shall be no right or authority for any dispute to be brought, heard, or arbitrated as a
> class, collective, or representative basis and the Arbitrator may not consolidate or join the
> claims of other persons or parties who may be similarly situated.[30]

The Plaintiff was hired in April 2009. However, the Plaintiff did not sign the long form. As of

April 2009, TCFI knew that the handbook language would not limit arbitration to individual

arbitration.   Yet even though TCFI understood the English handbook to *not preclude class*

---

[28] Reversed and remanded on April 27, 2010, by *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 662, 130 S. Ct. 1758, 1764 (2010).

[29] A copy of the "long form" was previously furnished to Plaintiff's counsel by counsel for TCFI. A copy of the long form is annexed to the Moser Declaration as Exhibit 2. It was not signed by the Plaintiff and is submitted solely for the purpose of comparison with the handbook.

[30] *Id.*

*arbitration* at the time it was ostensibly signed, it now asks the Court to compel individual arbitration.

Neither the Supreme Court nor the Second Circuit has addressed the specific facts presented in this case. There were two purported "arbitration agreements" in effect at the time the Plaintiff was hired. The long form, expressly limiting class arbitration, is not signed. The short form, relied upon by TCFI, contains no limitation on class arbitration.

The silent purpose of employer-drafted arbitration clauses is to protect employers, not employees. Under TCFI's suggested interpretation of the short form, the short form says the same thing as the long form. However, the long form was not signed by the Plaintiff and the two documents do not say or mean the same thing, as TCFI suggests.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court deny the Defendant's motion to compel arbitration and direct that discovery proceed.

Dated: Huntington, New York
         April 15, 2022

                                    Respectfully Submitted,
                                    Moser Employment Law Firm, P.C.


                                    By: Steven John Moser