UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Noe Gonzalez, Individually and on behalf of all others similarly situated, )<br>)<br>)<br>Plaintiff(s), )<br>)<br>-*against*- )<br>)<br>The Cheesecake Factory Restaurant, Inc., )<br>)<br>Defendant(s). )<br>) | **Case No. 21-cv-05017-PKC-SIL** |

# EXPERT REPORT OF NYDIA FLORES-FERRÁN, Ph.D.

1.  My name is Nydia Flores, Professor Emerita in Language Education and Bilingualism and Second Language Acquisition at Rutgers University's Graduate School of Education and School of Arts and Sciences. I received my Ph.D. in linguistics from the City University of New York in 2002, a Master's Degree in English as a Second Language/Education from Temple University in 1974, and a B.A. in Education (English as a second language for elementary and secondary education) from the University of Puerto Rico in 1971.

2.  My teaching and research career in language and linguistics spans almost 50 years, including sixteen years as an Associate Professor at Rutgers University Graduate School of Education, Department of Learning and Teaching & School of Arts and Sciences; Department of Spanish & Portuguese (2004-2019), and 12 years as the Director of ESL and adjunct lecturer at John Jay College of Criminal Justice, City University of New York (1992-2004). The courses I taught included Foundations of Language (Intro to Linguistics), Language in Society (Sociolinguistics), Discourse Analysis, Spanish in Social Context, Bilingualism-Bicultural Education, Seminars in Research Methodology, and Special Topics Seminar in Hispanic Linguistics. I have chaired, co-chaired, and was a committee member of over 25 doctoral dissertations related to Spanish and English linguistics (an additional one in the process). In addition, I have served as an expert witness in several legal cases. During my research and teaching career, I also was awarded several federal and foundation research grants surpassing $1,000,000.

3.  I have authored several books: (3) authored and (2) co-authored and have had over 15 journal articles published in academic journals on linguistics and sociolinguistics in English and Spanish communication focusing on how Spanish linguistic features are used. My most recent publications deal with how we mitigate (i.e., soften) and intensify (i.e., escalate) our communication, meaning indirect vs. direct communication.

4.  A copy of my curriculum vitae, which includes a list of publications I have authored or co-authored, is attached as Appendix A.

5.  In this case, I was retained by the Moser Law Firm, P.C., counsel for the Plaintiff Noe Gonzalez, to conduct a linguistic analysis of certain documents that were annexed to the declaration of Barbara Lewis dated February 11, 2022, specifically:

 a. Exhibit A – Staff Member Handbook

 b. Exhibit B – Manual Del Miembro Del Personal

 c. Exhibit C – Acuerdo De Confidencialidad y Recibo Del Manual

6.  Documents reviewed. I also reviewed the aforementioned documents, as well as the Declaration of Barbara Lewis, and The Cheesecake Factory's Memorandum of Law.

7.  I was asked to specifically answer the following questions.

 a. Whether the Spanish language version of the employee handbook is an accurate translation of the English version of the handbook.

 b. Whether the last two pages of the Spanish handbook clearly require "binding" and "mandatory" arbitration.

8.  I am being compensated at a rate of $250 per hour, which is my standard hourly rate for consulting services. Live testimony such as depositions is charged at the rate of $400 per hour, with minimums.

## SUMMARY OF OPINIONS

9.  The Cheesecake Factory ("TCF") states that "[t]he Spanish language version of the employee handbook is a literal word-for-word translation of the employee handbook." However, a word-for-word literal translation (L.T.) is a flawed translation. These translations usually involve machine translations (Artificial Intelligence, henceforth (A.I.)), or a human translator. In this manner, the task of translating does not consider phrases, sentences, and contexts. Instead, it focuses solely on independent words. As a result, the Spanish documents I have evaluated appear flawed in their interpretation in many instances.

10. Linguistic markers related to the last two pages of the manual titled "Acuerdo de Confidencialidad y Recibo del Manual" exhibit numerous contradictory messages. The language expresses ambiguity and confusion, and its terminology leads to misguided readings or misinterpretations. As written in Spanish, it does not plainly compel or require arbitration of employment disputes, nor does it plainly state that the arbitral resolution will be binding on the employee.

## DISCUSSION OF OPINIONS

11. When translating in any language, we seek to create an autonomous text interpretable as a standalone text in the target language regardless of the text of origin. Therefore, we must situate the translated text within a specific context and corresponding linguistic environment. Word-by-word or literal translations do not take into account context. Machine translations and literal word-by-word human translations require back translation methods. For

example, we start from English to Spanish and later translate back from Spanish to English to check for accuracy in meaning and avoid the effects of priming. Said differently, we avoid having the presence of one expression in English trigger a direct literal translation into Spanish because an equal representation of a word is not always possible in every context.

12. Linguistic markers related to the two-page short form titled "Acuerdo de Confidencialidad y Recibo del Manual" exhibit numerous contradictory messages, misused terms, and lack succinctness in phrases. For example, the verb devolveré means 'I will return something,' implying something has been given to me, while regresaré means 'I will return.'

13. Before providing further opinion and explanations, we should note the importance of conjugation of Spanish verbs and how they are expressed since they are critical to this particular analysis:

> "Conjugation" refers to the variation of the form of a verb, which identifies who is performing the action (the subject), and when the action is being performed (the tense). Spanish verbs, unlike English verbs, have PERSON markers embedded in them. The verb simultaneous marks who conducted an action (i.e., the subject) and when an action takes place. For example, the Spanish verb for 'to work' is 'trabajar.' 'Trabajé' ([I] worked) and 'Trabajaba' ([I] used to work) both reference the past. However, '-aba' endings attached to verbs denote imperfective-ness and a non-terminal action (e.g., we do not know if an individual is still working). 'Trabajé,' on the other hand, marks a terminated, completed action ([I] worked), a definite action. Verbs in the infinitive form such as 'trabajar' do not signal time.
>
> Future tenses operate differently: Definiteness can be used in future tense verbs. To express future action, regresaré ([I] will return) connotes a defined and assured meaning. Another way of expressing this verb in a less definite manner is 'voy a regresar' ([I] am going to return).
>
> Because the verb's ending marks PERSON in Spanish, it is unnecessary to express the subject (I, you, we, they). '<u>Regresamos</u>' means '[we] return' similar to 'determinamos' (we determine). Therefore, plurality is also embedded in Spanish verbs. English verbs behave differently; they mark PERSON and plurality separately from the verb (i.e., I, you, we, they determine), and no endings are attached.
>
> In the Spanish documents, there are multiple instances in which verb tense translations are not accurate and the verb's PERSON, the referent, is not clear. As a result of this, I delineate several issues:

14. First, the phrases 'Estoy de acuerdo' ([I] am in agreement or [I] agree) and 'determinamos' ([we] determine) are represented by two different subjects (PERSONS). 'Estoy de acuerdo' refers to 'I' or 'yo' first person as in '[yo] estoy de acuerdo', while the verb 'determinamos' ([we] determine) refers to a plural subject, '[nosotros] estamos de acuerdo'.  But 'determinamos' has no identifiable subject referent, the Company, the reader, the Company and reader. Therefore, ambiguity exists with the sentence's interpretation-- the verb 'determinamos', is a plural form that can only be used if there are two subject referents. As written,  its meaning

entails two parties. However, 'estoy de acuerdo' only refers to 'I,' a singular subject (see paragraph 8 example).

15.     Second, in the Spanish documents, we find clauses beginning with 'Si' (if) as in 'If this condition is met, then…'). These 'si' clauses represent hypothetical expressions, and their verbs tend to be expressed in the present tense as in 'Si voy al banco, saco dinero.' (If I go to the bank, I take out money.)  These statements suggest that the condition is purely hypothetical, not mandatory.

16.     Third, there are Spanish demonstrative adjectives (known as deictic expressions) including 'este'– (this) and 'ese' (that). These deictic expressions are important. They point to how close or distant an item is to the reader/listener, and they mark plurality (i.e., esos manuales as in 'those manuals'). For example, if I am holding a document, I could refer to it as 'Este manual.' (this handbook).   If, on the other hand, the handbook is far, I could refer to it as 'ese manual' (that handbook). However, if I am referencing multiple materials, I must use plural terms such as 'esos' (those) and 'estos' (these). In referencing the manual and the agreement, the Spanish version uses only the singular form (e.g., este). In other words, there is only one handbook, and it contains an agreement.

17.     Applying several of these linguistic principles reveals notable ambiguities in the handbook, which are summarized and discussed below:

18.     Page 1 of the Spanish Employee Handbook contains the following heading, "QUE ENCONTRAMOS EN SU MANUAL DEL MIEMBRO DEL PERSONAL", which translated, means "What do we find in your employee handbook."  One of the things that we find in it and is part of the employee handbook is the "ACUERDO DE CONFIDENCIALIDAD Y RECIBO DEL MANUAL," or the "HANDBOOK RECEIPT & CONFIDENTIALITY AGREEMENT."

19.     Translation Concern: The translation of the word "adhere" to 'apegarme' indicates that Artificial Intelligence (A.I.) may have been used to translate the document. The word 'apegar' appears in paragraphs 1, 2, 4, and 5. However, 'apegarme' means to get close to; the term 'adherir' means to adhere to, and 'seguir' means to follow. The Spanish version does not use these latter terms.

20.     In the 'Acuerdo de Confidencialidad' we also find the following language: "The Cheesecake Factory puede, bajo su propia discreción, cambiar, rescindir o agregar políticas, reglas, beneficios y prácticas descritas en este manual u otros materiales de capacitación y que yo debo apegarme a las nuevas políticas y prácticas."

21.     According to the language in the foregoing paragraph, the Cheesecake Factory is not bound by the employee handbook, including the terms listed in the acknowledgment form on the last two pages. The Cheesecake Factory reserved the right to change the terms of the agreement at any time. At least in the Spanish version of the handbook, the last two pages are specifically identified as part of the handbook itself. The use of 'este manual' (this handbook) in the last sentence conveys that the signed page is part of the employee handbook itself.

22.     The following terms that appear in the Spanish version of the handbook 'cambiar' (to change), 'rescindir' (to rescind), and 'agregar' (to add) which appear in the 'Acuerdo de

- 4 -

Confidencialidad y Recibo del Manual,' represent infinitive forms with no reference to time. The use of the infinitive verb forms in the statement, which do not mark time, denotes that TCF was not bound by any part of the handbook, including the last two pages, since modifications to the handbook could have been made at any time.

23. The second sentence of the 8th paragraph of the section of the manual titled 'Acuerdo de Confidencialidad y Recibo del Manual'states, in part,

*Si yo, o la Compañía, determinamos que los procedimientos internos de la Compañía para manejar los reclamos…no han dado como resultado una aceptable resolución de una disputa entre la Compañía y yo, yo acepto participar en un arbitraje.*

24. This language is confusing and ambiguous since it simultaneously refers to singular and plural subjects: It also contains 'o' (or). 'Si yo, *o* la Compañía' (if I or the company, singular), determinamos (if we determine, plural)'.  The 'o' (or) should be expressed as '*y*' (and), because the verb 'determinamos' is plural, signifying that both parties must together determine whether the internal dispute resolution procedures have resulted in an 'acceptable resolution' before arbitration is triggered.  In other words, arbitration would not take place without the consent of both the employee and TCFI.

25. The Spanish version also uses the present tense, which is confusing. Expressions such as ESTOY DE ACUERDO (I am in agreement/I agree), DETERMINAMOS (we decide-determine), and ACEPTO (I accept) connote things that are taking place in the present, not actions that will take place at some undetermined point in the future. The future tense connotes definiteness. In using, for example, 'determinaré' or 'determinaremos' (I will determine, we will determine) and 'estaré de acuerdo' (I will agree), the wording is precise and definite.

26. Further, "Si yo, o la compañía, determinamos" connotes that the decision of whether or not to participate in arbitration is conditioned to something– In other words, 'If we NOW determine as opposed to 'if we determine.' The manual could have expressed 'determinamos' as 'determinaremos' (if we determine in the future).

27. The author of the manual could have expressed ACEPTO PARTICIPAR (I accept to participate), as ACEPTARÉ PARTICIPAR (I agree to participate in arbitration in the future), or simply PARTICIPARÉ (I will participate) to convey a definitive message. In other words, choice is implicated in how this phrase was written.

28. Finally, the phrase 'participar en un arbitraje' ("to participate in an arbitration") is vague. I understand, based upon my review of the documents, that TCF argues that arbitration was exclusive, mandatory, and binding. However, I note that the Spanish version of the handbook does not state anywhere that arbitration is "mandatory," "binding," or the "exclusive remedy."  The Spanish document could have, in numerous ways, made clear that arbitration would be the sole avenue to resolve disputes. The term 'participar' (to participate in) connotes a voluntary, not compulsory action, the outcome of which is not binding.

## CONCLUSION

29. For the foregoing reasons the "ACUERDO DE CONFIDENCIALIDAD Y RECIBO DEL MANUAL," ("HANDBOOK RECEIPT & CONFIDENTIALITY

- 6 -

AGREEMENT"), could be reasonably interpreted to (1) permit TCF to change any of its provisions at any time, (2) require the consent of both TCF and Mr. Gonzalez in order to trigger arbitration. Finally, the language does not convey that arbitration is "mandatory", "binding", or the "exclusive remedy."

      I certify under penalty of perjury that the foregoing is true and correct.

Executed on April 4, 2022

*nydiafloresferran*
ID RCgZZLH811qqUmQVMFeNdnz7

Nydia Flores-Ferran, Ph.D.