**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NOE GONZALEZ, individually and on behalf of all others similarly situated,<br><br>                               Plaintiff,<br><br>           - against -<br><br>THE CHEESECAKE FACTORY RESTAURANTS, INC. d/b/a THE CHEESECAKE FACTORY,<br><br>                             Defendants. | 21-cv-5017<br><br><br>Hon. Pamela K. Chen, USDJ |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION**

Steven John Moser (SM1133)
MOSER LAW FIRM, P.C.
5 East Main Street
Huntington, NY 11743
(516) 671-1150
smoser@moseremploymentlaw.com
*Co-Counsel for Plaintiffs*

Jeffrey K. Brown
Brett R. Cohen
LEEDS BROWN LAW, P.C.
1 Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550
*Co-Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

I.     DEFENDANT HAS FAILED TO ESTABLISH THE ADMISSIBILITY OF THE SPANISH-LANGUAGE SHORT FORM ............................................................................. 2

     A.     Defendant Bears the Burden of Demonstrating by a Preponderance of the Evidence that an Agreement to Arbitrate Exists .................................................................... 2

     B.     TCFI has failed to provide a certified translation of the document signed by Gonzalez. ............................................................................................................. 2

     C.     TCFI Contradicts Statements Made by Mr. Krochmal ............................................ 3

     D.     There is no Law to Support the Admissibility of a "Reasonable" Translation ....... 4

II.    THE LEWIS DECLARATION AND THE DOCUMENTS ANNEXED THERETO ARE INADMISSIBLE ....................................................................................................... 4

III.   TCFI HAS NOT ESTABLISHED THAT CALVAGNO AGREED TO ARBITRATION .. 6

IV.   THE ENGLISH VERSION OF THE HANDBOOK DOES NOT COMPEL ARBITRATION .............................................................................................................. 11

     A.     The Purported "Arbitration Agreement" is Illusory ................................................. 11

     B.     The Implied Covenant of Good Faith and Fair Dealing Did Not Limit TCFI's Discretion to Change the Terms of The English Handbook ................................. 13

     C.     Employment in New York is "At Will" ................................................................. 15

     D.     The Purported "Arbitration Provision" is Unenforceable Because Arbitration was Not Expressly Made a Condition of Continued Employment ............................. 15

     E.     A Provision Making Arbitration a Condition of Continued Employment Should Not be Read Into the Handbook .................................................................................... 17

V.    IF THE COURT FINDS THAT AN AGREEMENT TO ARBITRATE EXISTS, IT SHOULD DIRECT THE PARTIES TO PROCEED WITH NON-BINDING ARBITRATION .............................................................................................................. 18

VI.   SHOULD THE COURT COMPEL ARBITRATION, SUCH ARBITRATION SHOULD NOT BE LIMITED TO INDIVIDUAL ARBITRATION .................................................. 19

CONCLUSION .......................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Supreme Court Opinions**

*AT&T Mobility L.L.C. v. Concepcion*,
    563 U.S. 333, 131 S. Ct. 1740 (2011) ................................................................. 17

*Green Tree Fin. Corp. v. Bazzle*,
    539 U.S. 444, 123 S. Ct. 2402, 156 L. Ed. 2d 414 (2003) ................................... 18

*Morgan v. Sundance, Inc.*,
    142 S. Ct. 1708 (2022) ........................................................................................ 17

**Second Circuit Opinions**

*Brown v. St. Paul Travelers Co.*,
    331 F. App'x 68 (2d Cir. 2009) ................................................................... 6, 7, 15

*Brown v. St. Paul Travelers Cos.*,
    559 F. Supp. 2d 288 (W.D.N.Y. 2008) ............................................................. 76, 7

*Chaiken v. VV Publ'g Corp.*,
    119 F.3d 1018 (2d Cir. 1997) .................................................................................. 3

*Culver v. Merrill Lynch & Co.*,
    No. 94 Civ. 8124 (LBS), 1995 U.S. Dist. LEXIS 10017 (S.D.N.Y. July 17, 1995) .............. 13

*Curry v. Volt Info. Scis., Inc.*,
    No. 07 Civ. 7158, 2008 U.S. Dist. LEXIS 20910, 2008 WL 719214 ..................................... 15

*Gonzalez v. Cheesecake Factory Rests., Inc.*,
    No. 21-CV-5017 (PKC) (SIL), 2023 U.S. Dist. LEXIS 41808 (E.D.N.Y. Mar. 13, 2023)
    ...................................................................................................................... 1, 2, 3

*Hicks v. Baines*,
    593 F.3d 159 (2d Cir. 2010) ................................................................................... 4

*Hirsch v. Citibank, N.A.*,
    542 F. App'x 35 (2d Cir. 2013) .............................................................................. 8

*Idea Nuova, Inc. v. GM Licensing Grp., Inc.*,
    No. 08 Civ. 8595 (PKC), 2009 U.S. Dist. LEXIS 73390 (S.D.N.Y. Aug. 19, 2009) .............. 17

*In re 114 Tenth Ave. Ass'n*,
    441 B.R. 416 (S.D.N.Y. 2010) ............................................................................... 11

*Isaacs v. OCE Bus. Servs.*,
    968 F. Supp. 2d 564 (S.D.N.Y. 2013) .................................................................. 16

*Lam v. Am. Express Co.*,
    265 F. Supp. 2d 225 (S.D.N.Y. 2003) .................................................................. 13

*Lavender v. Verizon N.Y., Inc.*,
No. 17-CV-6687(JS)(ARL), 2023 U.S. Dist. LEXIS 22356 (E.D.N.Y. Feb. 9, 2023) ............ 4

*LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*,
185 F.3d 61 (2d Cir. 1999) ..................................................................... 3

*O'Shea v. Bidcom, Inc.*,
No. 01 Civ. 3855 (WHP), 2002 WL 1610942 (S.D.N.Y. July 19, 2002) ................................ 13

*Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc.*,
320 F.3d 362 (2d Cir. 2003) ..................................................................... 17

*Oppenheimer & Co. v. Neidhardt*,
56 F.3d 352 (2d Cir. 1995) ..................................................................... 2

*Ottawa Off. Integration, Inc. v. FTF Bus. Sys.*,
132 F. Supp. 2d 215 (S.D.N.Y. 2001) ..................................................................... 9

*Patterson v. Raymours Furniture Co.*,
96 F. Supp. 3d 71 (S.D.N.Y. 2015) ..................................................................... 15

*Rightnour v. Tiffany & Co.*,
239 F. Supp. 3d 744 (S.D.N.Y. 2017) ..................................................................... 11

*S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*,
520 F. Supp. 3d 497 (S.D.N.Y. 2021) ..................................................................... 12, 13

*Seltzer v. Clark Assocs., L.L.C.*,
No. 20 Civ. 4685 (AKH), 2020 U.S. Dist. LEXIS 161542 (S.D.N.Y. Sept. 3, 2020) ...... 14, 15

*Sherry v. Sisters of Charity Med. Cen.*,
No. 98 Civ. 6151, 1999 U.S. Dist. LEXIS 6623, 1999 WL 287738 (E.D.N.Y. May 4, 1999) 15

*Soliman v. Subway Franchisee Advert. Fund. Tr., Ltd.*,
999 F.3d 828 (2d Cir. 2021) ..................................................................... 8

*United States ex rel. Harris v. EPS, Inc.*,
No. 05 Civ. 212, 2006 U.S. Dist. LEXIS 30012, 2006 WL 1348173 ................................ 14-15

*Zachman v. Hudson Valley Fed. Credit Union*,
49 F.4th 95 (2d Cir. 2022) ..................................................................... 2

**Federal Court Opinions**

*Crump v. MetaSource Acqs., L.L.C.*,
373 F. Supp. 3d 540 (E.D. Pa. 2019) ..................................................................... 11

*Day v. Fortune Hi-Tech Mktg.*,
536 F. App'x 600 (6th Cir. 2013) ..................................................................... 11-12

*Dow Corning Corp. v. Safety Nat'l Cas. Corp.*,
    335 F.3d 742 (8th Cir. 2003) ................................................................. 17

*Dumais v. Am. Golf Corp.*,
    150 F. Supp. 2d 1182 (D.N.M. 2001) ................................................... 12

*Floss v. Ryan's Family Steak Houses, Inc.*,
    211 F.3d 306 (6th Cir. 2000) ................................................................. 11

*Gambo v. Lyft, Inc.*,
    Civil Action No. 22-1726 (RDM), 2022 U.S. Dist. LEXIS 207510 (D.D.C. Nov. 15, 2022) .. 8

*MacKinney v. Allstate Fire & Cas. Ins. Co.*,
    No. 16-cv-01447-NYW, 2018 WL 4242922 (D. Colo. Sept. 6, 2018) ................................... 4

*Perez v. Hosp. Ventures Denver L.L.C.*,
    245 F. Supp. 2d 1172 (D. Colo. 2003) ................................................... 12

*Trumbull v. Century Mktg. Corp.*,
    12 F. Supp. 2d 683 (N.D. Ohio 1998) ................................................... 12

**State Cases**

*1357 Tarrytown Rd. Auto, L.L.C. v. Granite Props., L.L.C.*,
    2016 N.Y. Slip Op. 05981 (2d Dep't Sept. 14, 2016) ...................................... 12, 13

*Graham v. Command Sec. Corp.*,
    46 Misc. 3d 1224(A), 13 N.Y.S.3d 850 (N.Y. Sup. Ct. 2014) .............................. 15

*Horn v. N.Y. Times*,
    100 N.Y.2d 85, 760 N.Y.S.2d 378, 790 N.E.2d 753 (2003) ................................ 14

*Marine Assocs., Inc. v. New Suffolk Dev. Corp.*,
    125 A.D.2d 649, 510 N.Y.S.2d 175 (2d Dep't 1986) ...................................... 16-17

*Murphy v. Am. Home Prods. Corp.*,
    58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983) ................................ 14

*Namad v. Salomon, Inc.*,
    74 N.Y.2d 751, 545 N.Y.S.2d 79, 543 N.E.2d 722 (1989) ................................ 13

*Scotti v. Tough Mudder Inc.*,
    63 Misc. 3d 843 (N.Y. Sup. Ct. 2019) ................................................... 8

## <u>PRELIMINARY STATEMENT</u>

This action was commenced on September 8, 2021. Defendant served its first motion to stay the action and compel arbitration on February 14, 2022. On March 1, 2022, after reviewing the Defendant's moving papers, Plaintiff advised The Cheesecake Factory Restaurants, Inc. ("TCFI") that it had failed to submit evidence in admissible form in support of its motion to compel arbitration. Plaintiffs then served opposition pointing out the evidentiary deficiencies. Defendant then tried to establish the existence of an agreement to arbitration with its reply. The Court denied TCFI's motion on March 13, 2023 because "Defendant has failed to adduce admissible evidence supporting its theory that the parties signed an agreement to arbitrate." *Gonzalez v. Cheesecake Factory Rests., Inc.*, No. 21-CV-5017 (PKC) (SIL), 2023 U.S. Dist. LEXIS 41808, at \*2 (E.D.N.Y. Mar. 13, 2023).

Defendant served its renewed motion to compel arbitration on June 30, 2023. However, Defendant again fails to establish the existence of an agreement to arbitrate. More specifically, with regard to Mr. Gonzalez, Defendant has failed to furnish a certified translation of a Spanish-language document. With regard to Mr. Calvagno (a proposed additional named plaintiff as set forth in Plaintiffs' proposed amended complaint), TCFI has failed to furnish a signed English handbook and has failed to offer evidence in admissible form that an agreement to arbitrate between TCFI and Calvagno exists.

TCFI further asks the Court to bind Calvagno and other employees to the terms of three revised employee handbooks. According to TCFI employees should be legally bound by these revised handbooks because employees received a message as follows:

Hi Everyone!

We are pleased to announce the release of our updated. . .Cheesecake Factory Staff Member Handbook! Our Staff Handbook is a *great way to learn* and reference information about our Company – including our *values, benefits, and many other*

*topics, so be sure to check it out!* You can access it at any time via ScoopsLive or ask your GM for a hard copy. If you have any questions, please ask your GM or OST.

*Let's have another great day!*[1]

However, TCFI has not furnished any of the revised handbooks to the Court or Plaintiffs' counsel. TCFI has not established the admissibility of the Spanish handbook or the English handbook. Plaintiffs request that the renewed motion be denied with prejudice as Defendant has had two years and repeated opportunities to establish its entitlement to relief.

## I.   DEFENDANT HAS FAILED TO ESTABLISH THE ADMISSIBILITY OF THE SPANISH-LANGUAGE SHORT FORM

### A.   Defendant Bears the Burden of Demonstrating by a Preponderance of the Evidence that an Agreement to Arbitrate Exists

"The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101-02 (2d Cir. 2022). Thus, a defendant must present evidence which is sufficient to demonstrate an enforceable agreement to arbitrate. *Oppenheimer & Co. v. Neidhardt,* 56 F.3d 352, 358 (2d Cir. 1995). Only after a defendant makes such a showing does the burden shift to plaintiffs to demonstrate a genuine issue for trial. *See Id.*

### B.   TCFI has failed to provide a certified translation of the document signed by Gonzalez.

The Court previously noted that the Spanish language document ostensibly signed by Gonzalez was inadmissible because TCFI "failed to present a certified English translation of it." *Gonzalez v. Cheesecake Factory Rests., Inc.*, No. 21-CV-2017 (PKC)(SIL), 2023 U.S. Dist. LEXIS 41808, at *4 (E.D.N.Y. Mar. 13,2023). The Court went on to explain what a "certified" translation is: "A certified translation is one to which the author swears that the contents are true and accurate

---

[1] Exhibit A to Lewis Declaration (Emphasis added).

and also swears to his or her identity and qualifications to translate the relevant languages."
*Gonzalez v. Cheesecake Factory Rests., Inc.*, No. 21-CV-2017 (PKC)(SIL), 2023 U.S. Dist. LEXIS 41808, at *4 (E.D.N.Y. Mar. 13,2023)(emphasis supplied).

In lieu of a certified translation, TCFI now submits a letter from one Walter L. Krochmal addressed "To Whom It May Concern", asking the Court to "direct any inquiries to [him] at the contact information below" (the "Krochmal letter"). The Krochmal letter is neither sworn to nor certified under the penalty of perjury as required by 28 U.S.C. § 1746. *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham,* 185 F.3d 61, 65-66 (2d Cir. 1999) (unsworn letter is inadmissible under section 1746 unless it is signed, dated, and contains statements made under "penalty of perjury"); *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1032-33 (2d Cir. 1997) (unsworn letters are also inadmissible on summary judgment motions in Second Circuit).

Mr. Krochmal does not provide a copy of the document he translated. TCFI has not furnished a copy of the document it provided to Mr. Krochmal to translate. Although Mr. Krochmal's letter refers to a document titled "Gonzalez Arbitration Agreement", there is no document in the record bearing this title.[2]

### C.    TCFI Contradicts Statements Made by Mr. Krochmal

TCFI's representations directly contradict the statements made by Mr. Krochmal. According to TCFI, "Mr. Krochmal translated the *English* version of the Employee Handbook acknowledgment to *Spanish* and compared it to the Spanish version of the Employee Handbook acknowledgment presented to Gonzalez." Def MOL at 4 (emphasis added). However, this

---

[2] Although the Krochmal letter is immediately followed by an English-language document titled "Non-Disclosure Agreement and Receipt of Handbook" (hereinafter "NDA"), there is no indication in Mr. Krochmal's letter that the NDA is, in fact, *his* translation, much less a "true and accurate" translation. TCFI fails to make any connection between the English Non-Disclosure Agreement and the document identified by Barbara Lewis as "the Spanish language version of the employee handbook acknowledgement form that was provided to Mr. Gonzalez." See ECF 18-2 ¶ 7, and Exhibit C thereto.

statement is unsupported and contradicts the Krochmal Letter, which states that Mr. Krochmal "translated one (1) document from Spanish to English[.]"[3]

The Krochmal letter further states that "[a]fter finalizing the foregoing translation, I also reviewed the original English-language document in comparison with the original Spanish-language document and believe the latter is a reasonable translation of the former."[4] However, Krochmal does not identify either the "original English-language document" or the "original Spanish-Language document" he is referring to.

### D.     There is no Law to Support the Admissibility of a "Reasonable" Translation

Mr. Krochmal's "belief" that a translation is "reasonable" is of no moment. Even if Krochmal had provided the documents that were translated, the Spanish Handbook would still be inadmissible, because it is unaccompanied by a certified translation, and because there is no law to support the admission into evidence of a "reasonable" translation.[5]

## II.    THE LEWIS DECLARATION AND THE DOCUMENTS ANNEXED THERETO ARE INADMISSIBLE

It is well established that an affidavit must be based on personal knowledge. *MacKinney v. Allstate Fire & Cas. Ins. Co.,* No. 16-cv-01447-NYW, 2018 WL 4242922, at *4-5 (D. Colo. Sept. 6, 2018) (evidence of defendant's alleged practices must be based on personal knowledge or is excludable; moreover, letters written by counsel to a party are inadmissible hearsay as to truth of matter asserted under FRE 801-802); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be

---

[3] Krochmal letter ¶ 1 ("I hereby warrant that I have translated one (1) document from Spanish to English.")
[4] Emphasis added.
[5] Mr. Krochmal also does not state what has become of his original translation.  He asserts that his translation was "finalized" after "consultation with [counsel for TCFI] for legal terms of art and vocabulary specific to the industry that said document covers."

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Likewise, a declaration should be disregarded by the court "to the extent it makes generalized and conclusory statements that are unsupported by admissible evidence." *Lavender v. Verizon N.Y., Inc.*, No. 17-CV-6687(JS)(ARL), 2023 U.S. Dist. LEXIS 22356, at *35 (E.D.N.Y. Feb. 9, 2023); *See Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) ("mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist").

According to Barbara Lewis, TCFI provided every person hired in the State of New York with an "Employee Handbook". Lewis Decl. ¶ 4. On February 11, 2022, however, Ms. Lewis signed a declaration suggesting that she has no personal knowledge of this fact because "the bookkeepers at the restaurants handled all employment paperwork at the restaurant including all onboarding paperwork."[6] Now Ms. Lewis states in conclusory fashion that "Calvagno would not have been able to begin his employment. . .without receiving his onboarding documents.[7]" Lewis Decl. ¶ 8. She "knows" that employees were provided with the handbook because it was "TCFI policy." Lewis Decl. ¶ 7. However, the "TCFI policy" was apparently unwritten as TCFI has not produced any documents concerning the existence of such a policy. She also states that "TCFI ensures" that its policies are followed through "monthly self-review audits conducted by each restaurant" and "annual corporate internal audits" but offers no specific explanation as to how she "knows" that Mr. Calvagno received the Employee Handbook. Lewis Decl. ¶ 5.

Moreover, Ms. Lewis offers no credible explanation as to why, if (1) a policy was in place regarding the signing of Employee Handbooks at the time of hire, (2) documents were kept

---

[6] Lewis Decl. (ECF 18-2) ¶ 2.
[7] Presumably, including the Employee Handbook.

pursuant to TCFI policy, and (3) the policy was enforced, TCFI has not produced a single document allegedly signed by Mr. Calvagno during the onboarding process. TCFI counsel suggests, with no factual support, that TCFI lost the onboarding documents.[8]

In sum, the Lewis declaration is rife with conclusory statements and is not based upon personal knowledge, and therefore should be disregarded. Moreover, the Defendant has not established the admissibility of any documents annexed to the Lewis Declaration.

## III.   TCFI HAS NOT ESTABLISHED THAT CALVAGNO AGREED TO ARBITRATION

Although TCFI claims that Calvagno could not have been hired without signing the short form, TCFI offers no explanation as to why it does not have a short form signed by Calvagno. TCFI does not say what specific records are kept, how they are kept, whether it searched for documents or whether it found any documents. Barbara Lewis doesn't say why TCFI doesn't have a signed acknowledgement. Counsel for TCFI states that a signed acknowledgement for Mr. Calvagno existed at one time, but TCFI has lost the signed pages.[9] In sum Defendant has failed to offer evidence in admissible form that Mr. Calvagno received the 2005 Handbook. As stated above, Ms. Lewis does not have personal knowledge of whether Mr. Calvagno was furnished with the 2005 Handbook and her statements regarding how she knows he received the Handbook are otherwise conclusory and should be disregarded. *See Crean v. Morgan Stanley Smith Barney, L.L.C.,* ___ F. Supp. 3d ___, No. 21-cv-11021-PBS, 2023 WL 363589, at *3, *6-7 (D. Mass. Jan. 23, 2023) (where defendant offered as evidence of arbitration clause its vice president's affidavit because it was "unable to locate the original client agreement with the purported arbitration clause," its testimony as to misplaced documents was inadmissible on defendants' motions because

---

[8] "TCFI has misplaced the Arbitration Acknowledgment initialed and signed by Calvagno."  Def. MOL at 12.
[9] *See fn. 8.*

6

vice president's belief that plaintiffs "would have been required to sign a client agreement containing a mandatory arbitration clause" was not based on personal perception or knowledge) (citing *Air-Con, Inc. v. Daikin Applied Latin Am.*, *L.L.C.,* 21 F.4th 168, 171, 177 (1st Cir. 2021)).

TCFI asserts, however, that even if Calvagno was not bound to the 2005 handbook, he was bound to three subsequent handbooks. As is explained in detail below, TCFI has not provided any handbook to which it claims Calvagno was bound.

TCFI cites to the Second Circuit's summary order in *Brown v. St. Paul Travelers Co.*, 331 F. App'x 68, 69 (2d Cir. 2009), arguing that the facts in this case are identical to those in *Brown*. The facts in Brown are as follows: The handbook in question was revised in 1998, 2001, 2002, 2003, and 2004. *Brown v. St. Paul Travelers Cos.*, 559 F. Supp. 2d 288, 289-90 (W.D.N.Y. 2008). "In an affidavit [the] Senior Vice President for Human Resources for Travelers[] stated that updated versions of the handbook, each containing the arbitration policy, were distributed to all employees via interoffice mail each time the handbook was revised[.]" *Brown v. St. Paul Travelers Cos.*, 559 F. Supp. 2d 288, 289-90 (W.D.N.Y. 2008).

> Additionally, on April 5, 2004, an e-mail was sent to all employees regarding various company employment policies, including the arbitration policy. In the e-mail, John Clifford, Senior Vice President for Human Resources, advised all employees that it was their responsibility "to read and understand" all of the company employment policies. Further, the e-mail provided that the agreement to abide by these policies was "an express condition" of continuing employment.

*Id.* at 290-90 (emphasis added). On appeal, the Second Circuit, after reciting the foregoing facts "agree[d] with the District Court that under New York contract law, Brown is 'deemed to have accepted' the arbitration policy by continuing to work after being advised that it was her responsibility to 'read and understand' all of the company policies including the arbitration policy." *Brown v. St. Paul Travelers Co.*, 331 F. App'x at 69.

Here, TCFI does not claim that it *distributed* the revised handbooks to Mr. Calvagno (or any other employee, for that matter). TCFI does not say that Mr. Calvagno (or any other employee, for that matter) accessed the revised handbooks. TCFI does not say that it advised employees (1) of an "arbitration policy" contained in the handbooks, (2) that they must read the handbooks, and that (3) they would be bound by the handbooks. Instead, according to TCFI, it is enough that employees knew that a revised handbook existed. According to TCFI employees were notified through "HotSchedules" and other verbal means of the revisions to the handbooks. TCFI provides a "HotSchedules" message dating from December 2019, which states as follows:

> Hi Everyone!
>
> We are pleased to announce the release of our updated 2019 Cheesecake Factory Staff Member Handbook! Our Staff Handbook is a great way to learn and reference information about our Company – including our *values, benefits, and many other topics, so be sure to check it out!* You can access it at any time via ScoopsLive or ask your GM for a hard copy. If you have any questions, please ask your GM or OST.
>
> Let's have another great day!

Employees may be bound to an electronic agreement reasonably communicated to them, regardless of whether they actually read the agreement. *Gambo v. Lyft, Inc.*, Civil Action No. 22-1726 (RDM), 2022 U.S. Dist. LEXIS 207510, at *1 (D.D.C. Nov. 15, 2022) (holding plaintiff to terms of arbitration clause that was contained in a clickwrap agreement). However, TCFI did not communicate the intended legal significance of the revised handbooks. In fact, the notification is misleading. Simply telling employees that reading the handbook is a "great way to learn" about TCFI, and encouraging employees to "check it out!" does not put employees on notice of any obligation to read the handbook or of TCFI's intention to legally bind employees to the contents thereof.

Moreover, TCFI did not require employees to confirm their acceptance of the terms of the revised handbooks as a condition of continued employment. *See Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 832, 836 (2d Cir. 2021) (although Subway's terms webpage containing arbitration clause was made available to plaintiff, no evidence plaintiff had visited page and agreed so as to be obliged to arbitrate); *Hirsch v. Citibank, N.A.*, 542 F. App'x 35, 37 (2d Cir. 2013) (although defendant cited terms of its client manual, court not satisfied on motion to dismiss that plaintiff agreed to said terms); *Cox v. Spirit Airlines, Inc.,* No. 17-CV-5172(EK), 341 F.R.D. 349 (E.D.N.Y. Mar. 29, 2022)(plaintiff not bound by hyperlinked terms on website  because no evidence plaintiff specifically consented to term raised by defendant); *Scotti v. Tough Mudder Inc.*, 63 Misc. 3d 843, 854-55 (N.Y. Sup. Ct. 2019) (N.Y. Sup. Ct., Kings Cty. 2019) (under New York law, existence of arbitration clause is insufficient; court must be persuaded with evidence of assent given "how the subject arbitration clause actually appeared to the user.").

It is undisputed that the applicable arbitration clause has not been provided to Plaintiff or the "It is a well settled principle of contract law that a new agreement between the same parties on the same subject matter supersedes the old agreement." *Ottawa Off. Integration, Inc. v. FTF Bus. Sys.*, 132 F. Supp. 2d 215, 219 (S.D.N.Y. 2001) (specifically finding that the terms of the most recent arbitration agreement between the parties had superseded prior arbitration agreements).

TCFI moved to compel arbitration of the claims of Mr. Gonzalez on February 14, 2022. According to TCFI, the last two pages of the English-version of the Employee Handbook ("the 2005 handbook") contained a "Non-Disclosure Agreement and Receipt of Handbook" which contained an agreement to arbitrate. See Lewis Decl., ECF 18-2 ¶ 7 and Exhibit A thereto. TCFI's declaration dated February 11, 2022 stated that the 2005 handbook was the version that was

"operative as of April 2009" but omitted any statement as to whether the 2005 handbook was operative as of the time that this action was commenced. ECF 18-2 ¶ 7.

Defendant served its renewed motion to compel arbitration on June 30, 2023. For the first time, in its renewed motion, Defendant revealed that the 2005 handbook, although "operative" as of April 2009, was no longer in effect. More specifically, TCFI now states that between 2008-2020, "TCFI [had] re-issued the Employee Handbook – *including the Arbitration Acknowledgment* – three times." Lewis Decl. ¶ 9 (emphasis supplied).[10] TCFI claims that it "*revised* and redistributed the Employee Handbook three times during Calvagno's employment" and "TCFI notified Calvagno . . .that he must read the Employee Handbook and that compliance with the Employee Handbook was a condition of employment." Def MOL at 14 (emphasis supplied).

Here, TCFI states that (1) the handbook containing the "arbitration agreement" was revised three times after the Plaintiffs' employment began (2) TCFI notified all employes that they "must read" each revised handbook, and (3) that compliance with the revised handbooks was a condition of continued employment. See Def MOL, at 14.

However,  TCFI has not furnished any of the handbooks that were allegedly issued after the date of hire and to which TCFI claims Calvagno was bound as a condition of continued employment , and TCFI has not furnished the Spanish versions of the handbooks (accompanied by certified translations) that were allegedly issued after Noe Gonzalez' date of hire and to which TCFI claims Gonzalez was bound as a condition of continued employment.

---

[10] However, the handbook was not simply "reissued" but was instead revised. *See* Lewis Decl., annexed hereto, ¶ 6 (referring to the 2005 handbook as a "version of the Employee Handbook" provided to Noe Gonzalez in 2009 and Keith Calvagno in 2008); Lewis Decl. ¶ 12 (TCFI notified employees of "updates to the employee handbook" three times); Lewis Decl. ¶ 14 ("Updates to the Employee Handbook were also conveyed"); Lewis Decl. ¶ 16 ("TCFI provided Calvagno with three updates to the Employee Handbook" and encouraged him to read each update).

## IV.   THE ENGLISH VERSION OF THE HANDBOOK DOES NOT COMPEL ARBITRATION

### A.   The Purported "Arbitration Agreement" is Illusory

The English handbook contains a table of contents titled "What's In Your Cheesecake Factory Handbook." Included among the contents of the handbook are "Things You Need To Know", and "Handbook Receipt And Confidentiality Agreement".

Under the section "Things You Need To Know", the handbook states:

Other than your at-will employment status, The Cheesecake Factory reserves the right to change or revise policies, procedures and benefits described in this Handbook as the need arises [. . .] [It] is not, nor should be, considered to be an agreement or contract of employment, express or implied, or a promise of treatment in a particular manner in any given situation.14

Under the section "Handbook Receipt and Confidentiality Agreement", the handbook states:

I am aware that The Cheesecake Factory may, in its sole discretion, change, rescind or add to any policies, benefits or practices described in this handbook [. . .] I also understand that the Handbook and other training materials are not, nor should they be considered to be, an agreement or contract of employment, express or implied [.]15

TCFI did not except any portion of the handbook from this unfettered discretion. Moreover, insofar as TCFI declared employees to be at-will and lacking durable rights under the handbook, there is no consideration for Plaintiff's alleged agreement to read the terms delivered to him over the Internet by TCFI.  *See, e.g., F*loss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306, 315 (6th Cir. 2000) (holding that an "employer's promise in employee handbook to arbitrate disputes did not create binding obligation when employer retains right to revoke arbitration provision") (citing T*rumbull v. Century Mktg. Corp.,* 12 F. Supp. 2d 683, 686 (N.D. Ohio 1998)); *Williamson v. Dillard's, Inc.,* No. 18-CV-0451-CVE (W.D. Okla. Mar. 25, 2019), https://casetext.com/case/williamson-v-dillards-inc (noting that an employer-employee agreement

11

to arbitrate disputes is an illusory promise if the employer retains discretion to modify the employment or arbitration agreement to employee's detriment; *Crump v. MetaSource Acqs., L.L.C.*, 373 F. Supp. 3d 540, 545-46 (E.D. Pa. 2019) (where an employer reserves the right to modify arbitration agreement without binding itself to make modifications in writing and with adequate notice, entire agreement is illusory) (citing *Crump v. MetaSource Acqs., L.L.C.*, CIVIL ACTION NO. 18-3313, 2014 WL 36609, at *9 (E.D. Pa. Mar. 19, 2019)); *Rightnour v. Tiffany & Co.,* 239 F. Supp. 3d 744, 752-53 (S.D.N.Y. 2017) (continued employment after logging into online "training programs" containing arbitration clause was not binding because simply continuing to work after reading an agreement plaintiff was not required to sign did not establish plaintiff's intent to be bound by the agreement).

It is well established that "if the promisor is free to perform it or not, as he wills, [a promise] is wholly illusory and will not be enforced." *In re 114 Tenth Ave. Ass'n*, 441 B.R. 416, 428 (S.D.N.Y. 2010). Numerous courts have found that where a party has unilateral authority to modify the terms of an arbitration agreement without the other party's consent and with little or no notice, the arbitration agreement is illusory. *Day v. Fortune Hi-Tech Mktg.*, 536 F. App'x 600, 604 (6th Cir. 2013) (finding an arbitration provision which allowed the drafter to modify at any time made the promise illusory and the contract void for lack of consideration)); *Perez v. Hosp. Ventures Denver L.L.C.*, 245 F. Supp. 2d 1172, 1175 (D. Colo. 2003) (finding the ability to modify the terms of an arbitration agreement unilateral rather than mutual and therefore illusory); *Dumais v. Am. Golf Corp.*, 150 F. Supp. 2d 1182, 1193–94 (D.N.M. 2001) (finding an arbitration agreement that allowed the drafter to unilaterally modify to be illusory); *Trumbull v. Century Mktg. Corp.*, 12 F.

12

Supp. 2d 683, 686 (N.D. Ohio 1998) (finding an employment contract that allowed for unilateral

modification by the employer to be illusory, including the arbitration clause).[11]

### B.    The Implied Covenant of Good Faith and Fair Dealing Did Not Limit TCFI's Discretion to Change the Terms of The English Handbook

TCFI may point to case law in New York holding that where the covenant of good faith

and fair dealing acts as a limitation on the employer's discretion to change the terms of the

handbook, there is sufficient consideration. *See e.g., S. Telecom Inc. v. ThreeSixty Brands Grp*.,

LLC, 520 F. Supp. 3d 497, 506 (S.D.N.Y. 2021). In this case, the implied covenant does not impose

any obligation upon TCFI:

> The implied covenant of good faith and fair dealing is breached when a party acts
> in a manner that would deprive the other party of the right to receive the benefits of
> their agreement. The implied covenant includes any promises which a reasonable
> promisee would be justified in understanding were included. *However, no
> obligation may be implied that would be inconsistent with other terms of the
> contractual relationship.*

*1357 Tarrytown Rd. Auto, L.L.C. v. Granite Props., L.L.C.*, 2016 N.Y. Slip Op. 05981 (2d Dep't

Sept. 14, 2016).

The TCFI handbook makes no promises or assurances to the employee:

---

[11] Neither the Supreme Court, nor the Second Circuit, has interpreted the English handbook. TCFI cites to cases from the District of Maryland, the District of Arizona, or the Western District of Tennessee, which are neither binding nor persuasive, as they are from district courts and rely upon state law. *In Sedelnikova v. Cheesecake Factory Rest., Inc.*, Civil Action No. AW-09-2398, 2010 U.S. Dist. LEXIS 56211, at *8-9 (D. Md. June 7, 2010), the court did not apply the proper standard. On a motion to compel arbitration, the court must draw "all reasonable inferences in favor of the non-moving party." *Starke v. Squaretrade, Inc.,* 913 F.3d 279, 281 n.1 (2d Cir. 2019) (citing *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 229 (2d Cir. 2016)). The *Sedelnikova* court specifically took note of the handbook language permitting TCFI to "in its sole discretion, change" or "rescind" the contents of the handbook, and stated, "This Court would *certainly find a lack of consideration* in this agreement were the Court to consider the arbitration clause *part* of the revocable *Handbook policies* and other training materials." The *Sedelnikova* court also acknowledged that "[c]ertainly, the arbitration agreement's presence on page sixty-six of the Handbook lends some weight to Plaintiff's argument that the arbitration policy is part of the Handbook policies." Nevertheless, the Court resolved an issue of fact against the non-movant by finding that "the arbitration agreement is distinct from the Handbook policies." The Sedenikova Court's logic was as follows: "Yes, TCFI reserved the right to change 'any of the policies [or] practices' contained in 'this handbook.' Yes, 'this handbook', includes the pages initialed or signed by the Plaintiff mentioning arbitration. Yes, the arbitration practices and policies on pages 68 and 69 are contained within 'this handbook.' However, at the same time, the arbitration policies are 'distinct' from all of the other practices and policies in the handbook."

Other than your at-will employment status, The Cheesecake Factory reserves the right to change or revise policies, procedures and benefits described in this Handbook as the need arises. This Handbook is provided as a guide[.] The Handbook is not, nor should be, considered to be an agreement or contract of employment, express or implied, or a promise of treatment in a particular manner in any given situation.

*and*

The Company can terminate the employment relationship at will, at any time, with or without cause or advance notice.

The implied covenant of good faith and fair dealing can only be invoked if there is an agreement (i.e., if "a party acts in a manner that would deprive the other party of the right to receive the benefits of their agreement"). *Id.* In this case, TCFI disclaims that the handbook constitutes an "employment agreement" between the parties. However, even assuming the handbook constitutes an agreement, TCFI expressly reserved the right to change its policies, and therefore changes to the handbook would be consistent with the terms of such agreement. *See Id.* For example, it is well settled that a promise to pay incentive compensation is unenforceable if the written terms of the compensation plan make clear that the employer has absolute discretion in deciding whether to pay the incentive., *O'Shea v. Bidcom, Inc.*, No. 01 Civ. 3855 (WHP), 2002 WL 1610942, at *3 (S.D.N.Y. July 19, 2002); *Culver v. Merrill Lynch & Co., No*. 94 Civ. 8124 (LBS), 1995 U.S. Dist. LEXIS 10017 (S.D.N.Y. July 17, 1995); *Namad v. Salomon, Inc.*, 74 N.Y.2d 751, 752, 545 N.Y.S.2d 79, 80, 543 N.E.2d 722, 723 (1989); *Lam v. Am. Express Co.*, 265 F. Supp. 2d 225, 237 (S.D.N.Y. 2003).

Moreover, in order to invoke the implied covenant of good faith and fair dealing, TCFI must identify the "fruits of a contract" that the Plaintiff would be deprived of by a change in the manual. *See S. Telecom Inc. v. ThreeSixty Brands Grp., LLC,* 520 F. Supp. 3d 497, 507 (S.D.N.Y. 2021). Although application of the covenant of good faith and fair dealing may negate a clause that allows a party to exercise its discretion, "it cannot be said that application of the covenant is

14

necessary to preserve the 'fruits of a contract", because "[t]he fruits of a contract do not include a benefit to which a party was not entitled." Id. at 506

### C.   Employment in New York is "At Will"

In *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983), the New York Court of Appeals "considered whether a long-tenured corporate employee allegedly discharged in part for reporting accounting improprieties to top management had stated a cause of action. . .in contract for breach of an implied covenant of good faith and fair dealing." *Horn v. N.Y. Times*, 100 N.Y.2d 85, 91, 760 N.Y.S.2d 378, 380, 790 N.E.2d 753, 755 (2003). The Plaintiff in *Murphy* specifically "argued that the law implies a covenant of good faith and fair dealing in all contracts, including employment contracts[.]" *Id.* at 92, 760 N.Y.S.2d at 381, 790 N.E.2d at 756. The court noted,

> In such instances the implied obligation is in aid and furtherance of other terms of the agreement of the parties. No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship. Under New York law, absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired.

*Murphy*, 58 N.Y.2d at 304-05, 461 N.Y.S.2d 232, 448 N.E.2d 86 (emphasis added) (citations omitted).

In other words, irrespective of the provisions in the handbook, *TCFI could exercise the unimpaired right to terminate the Plaintiff at any time for any reason or no reason at all, with or without notice*. And if TCFI could exercise this unfettered right, it is not clear that TCFI owed any obligation to the Plaintiff.

### D.   The Purported "Arbitration Provision" is Unenforceable Because Arbitration was Not Expressly Made a Condition of Continued Employment

"As several courts in this Circuit have noted, an employer cannot rely on the very same terms to snatch away employees' contractual rights with one hand while imposing asymmetric

contractual duties with the other." *Seltzer v. Clark Assocs., L.L.C.*, No. 20 Civ. 4685 (AKH), 2020 U.S. Dist. LEXIS 161542, at *8 (S.D.N.Y. Sept. 3, 2020); *United States ex rel. Harris v. EPS, Inc.*, No. 05 Civ. 212, 2006 U.S. Dist. LEXIS 30012, 2006 WL 1348173, at *5 (D. Vt. May 16, 2006) ("Having inserted these disclaimers in an apparent effort to avoid vesting [the employee] with contractual rights, [the employer] cannot conveniently choose to ignore them and argue that the Handbook imposes contractual obligations. . .").

In *Seltzer*, as in this case, the handbook "expressly disavow[ed] that it create[d] contractual rights or duties; self-describe[d] as 'guidelines only; and reserve[d] to [the employer the] right to unilaterally alter the Handbook at any time, and without any notice." As in this case, the defendant employer in *Seltzer* argued that the arbitration provision was valid despite the disclaimer of contractual rights. The court observed that

> the only cases that [have] granted motions to compel arbitration despite language disclaiming the creation of contract rights involved arbitration provisions that specified that compliance with the arbitration policy was a *condition of employment*. *See, e.g.,* P*atterson v. Raymours Furniture Co.,* 96 F. Supp. 3d 71, 76 (S.D.N.Y. 2015) ("Here the [arbitration provision] clearly states: 'This Program is an essential element of your continued employment relationship with Raymour & Flanigan and is a condition of your employment.'"); *Curry v. Volt Info. Scis., Inc.*, No. 07 Civ. 7158, 2008 U.S. Dist. LEXIS 20910, 2008 WL 719214, at *1 (S.D.N.Y. Mar. 18, 2008) (the employee handbook provided that, "Arbitration is an essential element of your employment relationship with Volt and is a condition of your employment"); *Brown*, 331 F. App'x at 69-70 (employer executive emailed all employees that "abiding by" the company arbitration policy "was an 'express condition' of continuing employment"); *Graham v. Command Sec. Corp.*, 46 Misc. 3d 1224(A), 13 N.Y.S.3d 850 (N.Y. Sup. Ct. 2014) (employer sent email advising all employees that agreeing to the arbitration policy "'was an express condition' of continuing employment").

*Seltzer*, 2020 U.S. Dist. LEXIS 161542, at *9 (emphasis supplied); *see also Sherry v. Sisters of Charity Med. Cen.*, No. 98 Civ. 6151, 1999 U.S. Dist. LEXIS 6623, 1999 WL 287738, at *5 (E.D.N.Y. May 4, 1999) ("[T]he language . . . does not indicate that as a condition of employment, employees agree to submit disputes to arbitration."). The *Seltzer* court refused to enforce the

arbitration provision, noting that "the Handbook here did not notify employees that foregoing the right to bring suit in court amounted to a condition of employment." *Seltzer,* at *9.

For this reason, "[a]n arbitration agreement included in an employee handbook with language 'providing that the handbook does not constitute a . . . contract of employment or that the arbitration policy may be amended' is enforceable" only if "the employee is advised of the policy and that 'compliance with it [is] *a condition of employment.*'" *Isaacs v. OCE Bus. Servs.,* 968 F. Supp. 2d 564, 571 (S.D.N.Y. 2013)(citing *Brown v. St. Paul Travelers Co.,* 559 F. Supp. 2d 288, 292 (W.D.N.Y. 2008), aff'd, 331 F. App'x 68 (2d Cir. 2009).

The English handbook expressly disavows the creation of any contractual rights.[12]  The handbook is only provided as a "guide"[13], and TCFI expressly reserves the right to change the terms of the handbook at any time.[14]

### E.   A Provision Making Arbitration a Condition of Continued Employment Should Not be Read Into the Handbook

TCFI attempts to add language into its "Arbitration Clause" through the declaration of Barbara Lewis, which states that:

> In 2008, it was TCFI policy to inform all new hires during the onboarding process that the Arbitration Acknowledgment required mandatory individual arbitration for any disputes that arose. In 2008, it was also TCFI policy to inform onboarding employees that their offer of employment and continued employment was expressly conditioned on them agreeing to the Arbitration Acknowledgment.20

---

[12] "The Handbook is not, nor should be, considered to be an agreement or contract of employment, express or implied, or a promise of treatment in a particular manner in any given situation." Page 13.

[13] The Handbook "is provided as a guide." Page 13.

[14] "The Cheesecake Factory reserves the right to change or revise policies, procedures and benefits described in this Handbook as the need arises." Page 13. "The Handbook is not, nor should be, considered to be an agreement or contract of employment, express or implied, or a promise of treatment in a particular manner in any given situation." Page 13. The employee is "aware that The Cheesecake Factory may, in its sole discretion, change, rescind or add to any policies, benefits or practices described in this handbook or other training material and that [the employee] must abide by the new policies and practices." Page 65.

In other words, according to Barbara Lewis, although the handbook does not specify that arbitration is "mandatory", or "individual", or that "continued employment" is conditioned on an agreement to be bound by arbitration, the Court may read these terms into the agreement because, although not in writing, they were communicated to the employee.

However, "[a] court may not rewrite into a contract conditions the parties did not insert . . . ." *Marine Assocs., Inc. v. New Suffolk Dev. Corp.*, 125 A.D.2d 649, 510 N.Y.S.2d 175, 178 (2d Dep't 1986). This is especially true where, as here, TCFI appears to be aware of the deficiencies in the document it drafted.

## V.   IF THE COURT FINDS THAT AN AGREEMENT TO ARBITRATE EXISTS, IT SHOULD DIRECT THE PARTIES TO PROCEED WITH NON-BINDING ARBITRATION

"[C]ourts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility L.L.C. v. Concepcion, 56*3 U.S. 333, 339, 131 S. Ct. 1740, 1745-46 (2011) (citations omitted). "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1710 (2022). While the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA "was to make arbitration agreements as enforceable as other contracts, *but not more so.*" *Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003).

"Parties intending binding arbitration should say so explicitly in the agreement to arbitrate, either by providing that the arbitration award will be 'final and binding,' or words to that effect, or by incorporating by reference the rules of the American Arbitration Association or a similar arbitral body that expressly provide for binding arbitration." *Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 745 (8th Cir. 2003); *see Idea Nuova, Inc. v. GM Licensing Grp., Inc.*, No. 08 Civ. 8595 (PKC), 2009 U.S. Dist. LEXIS 73390, at *23 (S.D.N.Y. Aug. 19, 2009) (implicitly

following Dow Corning and finding that arbitration was "binding" as the parties agreed to submit the dispute to the American Arbitration Association).

Here, the language does not state that arbitration is "final" or "binding", nor does the handbook require arbitration in a forum that provides for binding arbitration: Instead, the handbook states "I agree to participate in impartial dispute-resolution proceedings" and "I agree to *participate* in arbitration proceedings." Moreover, with regard to Spanish-speaking employees, assuming without conceding, that the document which follows the Krochmal letter is supposed to be an accurate translation of the Spanish Handbook, the language is even more vague: "I agree to *participate* in an impartial conflict resolution proceeding" and "I agree to *participate* in an *arbitration procedure*." (emphasis supplied). A plain reading of the clause does not inform the employee that arbitration is binding or final, and no such clause should be read into the handbook.[15]

## VI.   SHOULD THE COURT COMPEL ARBITRATION, SUCH ARBITRATION SHOULD NOT BE LIMITED TO INDIVIDUAL ARBITRATION

In *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S. Ct. 2402, 156 L. Ed. 2d 414 (2003), the Supreme Court ruled that the question whether an arbitration contract forbids class arbitration concerns "contract interpretation and arbitration procedures," which fall under the domain of arbitrators who "are well situated to answer" questions relating to those issues.  This is not a case in which there is a class action waiver or specific language limiting arbitration to "individual" arbitration. TCFI is in possession of two agreements. There is one handbook, which purportedly limits class arbitration, but which TCFI acknowledges it is not seeking to enforce, and a second handbook which contains no class action waiver or limitation to "individual" arbitration.

---

[15] Indeed, even if the clause is found to be ambiguous as to whether arbitration is binding, "it is well to note that [New York] would apply the rule of *contra proferentem, i.e.,* ambiguous contract language is construed strongly against the drafter." *Borecki v. Raymours Furniture Co.,* No. 17-cv-1188 (LAK), 2017 U.S. Dist. LEXIS 196048, at *8-9 (S.D.N.Y. Nov. 28, 2017)(construing scope of arbitration clause against drafter who was the "largest furniture retailer in New York state).

Under these circumstances, whether arbitration is to proceed on an individual or class wide basis is a question for the arbitrator.  *In re A2p SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 470 (S.D.N.Y. 2013).

## **CONCLUSION**

For the foregoing reasons, it is respectfully requested that the Court deny the Defendant's renewed motion to compel arbitration with prejudice.  If the Court refers the case for arbitration, Plaintiffs request that such arbitration be non-binding, and that the question of whether arbitration shall be on an individual or class basis be referred to the arbitrator.

Dated: Huntington, New York
         July 31, 2023

_____
Steven J. Moser