UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                    Case No. 2:21-cv-05017-PCK-SIL
---------------------------------------------------------------- x
NOE GONZALEZ,

Plaintiff,

      -against-

THE CHEESECAKE FACTORY RESTAURANTS,
INC. d/b/a THE CHEESECAKE FACTORY,

Defendant.
---------------------------------------------------------------- x

### DEFENDANT'S REPLY IN SUPPORT OF MOTION TO STAY AND COMPEL INDIVIDUAL ARBITRATIONS

      Plaintiffs Noe Gonzalez and Keith Calvagno, like every other employee of Cheesecake Factory ("TCFI"), agreed to and were subject to TCFI's arbitration policy.  TCFI has entered into the record a Spanish-language arbitration agreement signed by Mr. Gonzalez as well as a certified true and accurate English-language translation of Mr. Gonzalez' signed agreement.  TCFI has also provided written policies related to its arbitration program, evidence that Mr. Calvagno was aware of TCFI policies (including the arbitration program), and a sworn declaration from the Senior Director of Payroll, who has firsthand knowledge of TCFI's policies and practices regarding hiring, onboarding, and the requirement that all new hires since 2002 agree to resolve disputes via the TCFI Alternative Dispute Resolution Program.  Finally, TCFI also now provides a firsthand account of Mr. Calvagno's hiring and onboarding from the General Manager who hired and onboarded Mr. Calvagno, Javier Gomez.  Mr. Gomez confirms that Mr. Calvagno signed the Arbitration Acknowledgment and that Mr. Calvagno's employment with TCFI was conditioned on his agreeing to resolve potential disputes via arbitration.  In opposition, Plaintiffs provide no admissible evidence.  In the face of TCFI's overwhelming evidence, and Plaintiffs' lack thereof, it is clear that Plaintiffs agreed to arbitrate their claims against TCFI.  Accordingly, as is fully

10026123v1

articulated in TCFI's motion and below, TCFI respectfully requests the Court stay this matter and compel Plaintiffs to individual arbitrations.

## ARGUMENT

It is the "established law of this circuit that a party may be bound by an agreement to arbitrate even in the absence of a signature." *Brown v. St. Paul Travelers Companies, Inc.*, 331 F. App'x 68, 69–70 (2d Cir. 2009) (affirming district court decision to compel employee to arbitration absent a signed arbitration agreement) (quoting *McAllister Bros., Inc. v. A & S Transp. Co.,* 621 F.2d 519, 524 (2d Cir.1980). Absent the presence of a signed agreement "the conduct of the parties may lead to the inference of a binding agreement…[which] is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct." *Id*.

In the case of Mr. Gonzalez, the Court need not venture down this path, as TCFI has produced the Employee Handbook Acknowledgment Form and the Arbitration Acknowledgment which were signed and initialed by Mr. Gonzalez. Mr. Gonzalez does not dispute that he signed these documents and therefore, he should be held to his promise to arbitrate his claims.

In the case of Mr. Calvagno, there is ample evidence that TCFI and Mr. Calvagno's conduct allows the Court to infer a binding agreement to arbitrate. As is shown below, Mr. Calvagno's hiring and onboarding General Manager Javier Gomez testifies based on firsthand knowledge that Mr. Calvagno signed the Arbitration Acknowledgment and that Mr. Calvagno knew that signing the Arbitration Acknowledgment was a condition of his employment with TCFI. That TCFI is currently unable to locate the signed Arbitration Acknowledgment is irrelevant, as Mr. Gomez' firsthand account of Mr. Calvagno reading and signing the Arbitration Acknowledgment establishes that Mr. Calvagno was aware of the arbitration program and was aware that his

2

10026123v1

employment was conditioned on his signing the Arbitration Acknowledgment. With this established, the Court need look no further than Mr. Calvagno's approximately fourteen (14) years of employment with TCFI to infer Mr. Calvagno's intent to be bound by the conditions of his employment—including his agreement to arbitrate disputes with TCFI.

**I.      Plaintiff Gonzalez Is Bound To Arbitrate His Claims**

TCFI provided Mr. Gonzalez with a Spanish language version of the Employee Handbook, including the Employee Handbook Acknowledgment Form at the start of his employment. ECF 18-2 at ¶ 7; ECF 18-2 Exhibit C. Mr. Gonzalez signed his initials "N.G." next to every one of the nine acknowledgment paragraphs, including the Arbitration Acknowledgment. *Id.* Further, Mr. Gonzalez also printed his named, signed his name, provided the date, and identified his restaurant location when he acknowledged receipt of his Employee Handbook and agreed to resolve his differences with TCFI "in arbitration proceedings." ECF 18-2 at p. 71. Notably, Plaintiffs make no claim that Mr. Gonzalez didn't sign the Employee Handbook Acknowledgment Form and initial the Arbitration Acknowledgment. Instead, Plaintiff attempts to quibble with the English-to-Spanish translation of the Arbitration Acknowledgment originally provided to Mr. Gonzalez during his onboarding. Given TCFI's submission of a true and accurate translation from a Court certified interpreter, such arguments have no merit.

The Court previously warned that "Plaintiff would be well-advised to submit a competing translation of the agreement if he wishes to argue that a genuine factual dispute as to whether arbitration is compelled exists." (ECF 34 at fn. 2). Plaintiffs ignore this warning and fail to submit any competing translation of the Arbitration Acknowledgment. This is likely because the version submitted by TCFI is in fact a fair and accurate translation. Unlike Plaintiffs, Defendant heeded the instructions of the Court and engaged a Federally Certified Court Interpreter who has "the top

3

certification for linguists working in Spanish in the United States federal legal system." (Exhibit 2, Krochmal Translation Certificate of Accuracy). Defendant submitted Krochmal's English translation of the Spanish version of the Arbitration Acknowledgment signed by Mr. Gonzalez. (Ex. 2 at p. 2-3). For ease of comparison, TCFI provides both English versions of the Arbitration Acknowledgment below:

Original TCFI English Version:

"I recognize that differences may arise between me and the Company during, or following, my employment with the Company. I agree to participate in impartial dispute-resolution proceedings as a condition of and as consideration for the offer of employment by the Company. If I, or the Company, determine that the Company's initial procedures for handling claims (including but not limited to, reporting claims to my manager, the Area Director of Operations, the CARELINE, and/or the Staff Relations Department), have not resulted in a mutually acceptable resolution of disputes between me and the Company, I agree to participate in arbitration proceedings."

(ECF 18-2 at p. 71).

Krochmal English Translation of Spanish Version Signed By Gonzalez:

"I acknowledge that differences may arise between the Company and I during and after my employment with the Company. I agree to participate in an impartial conflict resolution proceeding as a condition of and in consideration of the Company's offer of employment. If either I or the Company determine that the Company's initial procedures for handling claims (including but not limited to, reporting complaints to the Manager, the Operations Director, to CARELINE, and/or to the Personnel Relations Department), have not produced a mutually acceptable resolution to any dispute between the Company and myself, I agree to participate in an arbitration procedure."

(Ex. 2 at p. 3)

A careful reading of both English versions of the Arbitration Acknowledgment signed by Mr. Gonzalez shows that any differences in translation (for example, "I recognize" v. "I acknowledge," and "between me and the Company" v. "between the Company and I") have no impact on the substance of the agreement. Both of these translations, identical in substance, make clear that Mr. Gonzalez did agree to settle disputes with TCFI "in arbitration proceedings."

Because they could not attack the substance of the Krochmal Translation Certificate of

4

10026123v1

Accuracy, Plaintiffs instead attempt to confuse the Court by claiming that Krochmal failed to identify what document he translated and failed to provide his translations of the Arbitration Acknowledgment. These arguments are unavailing, but in an abundance of caution TCFI provides a clarifying declaration from Krochmal, attached as Exhibit 3. In this declaration, Krochmal clarifies that:

- The Spanish document Krochmal translated to English is the Employee Handbook Acknowledgment Form signed by Mr. Gonzalez which is already in the record in this matter at ECF 18-2, pages 143-144. (Ex. 3 at ¶ 2).

- Krochmal's English translation of the Spanish Employee Handbook Acknowledgment Form signed by Mr. Gonzalez is attached to his March 22, 2023 Translation Certificate of Accuracy as pages 2-3. (*Id*. at ¶ 3).

- Krochmal clarified that his English translation of the Spanish Employee Handbook Acknowledgment Form signed by Mr. Gonzalez is a "true and accurate translation" under the penalties of perjury. (*Id*. at ¶ 4).

- Krochmal reiterated his identity and qualifications to translate from Spanish to English and English to Spanish and swore to the same under the penalties of perjury. (*Id*. at ¶ 1).

- Krochmal clarified that, after finishing his own translation, the "original English-language document" he evaluated was the English version of the Employee Handbook Acknowledgment Form already in the record in this matter at ECF 18-2, pages 70-71, and the "original Spanish-language document" he evaluated was the Spanish version of the Employee Handbook Acknowledgment Form signed by Mr. Gonzalez which is already in the record in this matter at ECF 18-2, pages 143-144. (*Id*. at ¶ 5).

- Krochmal further clarified by "reasonable" translation, he intended to convey that the translation was "fair and accurate," but simply used the word "reasonable" because there are multiple accurate ways to translate documents from Spanish to English and English to Spanish, as is evidenced by the slight variations in the TCFI English version of the Employee Handbook Acknowledgment Form and the Krochmal English translation. (*Id*. at ¶ 6).

Given that (i) Mr. Gonzalez does not claim that he failed to sign or failed to understand the Arbitration Acknowledgment, (ii) Plaintiffs ignored the Court's instruction to provide a "competing translation,"; and (iii) TCFI has provided a "true and accurate" Spanish-to-English Translation from a highly credentialed Court certified interpreter under the penalty of perjury, the

5

Court should conclude that Mr. Gonzalez is bound to arbitrate his claims against TCFI. The Court should stay this matter and compel Plaintiff Gonzalez to individual arbitration.

## II. Plaintiff Calvagno Is Bound To Arbitrate His Claims

Despite offering zero admissible evidence that Mr. Calvagno was somehow unaware of or failed to sign the Arbitration Acknowledgment that TCFI requires all new hires to sign, Mr. Calvagno continues to attempt to avoid his obligation to arbitrate his claims. In such scenarios, where Plaintiff's entire argument rests not on evidence but on denials from their attorney, the Second Circuit holds that "it is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends." *Oppenheimer Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995) (affirming district court decision granting motion to compel arbitration); *see also Feroce v. Bloomingdale's Inc.*, No. 12-CV-5014 SJF GRB, 2014 WL 294199, at *4 (E.D.N.Y. Jan. 24, 2014) (granting motion to compel arbitration because "the party opposing may not rest on a denial but must submit evidentiary facts showing there is a dispute of fact to be tried."). Notably, Plaintiffs fail to even make the "general denials" that the Second Circuit would deem insufficient. As is shown below and in TCFI's Motion, there is no way Mr. Calvagno could have continued working for TCFI without agreeing to arbitrate any disputes.

    A.    <u>The General Manager Who Hired And Onboarded Mr. Calvagno Confirms Mr. Calvagno Signed The Employee Handbook Acknowledgment Form And The Arbitration Acknowledgment</u>

The TCFI Arbitration program was in place at the time of Plaintiff Calvagno's hire and continues to this day. By accepting his position with TCFI, Mr. Calvagno agreed to "participate in arbitration proceedings" to resolve his claims against TCFI. (ECF 18-2 at p. 71). As the internal investigation into Plaintiffs' claims continues, TCFI was recently able to identify Javier Gomez,

6

the General Manager[1] who hired, onboarded, and managed Mr. Calvagno from 2008 through approximately 2011 at the Lake Grove restaurant location.[2]

As the General Manager, Mr. Gomez conducted many of the initial and all of the final interviews at the Lake Grove restaurant location from 2008 to 2011, including the final interview of Mr. Calvagno in March 2008. (Exhibit 4, Declaration of Javier Gomez, at ¶¶ 3-4). After conducting the final interview, Mr. Gomez then lead the onboarding and orientation process for all new hires at the Lake Grove location, including the onboarding and orientation of Mr. Calvagno. (*Id*.). As part of this onboarding, Mr. Gomez discussed TCFI's expectations and policies, as well as required new hires, including Mr. Calvagno, to fill out all the forms and paperwork on the New Hire Paperwork checklist. (*Id*. at ¶¶ 5-6). During onboarding, Mr. Gomez ensured that all documents with an "X" in the "Servers" column of the New Hire Paperwork checklist were reviewed, filled out, and signed by all new servers, including Mr. Calvagno. (*Id*; Exhibit 4-A, New Hire Paperwork checklist). Per the policy, Mr. Gomez would ensure that new servers, including Mr. Calvagno, "sign the…handbook receipt & confidentiality agreement at the end of the Staff member Handbook." (Ex. 4 at ¶ 7; Ex. 4-A at p. 2). The Arbitration Acknowledgement is contained in the handbook receipt. (Ex. 4 at ¶ 7). Further, per the policy, Mr. Gomez prepared and distributed 14 documents to each new hire, including the Staff Member Handbook. (Ex. 4 at ¶ 8; Ex. 4-A at p. 1). Mr. Gomez personally ensured that Mr. Calvagno received all 14 documents listed in the New Hire Paperwork, including personally ensuring that

---

[1] Each TCFI restaurant location has one General Manager, who is the highest-ranking TCFI employee in the restaurant. (Ex. 4 at ¶ 2). As the General Manager, Mr. Gomez made the final decision on all new hires and was in charge of onboarding all new hires. (*Id*.).

[2] As this new information was previously unavailable to TCFI counsel and became available only during the Reply briefing period, TCFI would not oppose the filing of a sur-reply by Plaintiffs should they so desire.

7

10026123v1

Mr. Calvagno received the Employee Handbook and that Mr. Calvagno signed the Arbitration Acknowledgment.  (Ex. 4 at ¶¶ 8-9).

During his time as the General Manager of the Lake Grove restaurant location from 2008 to 2011, Mr. Gomez ensured that all new hires, including Mr. Calvagno, signed the Employee Handbook Acknowledgment Form—including the Arbitration Acknowledgment.  (*Id*. at ¶ 9). From 2008 to 2011 at the Lake Grove location, Mr. Gomez is not aware of any new hire who refused to sign the Employee Handbook Acknowledgment Form or the Arbitration Acknowledgment.  (*Id*. at ¶ 10).  Further, Mr. Gomez was unable to enter any new hire into the system without that individual signing all the required paperwork, including the Employee Handbook Acknowledgment Form and the Arbitration Acknowledgment.  (*Id*. at ¶ 11).

In short, as the General Manager of Mr. Calvagno's restaurant at his time of hire, Mr. Gomez hired Mr. Calvagno, onboarded Mr. Calvagno, and ensured that Mr. Calvagno was aware of and signed the Employee Handbook Acknowledgment Form and the Arbitration Acknowledgment.  (*Id*. at ¶ 12).

B.  Plaintiffs Offer No Evidence To Support Their Argument

Plaintiffs provide no evidence of their own that Mr. Calvagno did not agree to arbitrate potential claims with TCFI—likely because they cannot.  Plaintiffs instead attempt to oppose Defendant's motion by misconstruing TCFI's arguments in an attempt to confuse the issues.  For example, Plaintiffs' claim that TCFI is attempting to bind Mr. Calvagno to subsequent versions of the Employee Handbook.  *See* Opposition at 7-10.  This is incorrect.  TCFI has entered into the record the 2005 Employee Handbook and Arbitration Acknowledgment.  (ECF 18-2 at p. 70-71). This was the operative Handbook at the time Mr. Calvagno was hired and this is the arbitration language applicable to Mr. Calvagno.  TCFI's references to subsequent Employee Handbook

8

updates and message to employees about the updates via HotSchedules is only meant to underscore the fact that Mr. Calvagno could not claim to be unaware of the TCFI ADR program—a claim which notably Mr. Calvagno does not even make in opposition. Additionally, Plaintiffs claim that "it is undisputed that the applicable arbitration clause has not been provided to Plaintiff[.]" Opposition at p. 9. This assertion to the Court is wrong. The relevant arbitration clause—the Arbitration Acknowledgment which was presented to Mr. Calvagno by his General Manager Javier Gomez—has been on the Court's docket since May 20, 2022. (ECF 18-2 at p. 70-71).

Plaintiffs' misleading claims only serve to highlight that Plaintiffs have no evidence of their own to offer. Regarding Mr. Calvagno, the record is clear that:

1) TCFI had an ADR policy in place at the time Mr. Calvagno was hired and required all new hires to sign the Employee Handbook Acknowledgment Form and the Arbitration Acknowledgment during their initial onboarding; (Ex 1, Lewis Decl. at ¶¶ 2, 7; Ex 4, Gomez Decl. at ¶¶ 6-7);

2) The General Manager who hired and onboarded Mr. Calvagno, Javier Gomez, personally provided Mr. Calvagno with and Employee Handbook and personally ensured that Mr. Calvagno signed the Employee Handbook Acknowledgment Form and the Arbitration Acknowledgment during onboarding; (Ex. 4 at ¶¶ 8-9, 11);

3) Despite TCFI's inability to locate Mr. Calvagno's signed Arbitration Acknowledgment, Mr. Calvagno did receive the Employee Handbook Acknowledgment Form and the Arbitration Acknowledgment during onboarding and there is no reasonable way Mr. Calvagno could have continued to work for TCFI for fourteen (14) years without knowing he was bound to arbitrate any claims with TCFI; (Ex. 4 at ¶¶ 8-9, 11) and

4) Mr. Calvagno has not denied signing the Arbitration Acknowledgment and has offered no admissible evidence contradicting TCFI's evidence and argument.

Accordingly, the Court should stay this matter and compel Plaintiff Mr. Calvagno to individual arbitration.

### III. The Arbitration Acknowledgment Is Enforceable

As the Second Circuit holds, there is a "presumption of arbitrability" and courts must "[r]esolv[e] all doubts in favor of arbitrability," *Hermes of Paris, Inc. v. Swain*, No. 20-3451-CV,

9

2021 WL 5170726, at *2 (2d Cir. Nov. 8, 2021); *see also Sunbelt Beverage Corp. v. Goldring*, 205 F.3d 1324 (2d Cir. 2000) ("Given the strong federal policy favoring arbitration as an alternative means of dispute resolution, we construe arbitration clauses as broadly as possible, and we resolve all doubts in favor of arbitrability. A contract's broad arbitration clause creates a presumption in favor of arbitrability.") (internal quotation marks and citations omitted). Plaintiffs fail to overcome this presumption and further fail to address the multiple federal courts that have reviewed the specific language of the Arbitration Acknowledgment and ruled that it does indeed require arbitration. *See, e.g.*, *EEOC v. Cheesecake Factory, Inc.*, No. CV08-1207PHXNVW, 2009 WL 1259359, at *6 (D. Ariz. May 6, 2009) ("The Arbitration Agreement is neither procedurally nor substantively unconscionable…. The FAA, therefore, mandates compelling arbitration of Fitzpatrick's and Miller's claims."); *Sedelnikova v. The Cheesecake Factory Rest., Inc.*, No. CIV. A. AW-09-2398, 2010 WL 2367387, at *2 (D. Md. June 7, 2010) ("[T]he Court believes the provision qualifies as a valid agreement to arbitrate as the agreement was made with valid consideration, mutual assent and no fatal unconscionability."); *Smith et. al. v. The Cheesecake Factory Restaurants, Inc. et. al.*, No. 3:06-00829 (Doc. No. 107), at 17 (M.D. Tenn. Feb. 3. 2010) (ordering Plaintiffs to arbitrate their FLSA claims with TCFI based on the exact same language that Mr. Gonzalez signed). Accordingly, and as is fully discussed in TCFI's Motion and below, the Court should hold the Arbitration Acknowledgment enforceable and compel Plaintiffs to individual arbitrations.

  A. <u>The Arbitration Agreement Is Enforceable And Not Illusory</u>

  Plaintiffs attempt to undermine the enforceability of the Arbitration Agreement by claiming that because TCFI can amend the Employee Handbook without consulting with Plaintiffs, the Arbitration Agreement is illusory. This argument has been heard and rejected by this Court and

courts across New York many times, and Plaintiffs provide no reason to deviate from the case law here. *See infra*.

As the Supreme Court holds, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. '[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.'" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)). The *Rent-A-Center* line of cases is applied by this Court and courts across New York to conclude that "a provision permitting the unilateral amendment of any term of contract does not, without more, render a separate provision, such as an arbitration provision, unenforceable on procedural grounds." *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 417 (E.D.N.Y. 2014) (holding the arbitration provision was not procedurally unconscionable due to the unilateral amendment clause); *see also Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 106 (E.D.N.Y. 2015) (compelling arbitration because "the arbitration provision was not invalid as illusory simply because [defendant] had the unilateral right to modify the agreement."); *Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d 448, 456 (E.D.N.Y. 2019) (granting motion to compel arbitration because "[t]he unilateral right to modify an agreement, without more, does not render the agreement unenforceable."); *Crispin Porter & Bogusky LLC v. Watson*, No. 18-MC-384 (VSB), 2019 WL 5079916, at *4 (S.D.N.Y. Oct. 10, 2019) (compelling arbitration because clauses "found outside of the arbitration provision…[have] no bearing on [an] otherwise valid agreement to arbitrate.")

The Arbitration Agreement itself contains no mention of a unilateral ability of either party to modify it. (ECF 18-2 at p. 71). Plaintiffs' attempt to read such a clause from a different section of the Employee Handbook into the Arbitration Agreement is ill-founded. And even if such a

11

10026123v1

clause could be read to effect the Arbitration Agreement (it does not), the Supreme Court holds that Arbitration Agreements are severable from such clauses and should be enforced. *See Rent-A-Ctr., W., Inc.*, 561 U.S. at 70–71. Accordingly, the Court should find the Arbitration Agreement enforceable.

        B.      <u>Agreeing to Arbitrate Claims Was And Is A Condition Of Employment</u>

Plaintiff argues that agreeing to the Arbitration Agreement was not a condition of employment and therefore the Agreement is not enforceable. Such an argument is unavailing. The record shows that acceptance of the terms of the Arbitration Agreement <u>was and is a condition of employment</u>. This is clear from the testimony of Mr. Calvagno's hiring General Manager Javier Gomez ("Per TCFI policy…I ensured that Mr. Calvagno signed the Arbitration Acknowledgment" and "I could not enter new hires into the TCFI system without the new hire signing [the Arbitration Acknowledgment]") (Ex. 4, Gomez Decl. at ¶¶ 7, 11) and TCFI's Senior Director of Payroll Barbara Lewis ("in 2008, it was also TCFI policy to inform onboarding employees that their offer of employment and continued employment was expressly conditioned on them agreeing to the Arbitration Acknowledgment") (Ex. 1, Lewis Decl. at ¶ 7). This is also clear from the policy documents produced by TCFI, which state that during onboarding, a General Manager "**must** also have the staff member sign the…handbook receipt & confidentiality agreement at the end of the Staff Member Handbook." (Ex. 4-A, New Hire Paperwork checklist at p. 2) (emphasis added). Accordingly, Plaintiffs' reliance on a case from outside of this District for the proposition that if the Arbitration Agreement wasn't a condition of employment, it doesn't need to be enforced, can be ignored. Not only is the case not binding on this Court, but acceptance of the terms of the Arbitration Agreement <u>was and is a condition of employment</u>.

Because agreeing to the Arbitration Agreement was and is a condition of employment, the

12

Court should enforce the Arbitration Agreement.

## IV. The Court Should Compel Binding And Individual Arbitration

### A. The Court Should Compel Binding Arbitration

Plaintiffs next argue that if the Court compels Plaintiffs to arbitration, such arbitration should not be binding. TCFI does not argue or intend for Plaintiffs to waive any rights to appeal the decision of an arbitrator. As the Second Circuit notes, "[s]ection 16(a)(3) of the Federal Arbitration Act permits an appeal to be taken from 'a final decision with respect to an arbitration that is subject to this title.'" *Oakley Fertilizer Inc. v. Hagrpota for Trading & Distribution, Ltd.*, 531 F. App'x 131 (2d Cir. 2013) (citing 9 U.S.C. § 16(a)(3)). If Plaintiffs are not satisfied with the outcome of their individual arbitrations, TCFI does not intend to attempt to deny Plaintiffs of their appeal right.

### B. The Court Should Compel Individual, Not Class Arbitrations

Plaintiffs' argument that class-wide arbitration is available based on the Arbitration Agreement fails to address the arguments in TCFI's Motion and does not distinguish binding Supreme Court law. It is well settled that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) (original emphasis). This Court previously relied on *Stolt-Nielsen* to compel individual arbitration when, such as here, the Arbitration Agreement is silent on the issue of class-wide arbitration. *See e.g. Thompson v. Body Sculpt Int'l, LLC*, No. 18-CV-1001-ARR-GRB, 2018 WL 3235545, at *7 (E.D.N.Y. July 2, 2018) (compelling individual arbitration because "[e]ven a contract's silence as to class arbitration is not enough to indicate that the parties have agreed to it, as 'class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by

simply agreeing to submit their disputes to an arbitrator.'") (quoting *Stolt-Nielsen S.A.*, 559 U.S. at 684). Because the Arbitration Agreement here is silent on the issue of class arbitration, the Court should not read such a provision into the Agreement. Accordingly, the Court should compel Plaintiffs to individual arbitration.

## CONCLUSION

Mr. Gonzalez does not dispute that he signed the Arbitration Acknowledgment and Plaintiffs fail to present a competing translation of the Spanish-language version of the Arbitration Acknowledgment that differs in substance from the TCFI English version of the agreement. Further, Mr. Calvagno also does not dispute that he signed the Arbitration Acknowledgment and the record now reflects a firsthand account of Mr. Calvagno signing the Arbitration Acknowledgment and of Mr. Calvagno being told about TCFI's ADR policy during his onboarding—including that signing the Arbitration Acknowledgment was a condition of his employment with TCFI. Accordingly, this Court should adhere to the Second Circuit's "presumption of arbitrability" and the sound reasoning of other courts who have reviewed TCFI's Arbitration Acknowledgment and compel both Mr. Gonzalez and Mr. Calvagno to individual arbitrations.

Dated: August 21, 2023

                                  Respectfully submitted,

                                   */s/ James M. Coleman*
                                  James M. Coleman (*pro hac vice*)
                                  Jason D. Friedman (*pro hac vice*)
                                  Constangy, Brooks, Smith & Prophete, LLP
                                  12500 Fair Lakes Circle, Suite 300
                                  Fairfax, Virginia, 22033
                                  jcoleman@constangy.com
                                  jfriedman@constangy.com
                                  Phone:  571-522-6111

10026123v1

                Timothy Barbetta
                Constangy, Brooks, Smith & Prophete LLP
                175 Pearl Street, Suite C-402
                Brooklyn, New York 11201
                Telephone: (646) 341-6554
                Facsimile: (646) 341-6543
                tbarbetta@constangy.com

                **ATTORNEYS FOR DEFENDANT**

10026123v1

## CERTIFICATE OF SERVICE

I certify that the **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO STAY CASE AND TO COMPEL INDIVIDUAL ARBITRATIONS** was sent to Counsel for Plaintiffs on August 21, 2023 via Electronic Mail:

Steven J. Moser, Esq.
MOSER LAW FIRM, P.C.
5 East Main Street
Huntington, NY 11743
Steven.moser@moserlawfirm.com

And

Brett R. Cohen, Esq.
Jeffrey Kevin Brown, Esq.
Leeds Brown Law, P.C.
One Old Country Road
Suite 347
Carle Place, NY 11514
bcohen@leedsbrownlaw.com
jbrown@leedsbrownlaw.com

*/s/ James M. Coleman*
James M. Coleman

10026123v1