UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

NOE GONZALEZ,

*Individually and on behalf of all others similarly situated,*

                Plaintiff,

  - against -

THE CHEESECAKE FACTORY
RESTURANTS, INC.,

                Defendant.

-------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-5017 (PKC) (SIL)

PAMELA K. CHEN, United States District Judge:

Plaintiff Noe Gonzalez ("Plaintiff" or "Plaintiff Gonzalez"), who previously worked for Defendant The Cheesecake Factory Restaurants, Inc. ("Defendant" or "Cheesecake Factory") at its location in Huntington, New York, filed this putative class action alleging violations of the New York Labor Law. Pending before the Court are Defendant's renewed motion to compel arbitration and for a stay pending arbitration, and Plaintiff's motion to amend the Complaint, *inter alia*, to add a second plaintiff, Keith Calvagno ("Calvagno"). For the reasons that follow, the Court grants Defendant's motion to stay the case and compels Plaintiff Gonzalez to individual arbitration. Because Calvagno is also subject to an arbitration requirement, the Court denies Plaintiff's motion to amend the Complaint as futile.

1

**BACKGROUND**[1]

Plaintiff Gonzalez worked as a line cook at Defendant's restaurant in Huntington, New York, from April 2009 to March 2021. (Compl., Dkt. 1 (hereinafter Compl.), ¶¶ 7–10.) Calvagno worked as a server at the Cheesecake Factory located in Lake Grove, New York, from 2008 to 2022. (Decl. of Barbara Lewis, Dkt. 48-2 (hereinafter "Second Lewis Decl."), ¶ 3.) On September 8, 2021, Plaintiff Gonzalez brought suit against his former employer for violations of the wage provisions of the New York Labor Law ("NYLL"), invoking this Court's jurisdiction under the Class Action Fairness Act ("CAFA"). (*See* Compl. ¶ 3.) Specifically, Plaintiff Gonzalez alleged that: (1) Defendant failed to pay him and the putative class members on a weekly basis, in violation of NYLL § 191 (Compl. ¶¶ 60–67) ("First Cause of Action"); and (2) Defendant failed to furnish a wage statement to Plaintiff and the putative class members with each paycheck, in violation of NYLL § 195(3) (*id.* ¶¶ 68–72) ("Second Cause of Action").[2] Plaintiff Gonzalez seeks liquidated damages,[3] pre- and post-judgment interest, and reasonable attorney's fees and costs. (*Id.* Prayer For Relief.)

---

[1] In resolving a motion to compel arbitration, the Court is not only permitted to consider material extrinsic to the Complaint, but must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (internal quotation marks omitted); *see also Collazos v. Garda CL Atl., Inc.*, 666 F. Supp. 3d 249, 260 (E.D.N.Y. 2023) (explaining that a standard akin to Rule 56 motions for summary judgment governs motions to compel arbitration).

[2] In his motion to amend the complaint, Plaintiff withdrew the Second Cause of Action.

[3] According to the Complaint, Plaintiff's First Cause of Action seeks damages under NYLL Section 198, which allows the court to award an employee who prevails on a wage claim "in addition to ordinary costs, a reasonable sum, not exceeding fifty dollars for expenses which may be taxed as costs." N.Y. Lab. Law § 198 (McKinney). Plaintiff's Second Cause of Action seeks damages under NYLL Section 198(1-d). Pursuant to NYLL Section 198(1-d), an employee who did not receive a wage statement as required by NYLL Section 195(3), "shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or

I.      **Defendant's Arbitration Agreement and Related Procedures**

Defendant issues a handbook to all employees ("the Employee Handbook") during onboarding. (Second Lewis Decl., ¶ 4.) At the end of the Employee Handbook is a two-page acknowledgment form containing nine paragraphs, each of which requires the employee to initial, and additionally sign at the bottom of the page. (Barbara Lewis Decl., Dkt. 18-2 (hereinafter "First Lewis Decl."), ¶ 4.)[4] The eighth paragraph of the acknowledgement form states as follows:

> I recognize that differences may arise between me and the Company during, or following, my employment with [Defendant]. I agree to participate in impartial dispute-resolution proceedings as a condition of and as consideration for the offer of employment by [Defendant]. If I, or [Defendant], determine that [Defendant's] internal procedures for handling claims (including, but not limited to, reporting claims to my manager, the Area Director of Operations, the CARELINE, and/or the Staff Relations Department), have not resulted in a mutually acceptable resolution of disputes between me and [Defendant], I agree to participate in arbitration proceedings.

(*Id.* ¶ 15 ("the Arbitration Provision").) At the time Plaintiff and Calvagno onboarded as new hires in 2009 and 2008, respectively, employees were informed that the Arbitration Provision required "mandatory individual arbitration" and that "their offer of employment and continued employment was expressly conditioned on them agreeing to" the Arbitration Provision. (Second Lewis Decl., ¶ 7.) In the years since Plaintiff and Calvagno began working for Defendant, Defendant has issued updates to its arbitration policy, including rolling out and providing employees with a long-form

---

continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." N.Y. Lab. Law § 198(1-d). Though the Court at this time does not address the question of whether Plaintiff's pleadings satisfy CAFA's amount in controversy requirement of more than $5,000,000, the Court notes that it strains credulity that this putative class action could reach the required amount to establish proper jurisdiction in federal court for these claims.

    [4] This declaration was submitted by Barbara Lewis in connection with Defendant's first motion to compel arbitration. (*See* Dkt. 18.)

alternative dispute resolution agreement. (*Id.* ¶ 4.) For purposes of this motion, however, the Court need only determine if the Arbitration Provision is a valid and enforceable arbitration agreement. (*See* Def.'s Mem. of Law in Support of Mot. to Compel Arb., Dkt. 48-1 (hereinafter, "Def.'s Mot."), at 9 n.3 ("[Defendant] is . . . not moving to compel individual arbitration against Gonzalez or Calvagno based on the long-form agreement at this time.").)

Plaintiff Gonzalez, for whom Spanish is his first language, received the Spanish-language version of the Employee Handbook when he onboarded in 2009. (*See* Gonzalez Acknowledgment Form, Dkt. 18-2 (hereinafter, "Gonzalez Acknowledgment Form"), at ECF[5] 144.) He initialed each paragraph of the acknowledgment form and signed the bottom of the form on April 2, 2009. (*See id.*) Though Defendant has not produced an initialed and signed Arbitration Provision for Calvagno, Defendant has submitted evidence that Calvagno was provided with the Employee Handbook and would not have been able to begin working had he not filled out and executed the onboarding materials and that he was provided with multiple notifications by Defendant relating to updates to the Employee Handbook. (Second Lewis Decl., ¶¶ 6, 8.)

## II.     Procedural History

### A.     Defendant's First Motion to Compel Arbitration

Defendant initially moved to compel arbitration and stay the case on May 20, 2022. (Dkt. 18.) On March 13, 2023, the Court denied that motion, without prejudice to renew, because Defendant "failed to adduce admissible evidence supporting its theory that the parties signed an agreement to arbitrate." *Gonzalez v. The Cheesecake Factory Rests., Inc.*, No. 21-CV-5017, 2023 WL 2477697, at *1 (E.D.N.Y. Mar. 13, 2023) [hereinafter "*Gonzalez I*"]. The core issue identified

---

[5] Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

4

by the Court in denying the first motion was that Cheesecake Factory had failed to provide a certified English-language translation of the purported arbitration agreement presented to and signed by Plaintiff in Spanish. (*Id.*; *see also* Gonzalez Acknowledgment Form.)

### B. Plaintiff's Motion to Amend the Complaint

In January 2023, before the Court issued *Gonzalez I*, Plaintiff moved to amend his complaint as follows: (1) to add Calvagno as a named plaintiff; (2) to alter the class definition from "all cooks . . . employed by [Defendant] in the State of New York" (Compl. ¶ 37) to "all manual workers employed by Defendant in the State of New York" (Compl. ¶ 19). Plaintiff's motion also noted that he withdrew the second cause of action relating to wage statements under NYLL § 195(3). (Dkt. 31, at 1–2.) Defendant opposed both of the proposed amendments, asserting that Plaintiff's motion was "a thinly veiled attempt by [Calvagno] and his new counsel to ride the coattails of Plaintiff's Complaint filing date of September 8, 2021—and more specifically Plaintiff's statute of limitations tolling date—instead of simply filing a new lawsuit on his own." (Def.'s Opp'n to Pl.'s Mot. to Am., Dkt. 32, at 2.)

The Court reserved judgment on Plaintiff's motion to amend pending the resolution of the arbitration issue. (*See* 5/2/2023 Minute Entry.)

### C. Defendant's Renewed Motion to Compel Arbitration

On August 22, 2023, Defendant renewed its arbitration and stay motion. (*See generally* Def.'s Mot.) In its renewed motion, Defendant asks the Court to compel Plaintiff Gonzalez to submit to individual arbitration, and asserts that Calvagno is also subject to arbitration for any claims he may have against Cheesecake Factory. (*See generally* Def.'s Mot.) This time, as part of its motion, Defendant attaches a letter from Walter L. Krochmal, a Federally Certified Court Interpreter and Expert Witness working in Spanish, "warranting" that he translated the Gonzalez

5

Acknowledgement Form from Spanish to English and that it was a "faithful and accurate translation of the original Spanish document." (Krochmal Letter, Dkt. 48-7 (hereinafter "Krochmal Letter"), at ECF 1.) The translation attached to the Krochmal Letter provides the following translation of the relevant portions of the Gonzalez Acknowledgment Form:

> I acknowledge that differences may arise between the Company and I during and after my employment with the Company. I agree to participate in an impartial conflict resolution proceeding as a condition of, and in consideration of the Company's offer of employment. If either I or the Company determine that the [C]ompany's internal procedures for handling claims . . . have not produced a mutually acceptable resolution to any dispute between the Company and myself, I agree to participate in an arbitration procedure.

(Krochmal Letter, at ECF 3.) In its reply, Defendant supplemented the Krochmal Letter with an additional sworn statement from Krochmal stating that his translation was a "true and accurate" translation of the Gonzalez Acknowledgment Form and that the Spanish-language acknowledgment form provided to Plaintiff was a "fair and accurate" translation of the same provision contained in Cheesecake Factory's English-language Employee Handbook. (*See* Krochmal Decl., Dkt. 50-1, ¶¶ 4, 6.)

## LEGAL STANDARD

"Under the FAA, parties can petition the district court for an order directing that 'arbitration proceed in the manner provided for in such agreement.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting 9 U.S.C. § 4). A district court must stay proceedings once it is "satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." *Id.* (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)). A standard akin to a Rule 56 motion for summary judgment governs motions to compel arbitration. *Collazos v. Garda CL Atl., Inc.*, 666 F. Supp. 3d 249, 260 (E.D.N.Y. 2023). In applying the summary judgment standard, a court must "consider all relevant, admissible evidence submitted

6

by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (internal quotation marks omitted). "Additionally, the court must draw all reasonable inferences in favor of the non-moving party. *See Wachovia Bank, Nat. Ass'n v. VCG Special Opps. Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011).

In resolving a motion to compel arbitration, a court must consider: "(1) whether the parties agreed to arbitrate; (2) the 'scope' of the arbitration agreement; (3) whether the plaintiff's federal statutory claims are 'nonarbitrable'; and (4) if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019).

As to the first question, a court must consider whether the parties agreed to arbitrate, looking to "state contract law principles." *Nicosia*, 834 F.3d at 229. "The party moving to compel arbitration 'must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement in issue.'" *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 409 (S.D.N.Y. 2016).

As to the second consideration, "[t]he FAA embodies the 'liberal federal policy favoring arbitration agreements' and 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983)). "Simply stated, a court should compel arbitration, and permit the arbitrator to decide whether the dispute falls within the clause, if the clause is broad." *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983) (internal quotation marks omitted).

7

**DISCUSSION**

Defendant argues that both Plaintiff Gonzalez and Calvagno entered into a binding agreement to arbitrate any claims they had against Cheesecake Factory. The Court first addresses Defendants' arguments with respect to Plaintiff Gonzalez.

**I.     Plaintiff Gonzalez Must Engage in Arbitration**

**A.     Defendant Has Provided a Competent English Translation of the Gonzalez Acknowledgment Form**

As a threshold matter, the Court addresses its consideration of both the Krochmal Letter and the Krochmal Declaration, the latter of which was attached to Defendant's Reply Brief. (*See* Krochmal Decl.) Plaintiff vehemently argues that the Court may not consider the Krochmal Declaration because it was attached to Defendant's reply papers. (*See* Pl.'s Mot. to Strike, Dkt. 51, at 1.) While it is true that "[c]ourts in this District have frequently declined to consider evidence first submitted on reply," *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, No. 15-CV-3526, 2016 WL 6083956, at *4 (S.D.N.Y. Oct. 17, 2016), "in certain circumstances it is appropriate to supplement the record to support prior points and rebut the opposition." *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 324 F. Supp. 3d 387, 395 (S.D.N.Y. 2018). Indeed, the Second Circuit has affirmed a district court's decision to consider materials submitted in reply where the answering party "was not surprised by the affidavits in question," the answering party "did not move the district court for leave to file a sur-reply," and the answering party "made[] no claim that it has contrary evidence to introduce even if it were given an opportunity to proffer it." *Bayway Refin. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 227 (2d Cir. 2000).

Here, Plaintiff attacks the sufficiency of the Krochmal Letter, noting that it is "neither sworn to nor certified under the penalty of perjury as required by 28 U.S.C. § 1746." (Pl.'s Opp'n,

8

at 3.) Plaintiff also takes issue with the fact that the Krochmal Letter does not provide the document he translated. (*Id.*) Lastly, Plaintiff questions Krochmal's conclusion that, after doing a side-by-side comparison of the Cheesecake Factory's "English-language document in comparison with the original Spanish-language document," he found "the latter is a reasonable translation of the former." (*Id.* at 4; *see also* Krochmal Letter.) Defendant responds to these arguments in its reply by providing a declaration, sworn to by Krochmal, in which Krochmal attests: "My English translation of the Spanish Employee Handbook Acknowledgment Form signed by Mr. Gonzalez is a true and accurate translation under the penalties of perjury." (Krochmal Decl., ¶ 4.) He also confirms that the document he translated was the Gonzalez Acknowledgment Form. (*Id.* ¶ 5.) Finally, Krochmal clarifies that when he said that the Spanish-language document was a "reasonable" translation of the English-language document, he "intended to convey that the translation was 'fair and accurate.'" (*Id.* ¶ 6.)

The Court finds no reason to exclude the Krochmal Declaration from its consideration given that it is a direct response to arguments raised by Plaintiff in his opposition and "supplement[s] the record to support prior points." *Royal Park Invs. SA/NV*, 324 F. Supp. 3d at 395; *see also*, *Yorke v. TSE Group LLC*, No. 18-CV-5268 (JMF), 2019 WL 3219384, at *2 (S.D.N.Y. July 17, 2019) (finding it "entirely appropriate to consider" an employee handbook and accompanying affidavit submitted in reply to a motion to compel arbitration because, *inter alia*, it responded directly to the answering party's opposition). Plaintiff was fully aware that this was a critical issue for the Court, based on its previous denial of Defendant's arbitration motion, and cannot claim being surprised by Defendant's submission of a certified translation of the Gonzalez Acknowledgment Form with its renewed motion to compel nor in response to Plaintiff's attack on

9

that certification.⁶  Additionally, while the Court notes that Plaintiff filed a motion to strike the reply, he did not request any alternative relief, including leave to submit a sur-reply.  Finally, Plaintiff makes "no claim to contrary evidence" regarding the translation, *Bayway Refin. Co.*, 215 F.3d at 227, which speaks volumes to the Court.  Indeed, in *Gonzalez I*, the Court explicitly stated that, "[S]hould Defendant renew its motion, Plaintiff would be well-advised to submit a competing translation of the agreement if he wishes to argue that a genuine factual dispute as to whether arbitration is compelled exists."  *Gonzalez I*, 2023 WL 2477697, at *1 n.2.  Despite this clear directive, Plaintiff refuses to address this issue on the merits and instead relies on a purely procedural argument that is ultimately inapposite in this scenario.  The Court therefore exercises its discretion to consider the Krochmal Letter in conjunction with the Krochmal Declaration.  *See Copania Del Bajo Caroni (Caromin), C.A. v. Bolivarian Republic of Venez.*, 341 F. App'x 722, 724 (2d Cir. 2009) (summary order) ("A district court enjoys broad discretion . . . to rely on evidence submitted with the reply papers.").

### B. A Valid Arbitration Agreement Exists that Compels Plaintiff Gonzalez to Individually Arbitrate His Claims

Having now received a certified translation of the Gonzalez Acknowledgement Form, the Court concludes that it is a valid arbitration agreement compelling Plaintiff Gonzalez to submit to individual arbitration of his claims against Cheesecake Factory.

---

⁶ Admittedly, Defendant could have done a far more efficient and effective job putting this translation issue to rest.  In *Gonzalez I*, the Court explained that "[a] certified translation is one to which the author swears that the contents are true and accurate and also swears to his or her identity and qualifications to translate the relevant languages."  *Gonzalez I*, 2023 WL 2477697, at *1 (E.D.N.Y. Mar. 13, 2023).  Given this straightforward explanation of what was required, the Court is dismayed by the sloppiness of Defendant's initial presentation of the certified translation through the Krochmal Letter, which had to then be reinforced through the Krochmal Declaration.  Nonetheless, the end product is sufficient to certify the English translation of the Gonzalez Acknowledgment Form.

Applying New York state contract principles, Defendant has presented a written agreement "in consideration of the [Cheesecake Factory's] offer of employment" that was signed by Plaintiff Gonzalez, requiring him "to participate in an arbitration procedure" in the event of any employment dispute. (*See* Gonzalez Acknowledgment Form.) This constitutes a prima facie showing that Plaintiff Gonzalez agreed to arbitrate his claims. *See Yorke*, 2019 WL 3219384, at *1 (finding Defendant's submission of the arbitration clause in the employee handbook to be a prima facie showing of a valid arbitration agreement in granting Defendant's motion to compel arbitration); *see also Brown v. St. Paul Travelers Cos.*, 559 F. Supp. 2d 288, 291 (W.D.N.Y. 2008) (finding that an employee who "signed an acknowledgment of receipt of the handbook and arbitration policy . . . clearly would have evinced an intention to be bound by the agreement"); *see also Baldeo v. Darden Rest., Inc.*, No. 04-CV-2185 (JG), 2005 WL 44703, at *5 (E.D.N.Y. Jan. 11, 2005) (finding plaintiff agreed to be bound by employer's alternative dispute resolution mechanisms by signing an acknowledgment that she received a brochure that overviewed these procedures); *Chanchani v. Salomon/Smith Barney, Inc.*, No. 99-CV-9219, 2001 WL 204214, at *7 (S.D.N.Y. Feb. 28, 2001) ("Courts in this district routinely uphold arbitration agreements contained in employee handbooks where, as here, the employee has signed an acknowledgment form.").

Plaintiff Gonzalez has not provided any evidence "to put the making of that agreement in issue." *Begonja*, 159 F. Supp. 3d at 409. Instead, Plaintiff argues that "[t]he purported 'arbitration agreement' is [i]llusory" due to the fact that the Employee Handbook to which the Arbitration Provision was appended contains language employees were "at will" employees, and that Cheesecake Factory could, "in its sole discretion, change, rescind or add to any policies, benefits or practices described in this handbook[.]" (Pl.'s Opp'n, at 11; *see also* Dkt. 18-2, at ECF 70.)

11

Citing to out-of-circuit cases, Plaintiff argues that this language demonstrates that the Arbitration Provision is unenforceable because Defendant can take unilateral action to modify the Employee Handbook. (Pl.'s Opp'n, at 12 (citing *Trumbull v Century Mktg. Corp.*, 12 F. Supp. 2d 683, 686 (N.D. Ohio 1998) for the proposition that there is no binding obligation to arbitrate when an employer retains the right to revoke an arbitration provision).) However, the Supreme Court has held that "an arbitration provision is severable from the remainder of the contract." *Rent-a-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 130 (2010). Applying this principle, courts in this circuit—including this very Court—have rejected Plaintiff's argument and found arbitration provisions similar to the one here valid. *See, e.g.*, *Rosai v. E.M. Wings, LLC*, No. 09-CV-4680 (DRH) (ARL), 2011 WL 13305366 (E.D.N.Y. Apr. 12, 2011) (applying *Rent-a-Center* in rejecting argument that arbitration agreement was "illusory" because employee handbook contained provision that the employer reserved the right to amend the procedures found in the handbook); *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 106 (E.D.N.Y 2015) (finding that an "arbitration provision was not invalid as illusory simply because [defendant] had the unilateral right to modify the agreement"); *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 417 (E.D.N.Y. 2014) ("[A provision permitting the unilateral amendment of any term of contract does not, without more, render a separate provision, such as an arbitration provision, unenforceable on procedural grounds.").[7]

---

[7] The Court has considered Plaintiff's remaining arguments that the Arbitration Provision is unenforceable and find that they also fail. Of note, Plaintiff argues that arbitration was not expressly made a condition of continued employment. (Pl.'s Opp'n, at 15–17.) This argument borders on frivolous, as it is plainly contradicted by the language of the Arbitration Provision, which states that employees "agree to participate in an impartial conflict resolution proceeding *as a condition of* . . . the Company's offer of employment."

Having determined that the Gonzalez Acknowledgment Form is binding and enforceable as to Plaintiff Gonzalez, the Court turns now to the second factor of analysis—the scope of the Arbitration Provision.  The Court finds with little difficulty that Plaintiff Gonzalez's NYLL claims against Cheesecake Factory "fall[] squarely within the [Arbitration Provision's] broad language." *Cavant Fin. LLC v. Autoguard Advantage Corp.*, 958 F. Supp. 2d 390, 398 (E.D.N.Y. 2013).  The Arbitration Provision states that the employee recognizes that "differences may arise" "during, or following . . . [an employee's] employment" with Cheesecake Factory, and that those "differences" will be governed by arbitration. (Dkt. 18-2, at ECF 71.)  Plaintiff Gonzalez's claims under the NYLL fit squarely within the definition of an employment-related "difference."  Furthermore, "courts in this District have consistently found . . . NYLL claims to be arbitrable." *Zambrano v. Strategic Delivery Sols., LLC*, No. 15-CV-8410, 2016 WL 5339552, at *9 (S.D.N.Y. Sept. 22, 2016) (collecting cases).

Finally, Defendant claims that Plaintiff Gonzalez must submit to individual arbitration and that class arbitration is not available under the Arbitration Provision.  (Def.'s Mot., at 17–23.)  Finding that this is a gateway issue for it to determine, the Court agrees. *See Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 395 (2d Cir. 2018) ("[W]e are guided by the presumption that questions of arbitrability—certain gateway matters . . . are for a court to decide.").  Here, the Arbitration Provision is only three sentences long and contains broad language providing for the arbitration of any "differences" between Defendant and its employees.  Given the provision's brevity, it is hardly surprising that the provision is silent as to the question of class arbitration.  In light of this ambiguity and the absence of any reference to class claims or arbitration, the Court finds that the Arbitration Provision does not provide the necessary contractual basis for compelling class arbitration under the FAA. *See Lamps Plus, Inc. v. Varela*, 587 U.S. ---, 139 S. Ct. 1407,

1415 (2019); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010)). "[T]he Supreme Court has held that a party 'may not be compelled . . . to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so.'" *Lopez v. Lidl US, LLC*, No. 22-CV-4271 (ALC), 2023 WL 2674757, at *5 (S.D.N.Y. Mar. 29, 2023) (quoting *Anwar v. Fairfield Greenwich Ltd.*, 950 F. Supp. 2d 633, 636 (S.D.N.Y. 2013)). Thus, Plaintiff Gonzalez must pursue his claims on an individual basis through arbitration. *Id.* at *5 (granting motion to compel arbitration on individualized basis, given an agreement that was silent as to class-wide arbitration); *Thompson v. Body Sculpt Int'l, LLC*, No. 18-CV-1001 (ARR) (GRB), 2018 WL 3235545, at *5 (E.D.N.Y. July 2, 2018) (compelling individual arbitration under multiple agreements, including one that was silent as to the availability of class-wide arbitration).

## II. Calvagno is Bound By the Arbitration Provision

The Court additionally concludes that Calvagno is also bound by the Arbitration Provision in the Employee Handbook. Despite the fact that Defendant cannot locate the acknowledgment form signed by Calvagno, the Second Circuit has held that in such event, an employee may be bound to an arbitration clause located in an employee handbook where there is evidence that an employee can be "'deemed to have accepted' the arbitration policy by continuing to work after being advised 'that it was [his] responsibility to read and understand all of the company policies including the arbitration policy.'" *Brown v. St. Paul Travelers Cos., Inc.*, 331 F. App'x 68, 69 (2d Cir. 2009) (summary order); *see also McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519, 524 (2d Cir. 1980) (noting the "established law of this circuit that a party may be bound by an

14

agreement to arbitrate even in the absence of a signature"). Here, Defendant, in its opening brief,[8] submitted sufficient evidence that Calvagno agreed to be bound by the Arbitration Provision.

In *Brown*, the Second Circuit affirmed the district court's ordering of arbitration for an employee even where the defendant-employer could not produce a signed arbitration agreement. *See* 331 F. App'x at 69. The panel reasoned that because the arbitration clause—contained in the defendant's employee handbook—was promulgated and distributed to employees multiple times over the course of the plaintiff's employment, she had manifested her assent to be bound by continuing to work for the defendant after being advised that "it was her responsibility to 'read and understand'" all of the company's policies was evidence that she accepted the policy. *Id.*; *accord Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009).

Here, Plaintiff, unlike the plaintiff in *Brown*, has submitted no evidence that Calvagno "never signed" the Arbitration Provision. Plaintiff's argument appears to be that because Defendant cannot locate the executed agreement, Defendant must answer to Calvagno's claims in federal court. As discussed, however, an employer is permitted to establish an employee's intent to be bound by an arbitration provision through other means. For example, Defendant has submitted a declaration from Barbara Lewis, Senior Director of Payroll and Accounts Payable for Defendant, stating that "[i]t was [Defendant's] policy in March 2008 and continues to be [Defendant's] policy to present all new employees with a copy of the most current Employee Handbook, including the acknowledgment pages." (Second Lewis Decl., Dkt. 48-2, ¶ 7.) The declaration also states that it was Defendant's "policy to inform onboarding employees that their offer of employment and continued employment was expressly conditioned on them agreeing to

---

[8] In reaching this conclusion, the Court has not considered the Gomez Declaration, which was submitted with Defendant's reply brief. (*See* Gomez Decl., Dkt. 50-2.)

15

the Arbitration Acknowledgment." (*Id.*)  Finally, the declaration notes that "Calvagno would not have been able to begin his employment and would not have been entered into [Defendant's] payroll system without receiving his onboarding documents and completing his onboarding paperwork." (*Id.* ¶ 8.)  "This practice constitutes standard office procedure sufficient to establish a presumption of notice." *Gil v. Bensusan*, No. 18-CV-10657 (VEC), 2019 WL 12334706, at *4 (S.D.N.Y. Oct. 30, 2019) (compelling employee to arbitrate NYLL claims even where employer could not produce the written acknowledgment form from the employee handbook).

Having received notice of the mandatory Arbitration Provision, Calvagno's nearly two decades of continued work for Defendant manifests his intent to be bound by that agreement.  Defendant has provided evidence that Calvagno was given notifications of updates to the Employee Handbook through various applications used as part of his employment with Defendant.  (*See, e.g.*, Dkts. 48-5, 48-6.)  Plaintiff takes issue with these notifications, stating that these were "misleading," or in any event, not intended to indicate "legal significance."  (Pl.'s Opp'n, at 8.)  However, the Second Circuit's decisions in *Manigault* and *Brown* "did not turn on a particular degree of notice or the format in which it was given." *Gil*, 2019 WL 12334706, at *4 (quoting *Patterson v. Raymours Furniture Co., Inc.*, 96 F. Supp. 3d 71, 77 (S.D.N.Y. 2015)).  The Court therefore finds that there is sufficient admissible evidence that Calvagno assented to be bound by the Arbitration Provision.

### III. Plaintiff's Motion to Amend the Complaint

As discussed, while Defendant's motion to compel was pending, Plaintiff filed a motion to amend the Complaint to add Calvagno.  (*See generally*, Pl.'s Mot. to Am.)  Plaintiff also withdrew the second cause of action from the Complaint, which alleged a violation of NYLL §§ 195(3) and 198(1-d).  (*Id.*, at 2.)  By adding Calvagno to the Complaint, Plaintiff also seeks to change the

16

current class definition from "all cooks . . . employed by Defendant [] in the State of New York" to "all manual workers employed by Defendant [] in the State of New York. (*Compare* Compl. ¶ 37, *with* Dkt. 31-1, at ¶ 19.) The request to change the class definition is prompted by the fact that Calvagno was a server who worked in a front-of-house capacity, and not as a cook, at Defendant's restaurant in Lake Grove, New York. (Dkt. 31-1, ¶¶ 10–12.)

### A.    Legal Standard

Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its complaint once as a matter of course within 21 days after serving the complaint or within 21 days after a responsive pleading has been served. *See* Fed. R. Civ. P. 15(a)(1). Where, as here, the time for amendment as a matter of course has long passed, a party may amend its pleading with the opposing party's written consent or with leave of the Court. Fed. R. Civ. P. 15(a)(2). "The [C]ourt should freely give leave [to amend] when justice so requires." *Id.* Nevertheless, "it is within the sound discretion of the [Court] to grant or deny leave to amend." *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009).

Certain factors, "such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party[,] . . . [and] futility of amendment," may justify a district court's decision to deny leave to amend. *Williams v. Citigroup Inc.*, 659 F.3d 208, 213–14 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### B.    The Proposed Amendment to Add Calvagno Is Futile

Having analyzed the *Foman* factors, the Court denies Plaintiff's motion to amend the complaint to add Calvagno as a plaintiff due to such amendment's futility.

Proposed amendments are futile when they "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Loc. Union No. 58*

17

*Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). Here, because the Court has concluded that Calvagno is subject to the Arbitration Provision and thus compelled to arbitrate his claims against Defendant in this case, amending the Complaint to add him as a plaintiff would not cure any deficiency with respect to allowing this dispute to proceed before this Court. *See Catz v. Precision Glob. Consulting*, No. 19-CV-7499, 2021 WL 1600097, at *14 (S.D.N.Y. Apr. 23, 2021) (granting defendant's motion to compel arbitration and thus denying the motion to amend the complaint); *Kutluca v. PQ N.Y. Inc.*, 266 F. Supp. 3d 692, 704–05 (S.D.N.Y. 2017) (same); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam) (affirming district court's denial of the plaintiff's motion to amend as futile because the "proffered amendments would not affect the Court's analysis").

Thus, the Court denies Plaintiff's motion to amend the Complaint.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to compel arbitration and stays this action pending arbitration. *See Katz v. Cellco P'Ship*, 794 F.3d 341, 347 (2d Cir. 2015) (holding that a court must stay proceedings "when all of the claims in an action have been referred to arbitration and a stay [has been] requested."). Additionally, Plaintiff's motion to amend the Complaint is denied. The parties must submit joint updates on the status of the arbitration proceeding every ninety (90) days. The first such update is due June 4, 2024.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 6, 2024
      Brooklyn, New York